UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------X
UNITED STATES OF AMERICA,

                                <u>MEMORANDUM AND ORDER</u>
        -against-              04-CR-699 (DRH)(S-2)


RODNEY ARNOLDO MORRISON,

                Defendant.
----------------------------X
A P P E A R A N C E S:

For the Government:
     Roslynn R. Mauskopf
     United States Attorney
     Eastern District of New York
     One Pierrepont Plaza
     Brooklyn, New York  11201
       By: James M. Miskiewicz, A.U.S.A.
           Richard Thomas Lunger, Jr., A.U.S.A

For Defendant:
     Law Offices of Peter Smith & Associates
     232 East Main Street
     Huntington, New York 11743
       By: Peter Smith, Esq.

     Thomas P. Cleere, Esq.
     3075 Veterans Memorial Hwy.
     Suite 200
     Ronkonkoma, New York 11779

     Colleen Quinn Brady, Esq.
     99 Hudson Street
     8th Floor
     New York, New York 10013

     Kevin J. Keating, Esq.
     666 Old Country Road
     Garden City, New York 11530

     Daniel Nobel, Esq.
     401 Broadway - 25th Floor
     New York, New York 10013

HURLEY, District Judge:

By Notice of Motion dated June 26, 2006, defendant made an omnibus motion seeking various items of relief.[1] These requests will be addressed seriatim under the precise captions utilized by Mr. Cleere in the Notice of Motion, absent quotation marks.

1.   Dismissal Based Upon Speedy Trial Violation(s)

Point 1 of Mr. Cleere's affirmation in support of defendant's pretrial motions is primarily directed at a purported Sixth Amendment violation of defendant's right to a speedy

---

[1] Defendant has retained numerous defense attorneys during the course of the captioned proceeding, most of whom are no longer involved. When the current motion was made, his defense team included three attorneys who had entered notices of appearance, viz. Thomas P. Cleere, Esq., Anthony J. Gallo, Esq. and Peter Smith, Esq. While Mr. Cleere made the current motion, Mr. Gallo filed defendant's Reply to the government's Memorandum in Opposition to that motion. Moreover, the motion brought on by Mr. Cleere seeks a dismissal of the arson and weapons-based counts not only under the Sixth Amendment's speedy trial guarantee but also under the Speedy Trial Act. But that latter ground, i.e. the purported statutory violation, is the subject of a separate pending motion brought on, and being pursued by Mr. Smith.

Henceforth, defense counsel shall coordinate their efforts so that each individual motion shall be made, and pursued in the name of one of the defense attorneys, or all three together in a single presentation, rather than in the fragmented, inappropriate manner mentioned above. Along the same lines, neither party shall henceforth make additional unsolicited submissions — by letter or otherwise — as to a fully framed, sub judice motion (i.e., one consisting of a (1) Notice of Motion and supporting papers, (2) papers in opposition, and (3) reply papers) absent prior approval of the Court.

trial.[2]  "'Whether excessive delay violates the Speedy Trial

Clause [of the Sixth Amendment] depends on a balancing of four

factors: (1) the length and (2) reason for the delay, (3) whether

the defendant timely asserted his rights, and (4) whether the

defendant has been prejudiced by the delay.'"  (Cleere

Affirmation, dated June 26, 2006 ("Cleere Aff.") ¶ 3 (quoting

United States v. Jones, 91 F.3d 5, 7 (2d Cir. 1996) which, in

turn, cites Barker v. Wingo, 407 U.S. 514, 530 (1972)).)

    The above listing is not meant to be exhaustive, nor

are any of the four factors "either a necessary or sufficient

condition to [a] finding of a deprivation of the right to a

speedy trial.  Rather, they are related factors and must be

considered together with such other circumstances as may be

relevant."  Barker, 407 U.S. at 533.

    Here, defendant's prejudicial period of pretrial

detention[3] is more than counterbalanced by the reasons for the

delay (see July 21, 2006 Order at 3-8), the absence of other

_____

    [2] To the extent Mr. Cleere makes reference to defendant's
"statutory right to a speedy trial" (Cleere Affirmation, dated
June 26, 2006, ¶ 2) and the claimed violation of his "due
process" rights under the fifth amendment due to his lengthy
pretrial incarceration (id. ¶ 10-12), the former will be
addressed in responding to Mr. Smith's Speedy Trial Act motion
and the latter has already been addressed, and rejected, by this
Court in its decision of July 21, 2006.

    [3] Defendant's protracted period of pretrial detention,
standing alone, is insufficient to warrant the relief requested.
Cf. United States v. Jones, 91 F.3d 5, 9 (2d Cir. 1996).

articulated prejudice caused by the delay (such as the loss of a witness (see Barker, 407 U.S. at 533)), and the fact that defendant "did not [prior to entry of current counsel] want a speedy trial." Id. at 534. Indeed, prior to that time, newly retained counsel serially requested time to familiarize themselves with the case and to further pursue plea negotiations. (See July 21, 2006 Order at 3-8.) And, as explained in Barker, the "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." 407 U.S. at 532. That is so because "[w]hether and how a defendant asserts his right [to a speedy trial] is closely related to the other factors" identified by the Supreme Court, including the reason for the delay and the personal prejudice sustained as a result of the delay. Id. at 531.

In sum, defendant has failed to establish that he has been denied his Sixth Amendment right to a speedy trial vis-a-vis the charges in the first superseding indictment.[4]

---

[4] As part of his Sixth Amendment argument, Mr. Cleere also claims that the government engaged in sham plea negotiations "never intend[ing] to proceed to trial on the charges contained in either of the August, 2004 indictments" for the purpose of endeavoring to "continue its investigation in the hopes of attempting to build a case against Mr. Morrison." (Cleere Aff. ¶ 8.) But, as noted in this Court's decision of July 21, 2006, this assertion by Mr. Cleere is not claimed to be based on first hand information, and has been interjected into the discussion absent input from anyone who was actually involved in the subject plea negotiations. (July 21, 2006 Order at 6-8.) Accordingly, this conclusory assertion does not warrant further discussion.

2.   Disclosure of Rule[s] 404(b), 608 and 609(b)
     Evidence and a Luck Hearing

     In the government's Memorandum of Law submitted in
opposition to defendant's omnibus motions, the government details
the evidence that it will seek to introduce as part of its direct
case under Federal Rule of Evidence 404(b), as well as its intent
to utilize Morrison's 1991 conviction for criminally negligent
homicide, pursuant to Rule 609(a)(1) and (b), should defendant
testify.[5]

     In Mr. Gallo's July 28, 2006 "REPLY TO GOVERNMENT'S
OPPOSITION" to defendant's motion brought on by Mr. Cleere, Mr.
Gallo does not challenge or otherwise comment concerning the
government's position re its Rule 404(b) proffer.  However, Mr.
Gallo has challenged the government's intent to utilize
defendant's criminally negligent homicide conviction for
impeachment purposes on the ground that "the prejudicial effect
far outweighs whatever slight, if any, probative value" that may
legitimately be attached to this evidence.  (Gallo's Reply at 6.)

     Mr. Morrison was convicted of criminally negligent
homicide fifteen years ago.  For that, he was sentenced to a

_____

     [5] Via the government's silence on the subject, the Court
concludes that the prosecutor will not seek to introduce evidence
under Rule 608.  Parenthetically, the Court notes that in Mr.
Cleere's affirmation in support of defendant's omnibus motions,
as distinct from in the accompanying Notice of Motion, the
defense limits its argument to the disclosure of Rule 404(b) and
Rule 609 evidence.

conditional discharge.  Based on the information proffered by the defense, it appears that the defendant recklessly discharged a firearm resulting in the death of a youngster.

The Court agrees with defendant.  The probative significance of his 1991 conviction to the case at hand is marginal at best, and its potential for causing unfair prejudice to the defendant is significant.  Accordingly, should defendant take the stand, the government, based on the information presently before the Court, will not be permitted to utilize this conviction under Rule 609(a)(1) for purposes of impeachment.  The same holds true under subdivision (b) of the Rule given that the criminally negligent homicide conviction does not "involve[] dishonesty or false statement."

3.    Disclosure of Brady Material

(a)    Applicable Law.  Under Brady v. Maryland, 373 U.S. 83, 104 (1963) and its progeny, the government is required to disclose to the defense all material evidence[6] in its actual or constructive possession that is favorable to defendant bearing on either guilt or punishment.  Included within the ambit of Brady is information which may be utilized to impeach a government witness.  Giglio v. United States, 405 U.S. 150, 154 (1972).  Brady/Giglio material (hereinafter referred to collectively as

---

[6]  For a detailed explanation of the meaning of "material" in the present context, see United States v. Coppa, 267 F.3d 132, 139-142 (2d Cir. 2001).

"<u>Brady</u>" material) must be turned over to the defense sufficiently in advance to allow "for its effective use at trial." <u>United States v. Coppa</u>, 267 F.3d 132, 142 (2d Cir. 2001). With the above general principles in mind, attention will be turned to defendant's <u>Brady</u> requests.

(b) <u>Defendant's Requests</u>. Invoking <u>Brady</u>, defendant has made both specific (pertaining to a microcassette) and general disclosure requests.

(i) <u>Specific Request for Microcassette</u>. Mr. Cleere explains the specific item sought under <u>Brady</u> thusly:

> The defendant, Rodney Morrison respectfully requests the disclosure of certain items seized by the government during [the execution of] an August 2004 search warrant that contain recorded statements of government witnesses threatening Mr. Morrison. Additionally, the defendant seeks preclusion of testimony by government witnesses if no disclosure of the items discussed below is made.
>
> Specifically, defense counsel has become aware that Wynette Randall (a former employee of the Peace Pipe Smoke shop now a government witness) recorded certain phone calls made to the Peace Pipe Smoke shop by Tony Phillips (also a former employee of the Peace Pipe Smoke shop now a government witness) in which Tony Phillips attempted to extort money from Mr. Morrison, threatening violence if payment was not forthcoming. Said calls by Phillips were recorded by Randall (Mr. Morrison's secretary at the time) on microcassette. As of the present date, the cassettes in question (listed on the search warrant inventory) have never been retrieved. Search Warrant inventory attached hereto as Exhibit A. The Government is under obligation to

> disclose all statements made by government
> witnesses.  As such, if no disclosure of the
> cassette tapes in question is made, the
> government should be precluded from calling
> Tony Phillips and/or Wynette Randall as
> witnesses in the case against Mr. Morrison or
> from using their statements and/or testimony
> in any way against Mr. Morrison.

(Cleere Aff. ¶¶ 17–18.)[7]

(ii)  Defendant's General Requests.  Paragraph 23
of Mr. Cleere's affirmation calls for the production, in essence,
of any Brady material in the actual or constructive possession of
the government, regardless of the format in which such material
is found.  To assure that the government complies with its Brady
obligations, "it is requested that the prosecution's file be
produced in Court and examined by the Court and defense counsel."
(Id. ¶ 25.)

c) Discussion

(i)  Microcassette.  Item 6 of the Search Warrant
Inventory refers to a "Microcassette tape," followed by one or
two words which are indecipherable to me.  (See Ex. A to Cleere
Aff.)  Defendant maintains that item 6 reflects that the officers
executing the search warrant took possession of a microcassette,
which seems like a reasonable, albeit possibly erroneous,
position, notwithstanding the unintelligibility of the last
portion of the entry.  The government does not contend otherwise.

---

[7]  Mr. Cleere does not explain the source of his belief as
to what is contained on the subject microcassette.

Rather, it reports that Assistant United States Attorney Bonnie
Klapper notified the then-defense counsel in November 2004 that
the government does not have possession of the microcassette.
The Assistant United States Attorney now assigned to the case,
James Miskiewicz, has indicated that he has been unable to locate
the microcassette but that the search for the item will continue.
Following such additional search, the government indicates that
it will either deliver the microcassette, if found, or otherwise
indicate that "the notation regarding its seizure was erroneous."

I am not privy, as noted earlier, to the basis for Mr.
Cleere's conclusion as to what is recorded on the microcassette.
But I am, nonetheless, concerned about its appearance on the
search warrant inventory and its apparent current unavailability.
Accordingly, a hearing will be held before me on the previously
scheduled date of September 6, 2006 at 10:30 a.m. (see July 21,
2006 Order at 26) concerning the microcassette.  Mr. Cleere
should be prepared to indicate the basis for his belief that the
cassette contains the information that he has reported to the
Court, and the government should be prepared to indicate whether
the cassette was seized during the August 4, 2006 search and, if
so, where it is.  If it was not seized, the government should be
prepared to explain the nature of item number 6 on the inventory
sheet.  In addition, both the government and the defense should
be in a position to furnish case law in support of whatever

position they intend to argue on that date.

(ii) <u>General Brady Request</u>.  With respect to
defendant's general <u>Brady</u> request, the government reports that it
has no material "that would tend to exculpate the defendant of
any crimes . . . charged under the first superseding indictment"
(Gov't's Mem. Opp'n at 23), and the same is true with respect "to
the new crimes charged in the second superseding indictment."
(<u>Id.</u> at 24.)  Regarding <u>Giglio</u> material, the government indicates
it has already provided some <u>Giglio</u> material, and is in the
process of "supplement[ing] discovery under Federal Rule of
Criminal Procedure 16 to include material related to the new
crimes charged in the second superseding indictment which had not
been previously disclosed."  <u>Id.</u>

As noted, <u>Brady</u> material must be furnished sufficiently
in advance of trial to permit its effective utilization by the
defense.  Items delivered belatedly obviously will not satisfy
that standard.

The trial in this case is scheduled to start on
September 18, 2006.  The government has indicated that it has no
intention of seeking an adjournment of the September 18, 2006
trial date and Mr. Smith, <u>subject</u> to possible contrary input from
§ 3005 counsel, objects to any adjournment of that date.  That
qualification by Mr. Smith is significant, however.  It appears
that § 3005 learned counsel, as well as newly retained counsel,

-10-

Mr. Nobel, have had insufficient time to familiarize themselves
with Mr. Morrison's case.  In fact, Mr. Nobel is, I'm told, not
scheduled to return from vacation until September 11th.  (Gov't's
Aug. 23, 2006 Letter to Mr. Cleere at 2-3.)  Under the
circumstances, viewed in conjunction with the fact that Mr.
Morrison's life may be on the line, I find myself questioning
whether the trial will start on September 18, 2006.

      The first order of business on September 6, 2006, will
be for me to discuss with the parties the continued viability of
the September 18th date.  If, after such discussion, it is
decided to proceed as scheduled, the government shall furnish to
the defense any <u>Brady</u> material[8] on or before September 8, 2006.
If another trial date is selected, then the materials shall be
furnished at least ten business days prior to the newly
established date.  And finally, the government is reminded that
its <u>Brady</u> obligations extend not only to items in its actual
possession but also to those under its constructive control.[9]

4.    Disclosure of Impeachment Evidence Concerning
      Rule 801, 803 and 804 Declarants

      Rule 806 provides in pertinent part:

_____

      [8]  "<u>Brady</u> material" for present purposes, as earlier
indicated, includes <u>Giglio</u> material.

      [9]  Defendant's request that he and the Court peruse the
government's file to assure compliance with <u>Brady's</u> disclosure
requirements is denied.  Absent from the request is any reference
to unusual circumstances in this case justifying the atypical
relief sought, nor has any supporting authority been furnished.

When a hearsay statement, or a statement
defined in Rule 801(d)(2)(C), (D), or (E),
has been admitted in evidence, the
credibility of the declarant may be attacked,
and if attacked may be supported, by any
evidence that would be admissible for those
purposes if declarant had testified as a
witness.

Fed. R. of Evid. 806.

Based on Rule 806, the defense seeks the disclosure of "any materials of value in impeaching the out-of-court statements of persons whose declarations [the government] will seek to admit under Fed. R. Evid. 801, 803 or 804 but who [it] does not intend to call at trial . . . ." (Cleere Aff. ¶ 29.)

The government's response is as follows:

It is a prerequisite of Rule 806, that a
statement be admitted pursuant to one of the
grounds set forth in the rule, before
impeachment of a non-testifying declarant may
be considered for admission.  While the
government does not dispute Rule 806, or the
proposition that a non-testifying declarant's
impeachment may constitute <u>Giglio</u> if not
<u>Brady</u> [material], there are no authorities
for immediate disclosure of such potential
material in advance of trial.  Such a rule
would eviscerate <u>Coppa's</u> admonition that
<u>Brady</u> material be disclosed sufficiently in
advance of trial for its effective use.  It
would also be tantamount to providing the
defense, not merely with a list of every
potential witness, but also insight into how
the government intends to proceed with its
case.  MORRISON points to no authority that
requires the government to anticipate or
guess, at this stage, what statement, if any,
may be offered by the government pursuant to
Rule 801(d)(2).  Accordingly, the motion for
immediate disclosure should be denied.

(Gov't's Mem. in Opp'n at 27-28.)

To the extent the defendant's request may be construed as calling for the immediate disclosure of Rule 806 impeachment evidence, it is denied. However, withholding disclosure until the trial is underway may cause unnecessary delays.

In the government's response to the defendant's <u>Brady</u> request, it agreed "to disclose all impeachment evidence relative to anticipated witnesses 10 business days prior to the commencement of jury selection in this case." (<u>Id.</u> at 25.) Of course, not all possible impeachment material is necessarily of sufficient import to fall within the ambit of <u>Brady</u>. <u>Giglio</u>, 405 U.S. at 154-55; <u>Coppa</u>, 267 F.3d at 140-44; <u>United States v. Orena</u>, 145 F.3d 551, 553 (2d Cir. 1998)("[W]e conclude that the impeachment evidence withheld by the government does not meet the <u>Brady</u> standard of materiality"); (<u>see also</u> Cleere Aff. ¶ 31.)

If the government has actual or constructive possession of <u>Brady</u> impeachment material vis-a-vis Rule 806 evidence, such information will be furnished to the defense consistent with the schedule established earlier under section 3(c)(ii) of this opinion. For such evidence not categorized as <u>Brady</u>, the Court recommends — but does not mandate given the absence of authority cited by defendant — that it too be furnished by that date. Should the government be in doubt concerning the label to be attached to the subject evidence, the item or items will be

submitted to me for an _in_ _camera_ review and determination.

Except as noted above, defendant's request for pretrial

disclosure of Rule 806 impeachment material is denied.

5.    Pretrial Disclosure of Jencks Act Materials

As to this request, the defendant explains:

> Under 18 U.S.C. § 3500, the defendant is
> entitled to Jencks Act statements after the
> witness has completed testimony on direct
> examinations.  Courts have on a case-by-case
> basis invoked their discretion to require
> production of Jencks Act statements in
> advance of trial so that unnecessary delays
> will not take place during the course of
> trial.  United States v. Moceri, 359 F. Supp.
> 341 (N.D. Ohio 1973).

(Cleere Aff. ¶ 33.)

At the outset, it warrants mention that Moceri does not

stand for notion advanced by defendant, viz. that this Court may,

in the exercise of its "discretion," override the statutory

timetable for disclosure established by § 3500.  More

importantly, the settled law in this Circuit indicates that I may

not.  See, e.g., In re United States, 834 F.2d 283, 287 (2d Cir.

1987)("[W]e hold that, as to the district court's order for the

production of statements of government witnesses, the Jencks Act

controlled, and the district court had no inherent power to

modify or amend the provisions of that Act").  Accordingly, this

request is denied.[10]

---

[10]    Under the above caption concerning pretrial disclosure of
Jencks material, the following paragraph appears:

6.    Preservation and Disclosure of Handwritten Notes
      of Law Enforcement Officials

      "[T]he government does not oppose the request to have
handwritten notes preserved." (July 18, 2006 Letter to Court
from A.U.S.A. Miskiewicz.) It does, however, oppose defendant's
request for their immediate disclosure.

      The production of such notes, if not Brady material,
presumably would be controlled by the Jencks Act, 18 U.S.C. §
3500. United States v. Sainato, 29 F. Supp. 2d 116, 117
(E.D.N.Y. 1998). As noted previously, the statute, not the
Court, controls the discovery timeable for Jencks material (i.e.
after the witness has testified on direct) unless the government
consents to earlier disclosure. Accordingly, this request is
denied.

---

            In addition to the foregoing the defendant
            requests the opportunity to interview each
            and every witness intended to be called by
            the government, including but not limited to,
            witnesses in the federal Witness Protection
            Program, immediately but no later than three
            (3) weeks prior to the commencement of the
            trial of this action.

(Cleere Aff. ¶ 37.)

      The quoted language is coextensive with the request;
however, nothing further is offered by way of authority, basis
for the request, or otherwise. As a result, the request is
denied; it may be renewed if properly presented with supporting
authority or, if no such authority exists, with an acknowledgment
of same accompanied by an explanation as to why new ground should
be charted in this case.

7. <u>Disclosure of A Witness List</u>

The caption that defendant attaches to this request is somewhat of a misnomer for it seeks not only the names and contact information of "all prospective government witnesses, including expert witnesses [under Fed. R. Crim. Proc. 16(a)(1)(G)]," (Cleere Aff. ¶ 41), but the same information as to "persons having knowledge of this case that it [, the government,] does not plan to call as witnesses." (<u>Id.</u> ¶ 44.)

The government does not object to the pretrial disclosure of the requested information but, citing safety and related concerns, "requests that no further witness identification[11] be ordered until a time shortly before jury selection." (Gov't's Mem. Opp'n at 31.)

Having considered the arguments of counsel, and the relative complexity of this case, the government is directed to disclose the requested list consistent with the schedule established under section 3(c)(ii) of this opinion.

8. <u>Disclosure of Search and Seizure and Related Materials Including but not Limited to Documentation in Support of the Arrest Warrant and any Supporting Affidavits or Documentation in Support of the August 4, 2004 Search Warrant</u>

This portion of Mr. Cleere's affirmation consists of nine paragraphs, numbered 45 through 53. Paragraph 45 begins

---

[11] The government indicates that it has already furnished the defense "with the names of at least six likely government witnesses." (Gov't's Mem. Opp'n at 30.)

with "To the extent such materials have not already been produced," followed by a list of the items being sought, some general in nature, some specific.  Since the Court has not been advised as to which of the listed items have "already been produced," I am being asked to rule on items which may well be moot.  And beyond that, <u>no</u> authority nor argument accompanies the requests in paragraph 45, or any of the other eight paragraphs, all of which share the prefatory language "the government is requested to disclose."  Seemingly, the Court has been served, in essence, with a copy of an omnibus discovery demand devoid of specificity as to what I am being asked to do and, more importantly, why, except for the general language in the Notice of Motion seeking an order granting the multiple items of relief therein requested.

In response, the government indicates that considerable discovery has already been furnished to current counsel and their numerous predecessors.  Additionally, as explained by the government:

> On July 26, 2006, by letter to then co-counsel Mr. Anthony P. Gallo, all defense counsel and the defendant were invited to attend a July 31, 2006 discovery inspection session at the United States Attorney's Office to commence, what likely would have been several days of, inspection and review of documents that you previously indicated you were uncertain you had received from prior counsel, as well as material, including hundreds of pages of telephone toll logs relevant to the murder-for-hire charge, which

are now discoverable under Rule 16, with the
July 11th second superseding indictment.  The
defense was also notified of the government's
willingness to make available voluminous
computer records upon your retention of an
individual proficient in the duplication of
digital records.  You were provided with the
telephone number of the IRS special
agent/computer specialist in whose custody
these items remain, and encouraged to contact
that agent directly to determine the
appropriate hardware and software you would
need [to] "image" these records, portions of
which the government intends to use at trial
both with respect to the various counts as
well as the forfeiture allegations.

On July 27, 2006, during a phone
conversation, Mr. Gallo requested that the
discovery inspection and other discovery
matters be placed on hold and adjourned
without date.  To date, neither you nor Mr.
Smith have requested to re-schedule an
inspection, nor have you contacted the IRS
agent to obtain the electronic files
referenced in my July 26, 2006 letter.

(Aug. 23, 2000 Letter of A.U.S.A. Miskiewicz to Mr. Cleere at 1-
2.)

I am unable to determine on the papers submitted

whether the information said to have been made available to the

defense on July 31, 2006$^{12}$ would have covered all, or only some

of the items sought in this portion of defendant's June 26, 2006

motion.  In any event, some of the information requested in

paragraphs 45 to 53 constitutes discoverable items under Rule 16.

---

[12] Supplemental discovery pursuant to Rule 16 of the Federal
Rules of Criminal Procedure was also furnished to the defense
under a covering letter dated July 26, 2006 from A.U.S.A.
Miskiewicz addressed to Anthony P. Gallo, Esq.

To the extent "such materials have not already been produced" (Cleere Aff. ¶ 45), the government is directed to make them available to defendant forthwith.  Moreover, the parties are directed to reschedule the "discovery inspection session" that was to be held on July 31st, for a date no later than August 31, 2006.  Following that inspection, defense counsel may renew this portion of his current motion indicating which items specifically (or, if need be, generally), are still being sought, if any, with supporting argument and authority.

Except as noted above, this request is denied, albeit without prejudice for the reasons indicated.

9.  Suppression and Return of U.S. Currency and
    Hand[]guns Seized During the Search Warrant
    Executed [on] August 4, 2004

Item 9 in the Notice of Motion suggests that the current suppression motion is directed to two of the multiple types of evidence seized during the execution of a search warrant at the Peace Pipe shop, to wit, the weapons taken from the office of defendant's former secretary, and "[a]pproximately $222,000.00 . . . seized from the safe in Mr. Morrison's private office." (Cleere Aff. ¶ 57.)  However, in defendant's supporting Affirmation and Reply, the weapons alone are discussed.  As a result, the weapons — more specifically, defendant's standing to assert that their seizure violated his Fourth Amendment rights — is the only item addressed in this portion of the opinion.

To warrant the requested Fourth Amendment evidentiary hearing, defendant must demonstrate (1) standing to assert the claim, and (2) the existence of material issues of fact. Typically those prerequisites are satisfied via the submission of an affidavit by defendant or other person with first hand knowledge. See United States v. Shaw, 260 F. Supp. 2d 567, 570 (E.D.N.Y. 2003) and cases cited therein. Here, no such affidavit has been furnished. The affirmation of one of defendant's attorney's, Mr. Cleere, however, has been submitted. Therein counsel argues at some length that the government will be unable to prove the weapon possession counts at trial. While that argument is irrelevant to the issue at hand, viz. whether the subject weapons were seized in violation of the Fourth Amendment, the information proffered by counsel raises questions, obviously unintended, as to defendant's standing to pursue that claim. As explained by counsel:

> Rodney Morrison certainly did not have the power to exercise dominion and control over the guns that were locked in a safe that he had no combinations to. Additionally, Mr. Morrison was unable to gain access to the secretary's office containing the safe where the handguns were seized. In order for Mr. Morrison to even enter the Peace Pipe Smoke Shop several entry procedures needed to be followed. First, Mr. Morrison would have to be let in the employee entrance since he possessed no key to the Smoke Shop building. Once inside, an alarm code had to be entered or the alarm would then sound. Morrison did not know the alarm code and said alarm needed to be deactivated by an employee. To gain

access to the smoke shop's shipping area,
which led upstairs to Mr. Morrison's office,
Morrison had to be "buzzed" in by an
employee.  This procedure was followed daily
as a security measure and is how Morrison
gained access to his office on a routine
basis.  The Secretary's office containing the
safe where the handguns were found (and
ultimately seized) was inaccessible by Mr.
Morrison due to said office's thumbprint
identification entry system.  At the time of
the search warrant, only Peace Pipe Smoke
Shop employee Wynette Randall's thumbprint
would be able to open the aforementioned
secretary's office.  Only Randall had access
[to] the secretary's office and the
combination to the safe therein.

(Cleere Aff. ¶ 63.)

     At this juncture, a brief overview of the applicable

law should prove helpful.  To have standing for Fourth Amendment

purposes, a movant must demonstrate "a legitimate expectation of

privacy" in the area searched; here, defendant's former

secretary's office and safe.  <u>Rawlings v. Kentucky</u>, 448 U.S. 98,

105-06 (1980).  Stated differently, "Fourth Amendment rights are

personal rights which may not be vicariously asserted."  <u>Brown v.

United States</u>, 411 U.S. 223, 230 (1973).  A person who claims to

be aggrieved by the illegal search of another person's office, to

which he has no access either personally or via storage of

property, may not legitimately claim that <u>his</u> Fourth Amendment

rights have been compromised.  <u>Cf</u>. <u>Lenz v. Winburn</u>, 51 F.3d 1540,

1549-50 (11th Cir. 1995)(grandparents did not have reasonable

expectation of privacy in closet in their home used exclusively

by grandchild) and <u>People v. Fleming</u>, 36 Ill. App. 3d 612, 345 N.E. 2d 10, 14-15 (Ill. App. Ct. 1975)(where defendant and his brother shared an apartment and brother kept his bedroom locked and kept key in his possession, defendant had no reasonable expectation of privacy in the brother's bedroom), both cited approvingly in <u>United States v. HAQQ</u>, 278 F.3d 44, 50 (2d Cir. 2002); <u>see also</u> <u>Rakas v. Illinois</u>, 439 U.S. 128, 143 (1978)(the "capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation <u>in the invaded place</u>") (emphasis added).

Given, as reported by Mr. Cleere, that defendant purportedly lacked the ability to access his former secretary's office, no less her safe in which the firearms — said to be hers — were found, it is clear that he lacks standing to seek the suppression of those items.  That the search may have been directed at Mr. Morrison, i.e. he was the "target" of the search, does not alter the above result (<u>id.</u> at 138), nor does the fact that he is the one facing criminal charges based on the fruits of the search (<u>id.</u> at 134).

In urging a contrary result, defendant relies on the August 3, 2006 affidavit of "Glenn Mullen, Special Agent, IRS." In that affidavit, the affiant indicated to the issuing magistrate judge that Charolette Morrison and Rodney Morrison

"own the searched premises," that the target of the search were items owned by defendant, and that "Peace Pipe had a computerized security system which allowed Morrison to view the premises from remote sites." (Def.'s Reply to Gov't's Mem. Opp'n at 7.)

Defendant's argument is doubly flawed in that: (1) the items referenced in Special Agent Mullen's affidavit, without more, do not establish a legitimate expectation of privacy in the area searched; otherwise, by way of hyperbole, such a claim could be made, e.g., by the targeted owner of a public restaurant, with a surveillance system, concerning an item seized by a member of law enforcement from under a meat tray on the buffet table, and more importantly (2) an expectation of privacy for present purposes has both subjective and objective components. <u>See generally</u> <u>Jones, Reasonable Expectation of Privacy: Searches, Seizures, and the Concept of Fourth Amendment Standing</u>, 27 U. Mem. L. Rev. 907, 922-23 (1977), and cases cited therein. While sworn information derived from a third party, such as Special Agent Mullen, might be adequate to establish the objective component, the situation is otherwise as to the subjective part of the analysis.

In sum, it is the defendant's burden to prove that he had a legitimate expectation of privacy as to his former secretary's office and safe. Absent such a showing, he may not seek the suppression of the subject firearms under the Fourth

Amendment. Special Agent Mullen's affidavit submitted in support of the application for the search warrant is not, contrary to the position urged by the defense, sufficient to satisfy that requirement.

For the reasons indicated, defendant's motion to suppress the subject firearms is denied, for lack of standing albeit without prejudice, should counsel elect to pursue the matter further consistent with this opinion. Since the defendant's motion is limited to the firearms, a Fourth Amendment evidentiary hearing will not be conducted on September 6, 2006.

10. Production of the Grand Jury Proceeding Minutes and/or Dismissal Pursuant to Rule 6(e) and Preclusion of the Government From Sharing Grand Jury Proceeding Minutes/Transcripts With Other Law Enforcement Agencies

Defendant's request for the grand jury minutes is denied. To warrant their release, "specific factual allegations of government misconduct" is required. <u>United States v. Torres</u>, 901 F.2d 205, 232 (2d Cir. 1990). Apparently in an effort to meet that standard, defendant proffers:

> It has come to defense counsel's attention that certain witnesses were interviewed by law enforcement agents of the Suffolk County Police Department prior to the Grand Jury presentations in this matter. During the course of their interviews with law enforcement officials, these witnesses gave specific factual information indicating that Mr. Morrison had no involvement with the alleged Arson for which he is charged. The government's obligation under <u>Brady</u> would have been to present these exculpatory statements and/or witnesses in the Grand Jury

> proceedings of this matter. Upon information
> and belief, none of these witness with
> exculpatory information testified before the
> Grand Jury. If such information was not
> presented nor disclosed, clear grounds for
> dismissal of the charges exists.

(Cleere Aff. ¶ 72.)

The above recitation — based on, at best, second hand information and on "information and belief" absent identification of the source of that belief — does not satisfy the <u>Torres</u> specificity requirement. Moreover, neither <u>Brady</u> nor other law applicable in this Circuit, mandates that exculpatory evidence must be presented to a grand jury. See <u>U.S. v. Regan</u>, 103 F.3d 1072, 1081 (2d Cir. 1997) (citing <u>U.S. v. Williams</u>, 504 U.S. 36, 51-52 (1992)).

Defendant's other request (concerning the sharing of grand jury minutes with other law enforcement agencies) appears solely in the Notice of Motion, obviously absent any concomitant discussion or authority. Accordingly the request is denied.

11. Transfer to the Southern District of New York
     Pursuant to FRCP 21

Having reviewed the submissions of counsel, the Court rejects defendant's request for a change of venue. As noted by the government, the publicity concerning this case has not been extensive. Indeed, the existence of prejudice against defendant in the five counties or boroughs from which a jury will be selected is problematic, and surely, if present at all, has not

escalated to the point of being "so great" as to warrant a granting of the relief requested. Fed. R. Crim. P. 21(a). Assuming that an appropriate voir dire is conducted, there currently is no reason to believe that jurors from this district will not provide defendant with "a fair and impartial trial."

<u>CONCLUSION</u>

For the reasons indicated, the items of relief listed in defendant's June 26, 2006 Notice of Motion have been granted in part and denied in part.[13]

SO ORDERED.

Dated:    August 25, 2006
          Central Islip, New York


                                    /s_____
                                    Denis R. Hurley,
                                    United States District Judge

---

[13]    Defendant's motion to dismiss the charges in the first superseding indictment based on a claimed violation of the Speedy Trial Act is the subject of a separate opinion bearing today's date. And to the extent I may not have addressed an outstanding application (because, e.g., it was improperly broached for the first time in a Reply brief or in one of the multitude of letters submitted after the June 26, 2006 motion was sub judice) please let me know at the September 6, 2006 hearing date.