UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------X
UNITED STATES OF AMERICA,

                                                  04-CR-699 (DRH)(S-2)
                                                  <u>MEMORANDUM AND ORDER</u>
-against-                                      on Defendant's Motion for a
                                                  Temporary Stay (doc. #161)

RODNEY ARNOLDO MORRISON,

                 Defendant.
---------------------------------------------------X

A P P E A R A N C E S:

**For the Government:**
      Roslynn R. Mauskopf
      United States Attorney
      Eastern District of New York
      One Pierrepont Plaza
      Brooklyn, New York 11201
            **By:** James M. Miskiewicz, A.U.S.A., and
                    Richard Thomas Lunger, Jr., A.U.S.A

**For Defendant:**
      Law Offices of Peter Smith & Associates
      232 East Main Street
      Huntington, New York 11743
            **By:** Peter Smith, Esq.

      Thomas P. Cleere, Esq.
      3075 Veterans Memorial Highway
      Suite 200
      Ronkonkoma, New York 11779

      Colleen Quinn Brady, Esq.
      99 Hudson Street, 8th Floor
      New York, New York 10013

      Daniel Nobel, Esq.
      401 Broadway, 25th Floor
      New York, New York 10013

**HURLEY, Senior District Judge:**

## INTRODUCTION

The Defendant moves this Court for an order granting a temporary stay of a portion of the *Ex Parte* Post-Indictment Restraining Order (the "Restraining Order") this Court issued July 11, 2006. (*See* Restraining Order (doc. #98).) Pursuant to the Restraining Order, the Defendant was to, *inter alia*, "repatriate certain funds and other things of value on deposit in accounts located in foreign jurisdictions." (*See id.* at 2.) At issue are four accounts maintained in Costa Rica (the "Costa Rican accounts") (*see id.*, Attachment A at ¶¶1-4), an account maintained in Mexico (the "Mexican account") (*see id.*, Attachment A at ¶12), and an account maintained in Switzerland (the "Swiss account") (*see id.*, Attachment A at ¶15).[1] The Swiss government has advised the U.S. Government that it has restrained the Defendant's Swiss account maintained at Credit Suisse. (*See* Letter from Richard T. Lunger, Assistant U.S. Attorney, to Hon. A. Kathleen Tomlinson, Magistrate Judge, at 2 (July 31, 2006) (doc. #130).) However, Defendant has not repatriated the Costa Rican or Mexican accounts, arguing that to do so will violate his Fifth Amendment privilege against self-incrimination. (*See* Def.'s Affirmation in Support of Mot. at Point I, ¶8 ("Affirmation") (part of doc. #161).)

Upon consideration of the papers submitted and the evidence in record, and for the reasons stated below, the Defendant's motion is DENIED.

---

[1] For convenience, the Court may refer to these assets collectively as either the "foreign accounts" or the "foreign assets".

## PROCEDURAL BACKGROUND

While the Court assumes the parties' familiarity with the facts of the case, it will summarily provide relevant background for context. In early May 2006, prior to the Government's Superseding Indictment and its application for the Restraining Order in mid-July 2006, the Defendant sought release from custody, making a bail application to this Court. It was Defendant's third bail request. As part of his bail application, Defendant voluntarily submitted a financial compilation of assets over which he asserted control. This compilation revealed assets in excess of $56 million, including the Costa Rican, Mexican, and Swiss accounts. Ruling from the bench, Magistrate Judge Tomlinson denied Defendant's bail application. (*See* May 16, 2006, doc. entry #81.) Defendant moved for reconsideration. (*See* doc. #86.) After oral argument, the Court issued a detailed order denying Defendant's reconsideration motion. (*See* July 21, 2006 Order at 9-24 (doc. #120).) The Defendant appealed to the United State Court of Appeals for the Second Circuit. In a summary order and based on the reasoning articulated by this Court, the Second Circuit affirmed the denial of Defendant's latest bail request. *United States v. Morrison*, No. 06-3621-CR, slip op., 2006 WL 2793018 (2d Cir. Sept. 25, 2006) ("Upon a review of the record, and substantially for the reasons set forth in Judge Hurley's careful and comprehensive order, we conclude that the District Court committed no error. Accordingly, we AFFIRM the order of the District Court.") (emphasis in original).

## THE INSTANT MOTION

The Defendant now argues that complying with the Court's Restraining Order will violate his Fifth Amendment privilege against self-incrimination. He claims he was required to seek court intervention because the Government refused to grant him limited act-of-production

immunity.

The Government opposes the Defendant's motion, arguing:

> although the government intends to introduce in its case-in-chief at trial evidence of the existence and location of Morrison's foreign assets that he disclosed at this bail hearing, it does not intend to use the ministerial act of repatriation to incriminate him. Moreover, the act of repatriating the funds in these accounts does not require incriminating testimony since the existence and location of the accounts are already known to the government based upon Morrison's prior voluntary introduction of records and testimony disclosing his foreign assets during the course of his bail hearing.

(Letter from Richard T. Lunger, Assistant U.S. Attorney, to Hon. Denis R. Hurley, Sr. District Judge, at 1 (Sept. 13, 2006) (hereinafter, "Gov't Opp'n Letter") (doc. #169).)[2] The thrust of the Government's argument is that since it was the Defendant who revealed the existence of the foreign accounts through the production of the compilation and through the testimony of Certified Public Account ("CPA") Lynn T. Domachowski at his bail hearing, "the existence and location of the subject accounts are 'foregone conclusion[s]' and Morrison's repatriation of them 'adds little or nothing to the sum total of the Government's information.'" (*Id.* at 3 (quoting *Fisher v. United States*, 425 U.S. 391, 411 (1976); and citing *In re Grand Jury Subpoena Duces Tecum dated Oct. 29, 1992*, 1 F.3d 87, 93 (2d Cir. 1993)).) Therefore, the Government posits, there is no basis for Morrison to assert an act-of-production privilege. (*See id.*)

In reply, Morrison's newest attorney, Daniel Nobel, counters:

> The government's theory of why Peace Pipe is a racketeering enterprise, and why all assets purchased from profits earned by

---

[2] For clarity, it should be noted that the Government submitted a prior letter, dated September 11, 2006, in opposition to Defendant's present motion. (*See* doc. #167.) The September 11th letter is virtually identical to its Opposition Letter now being discussed. (*Cf.* doc. #169.) To avoid confusion, the Court will refer only to the September 13th letter.

> Peace Pipe are forfeitable under 18 U.S.C. § 1963, is entirely
> dependent on their [sic] proving that Rodney Morrison, the
> defendant in this matter, is not just the manager of Peace Pipe but
> is in fact its owner.

(Letter from Daniel Nobel, Esq., to Hon. Denis R. Hurley, Sr. District Judge, at 1-2 (Sept. 25, 2006) (hereinafter, "Nobel Reply Letter") (doc. #176).) The crux of Nobel's counter-argument is that the Government has glossed over the issue of ownership, but that "[t]he ownership issue is central . . . to the forfeiture action" and "[a]n action that concedes ownership invokes Mr. Morrison's 5th Amendment rights." (*Id.* at 2.) In any event, the Defendant requests an evidentiary hearing as to the restraint sought to be exercised over the subject foreign accounts, arguing that repatriation of the funds in these accounts could adversely affect the investment income generated by these account. (*See id.* at 14-15.) There is no argument that the Defendant needs these funds to pay for counsel or for living expenses. Rather, Defendant clearly concedes that these "issues [are] not presently relevant here." (*Id.* at 14.)

In its sur-reply, the Government reiterates that it "does not intend to introduce evidence of Morrison's act of repatriating the subject accounts against him in its case-in-chief at trial." (Letter from Richard T. Lunger, Assistant U.S. Attorney, to Hon. Denis R. Hurley, Sr. District Judge, at 1 (Sept. 29, 2006) (hereinafter, "Gov't Sur-Reply Letter") (doc. #182).) The Government further points out that it is federal forfeiture law, not state property rights law, that is controlling in this instance. (*See id.* at 2.) "In forfeiture cases, the court must look beyond bare legal title in order to determine whether the record owner of the property is the true owner, or merely a 'strawman' set up to avoid forfeiture." (*Id.* at 3 (citing *United States v. One 1990 Nissan Pathfinder*, No. 92-1336, 1994 WL 476704, at *3 (N.D.N.Y. Sept. 2, 1994)).) In this context, "the issue of ownership "'turns primarily upon the identity of the individual exercising

dominion and control over the [property], they being regarded as the true owner.'" (*Id.* (quoting *One 1990 Nissan Pathfinder*, 1994 WL 476704, at *3 (quoting *United States v. One 1982 Porsche 928*, 732 F. Supp. 447, 451 (S.D.N.Y. 1990)).) The Government, making short shrift of Defendant's claim that it is his wife who owns the Peace Pipe, points to various indications that Mrs. Morrison is merely the Defendant's nominee; thus, assertions of Mrs. Morrison's ownership ring hallow. Finally, characterizing the Defendant's request for an evidentiary hearing as "half-hearted" (*see id.* at 6), the Government takes the position that, given the grand jury and the Court's finding of probable cause, together with the facts of this case (*i.e.*, that Defendant has not made a showing of need for the funds sought), no hearing is warranted.

## DISCUSSION

*A.  The Fifth Amendment Argument*

The Fifth Amendment states:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentation or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; *nor shall be compelled in any criminal case to be a witness against himself*, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

U.S. Const. amend. V. (emphasis added). Here, the issue is whether Defendant's repatriating funds held in the identified foreign accounts is the same as compelling him to be a witness against himself. Based of the fact scenario of this case, the Court must conclude that the repatriation sought here is not equivalent to compelled self-incrimination which violates the Fifth Amendment.

The Fifth Amendment does not protect from disclosure private information that was obtained without the compelling of self-incriminating testimony. *See Fisher v. United States*, 425 U.S. 391, 400 (1976). In *Fisher*, the Supreme Court affirmed the production of an accountant's work papers in a taxpayer's possession because their existence was "a foregone conclusion" and the taxpayer's concession that he had those work papers "add[ed] little or nothing to the sum total of the Government's information . . . ." *Id.* at 411. Therefore, requiring the taxpayer to produce those work papers, via the enforcement of a summons, did not violate any constitutional right. *See id.*

This case is similar. The revelation of the subject foreign accounts was not compelled; rather, the existence of these accounts was voluntarily offered. In his third bail request, Defendant, through a compilation prepared by his CPA, as well as her testimony, *voluntarily* disclosed the existence of the foreign accounts. Importantly, the CPA testified that, but for being informed of said accounts, she would have no way of knowing of their existence. Indeed, in its July 21, 2006 Order, the Court highlighted this fact. (*See* July 21, 2006 Order at 14.). And, in his Reply Letter, Attorney Nobel concedes "the *existence of the assets was affirmatively acknowledged by Mr. Morrison . . . .*" (Nobel Reply Letter at 15 (emphasis added).) The very fact that it was Defendant who presented this Court with information about the foreign accounts–indeed, offering them as part a bail "package" to secure his release–undermines Defendant's current efforts to resist their repatriation on the claim that the act of repatriation will violate his Fifth Amendment right against self-incrimination. The Fifth Amendment privilege "protects a person only against being incriminated by his own compelled testimonial communications." *Fisher*, 425 U.S. at 409. Given the factual scenario of this case, the act of

7

repatriating the foreign assets does not involve testimonial self-incrimination. *See, e.g., Fisher*, 425 U.S. at 411 ("The question is not of testimony but of surrender.") Much like in *Fisher*, the Defendant's repatriation of the foreign assets adds little or nothing to the sum total of the Government's information. *See also SEC v. Bankers Alliance Corp.*, No. 95-0428, 1995 WL 590665, at *3 (D.D.C. May 5, 1995) (rejecting defendant's invocation of the Fifth Amendment where defendant was refusing to disclose the location and disposition of investor funds that were known to the court). Therefore, there is no basis for the Defendant to raise claim a Fifth Amendment privilege in resisting the directives of the Restraining Order as it concerns the foreign assets.

In any event, the Government has explicitly stated: "[A]lthough the government intends to introduce in its case-in-chief at trial evidence of the existence and location of Morrison's foreign assets that he disclosed at his bail hearing, it does not intend to use the ministerial act of repatriation to incriminate him." (Gov't Opp'n Letter at 1; *see also* Gov't Sur-Reply Letter at 1 (reiterating that it "does not intend to introduce evidence of Morrison's act of repatriating the subject accounts against him in its case-in-chief at trial.")). Be assured that the Court shall hold the Government to its representation.

B.      *The Ownership Argument*

After his initial argument against repatriation of the foreign assets sounding in Fifth Amendment violation, the Defendant raises another, later argument regarding ownership of the foreign accounts. The Defendant asserts that a restraining order cannot be imposed against the foreign assets because he is not the owner of those accounts. This argument is premature and, in

8

any event, must fail.

When the Government seeks a restraining order pursuant to 18 U.S.C. § 1963(d)(1), all it "is required to do at that stage is to articulate a cogent thesis or theory of its entitlement, thereby affording defendants sufficient notice of the government's claim to enable them to prepare a defense." *United States v. Regan*, 699 F. Supp. 36, 38 (S.D.N.Y. 1988); *see also United States v. Regan*, 858 F.2d 115 (1988). Here, in its Restraining Order, the Court stated, *inter alia*:

> It further appearing to the satisfaction of the Court that the United States has moved, *ex parte*, for a Restraining Order pursuant to 18 U.S.C. § 1963(d)(1) to preserve the status *quo* and prevent the defendant, his agents and nominees, from alienating, encumbering, or wasting the property subject to forfeiture and to repatriate certain funds and other things of value on deposit in accounts located in foreign jurisdictions; and
>
> It further appearing to the satisfaction of the Court that probable cause has been shown that Peace Pip Smoke Shop, www.smokersden.com, including their employees and associates, and the defendant RODNEY ARNOLDO MORRISON constitutes an "enterprise," as defined in 18 U.S.C. § 1961(4), and that RODNEY ARNOLDO MORRISON participated in the conduct of such enterprise's affairs through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c), and a racketeering conspiracy, in violation of 18 U.S.C. § 1962(d); and
>
> *It further appearing to the satisfaction of the Court that probable cause had been shown that the properties identified in Attachment A of this Order are subject to forfeiture, pursuant to 18 U.S.C. § 1963(a), upon the grounds that they are (1) interests MORRISON has acquired or maintained in violation of 18 U.S.C. § 1962; (2) MORRISON's interests in the racketeering enterprise which MORRISON established, operated, controlled, conducted, and participated in the conduct of, in violation of 18 U.S.C. § 1962; and (3) property constituting, or derived from, proceeds which MORRISON obtained, directly or indirectly, from racketeering activity, in violation of 18 U.S.C. § 1962*; and
>
> It further appearing to the satisfaction of the Court that probable cause has been shown from the entry of this Restraining Order to preserve and repatriate property named in Attachment A of this Order, based upon the Superseding Indictment and the supporting Declaration filed by the United States.

9

(Restraining Order at 1-3 (emphasis added).) Thus, as indicated by the emphasized text above, the Government articulated a cogent thesis or theory of its entitlement. Likewise, the Defendant has been provided sufficient notice of the Government's claim to enable him to prepare a defense.

Furthermore, the purpose of a restraining order is "to secure the government's forfeitable interests in [the event] of conviction." *Regan*, 699 F. Supp. at 37. As the Second Circuit determined:

> such orders were distinguishable from general restraining orders, in that, orders under § 1963(d)(1)(A) are designed only to preserve property for forfeiture following a RICO conviction, and thus they closely resemble remedies such as garnishment or attachment, which may be directed routinely at third-parties, who have no interest in the merits of the underlying litigation. . . . [I]n appropriate circumstances–where restraints against indicted RICO defendants are insufficient to preserve potentially forfeitable property–an order, pursuant to § 1963(d)(1)(A), which is directed to unindicted third-parties, may be entered to preserve the availability of potentially forfeitable assets after a RICO conviction.

*United States v. Paccione*, 964 F.2d 1269, 1275 (2d Cir. 1992) (citing *United States v. Regan*, 858 F.2d 115, 120 (2d Cir. 1988)) (further citation omitted).

The Government does not have to establish the right to forfeiture at a pretrial hearing. *See Regan*, 699 F. Supp. at 38. As Defendant's counsel is aware, the Government may proceed with a forfeiture action only if there is a conviction. Since the case has not yet proceeded to trial, arguments regarding ownership of assets, particularly the foreign accounts, are premature. *See generally Uecker & Assocs., Inc. v. L.G. Hunt & Assocs., Inc.* (*In re The American Basketball League, Inc.*), 317 B.R. 121, 126 ( Bankr. N.D. Cal. 2004) (explaining that criminal forfeiture proceedings occur in two stages: the entry of a preliminary order of forfeiture and the ancillary

proceeding, which provides "due process protections to innocent third parties that may have an interest in the forfeiture property by providing a forum to adjudicate the validity of their interest"). If a forfeiture proceeding is initiated in this case and Mrs. Morrison asserts interest in properties forfeited, the Court will hear her ownership arguments then. *See* 18 U.S.C. § 1963(*l*). (Indeed, the Court will hear the arguments of any innocent third parties that may have an interest in the forfeiture properties.)[3]

## C.  *The Need for an Evidentiary Hearing*

Arguing considerations of due process and citing to Second Circuit precedent and decisions of this Court, *see Krimstock v. Kelly*, 306 F.3d 40, 49 (2d Cir. 2002); *United States v. Puello*, 841 F. Supp. 1155, 1161 (E.D.N.Y. 1993) (Hurley, J.), the Defendant requests an evidentiary hearing regarding the foreign accounts. Significantly, though, the Defendant notes its understanding that due process principles "may not always dictate that a hearing be held because seizures in criminal cases under 18 U.S.C. § 1963 have been found to pass minimal constitutional muster because of the implicit findings of a Grand Jury preceding the imposition of post-indictment restraints." (Nobel Reply Letter at 14.) Yet, relying on *United States v. Monsanto*, 924 F.2d 1186 (2d Cir. 1991), the Defendant highlights two instances where hearings should be held: where funds are needed for counsel or where they are need for living costs. (*See*

---

[3] In any event, as the Government correctly points out, if and when there is a forfeiture proceeding in this case, "the court must look beyond bare legal title in order to determine whether the record owner of the property is the true owner, or merely a 'strawman' set up to avoid forfeiture." (Gov't Sur-Reply Letter at 3 (citing *United States v. One 1990 Nissan Pathfinder*, No. 92-1336, 1994 WL 476704, at *3 (N.D.N.Y. Sept. 2, 1994)); *see also id.* at 2 (collecting cases).) The Court will cross that proverbial bridge if and when it gets to it.

11

Nobel Reply Letter at 14.) *See also United States v. Farmer*, 274 F.3d 800, 805 (4th Cir. 2001) (holding that where a defendant both raises a claim of indigency and presents credible evidence that some seized assets are untainted, due process requires a limited hearing to challenge continued restraint of assets).

Yet, the Defendant does not claim that such needs exist here. Rather, he argues that the instant Restraint Order:

> in contrast to the restraint of domestically held assets, requires divestiture of investment assets and reallocation of those assets to an investment vehicle selected not by the investor but by an agency of the government. Because of the amount that is at issue [,] irreparable harm is likely to result from the resulting substantial decrease in investment income.

(Defendant's Reply Letter at 15 (dated Sept. 25, 2006).)

First, assuming the Defendant was entitled to a hearing because the foreign assets he has been ordered to repatriate would have to be liquidated, the Court is troubled by the Defendant's lack of a proffer to substantiate the alleged substantial decrease in investment income. The Defendant has presented no more than bald allegations on this claim; his submissions are void of any specific and quantitative information regarding the alleged irreparable harm to be suffered by the repatriation of the foreign assets. Second, similar to other submissions filed on his behalf, the Defendant has not cited any authority for the proposition that potential loss of investment income warrants a hearing on the continued restraint of assets.[4] Indeed, the Court has found no

---

[4] Assuming, *arguendo*, that Defendant was able to direct the Court's attention to such authority, the Court notes that the Defendant's burden of persuasion on this matter would be substantial. The fact that the assets are foreign would probably weigh heavily against alternative means of ensuring the preserving the status *quo* of these assets. *See, e.g., Puello*, 814 F. Supp. at 1164 (listing alternative methods of preserving the status *quo* prior to seizure). Moreover, the Court is uncertain whether the ability of the Government to monitor the foreign accounts (*see*

such authority. Rather, the case law is clear (as the Defendant implicitly acknowledges), that such a hearing is warranted on two narrow grounds only: when there is a claim the restraint of assets hinders a defendant's right to counsel or when there is a claim the restraint renders a defendant indigent. It is clear from the record to date that the Defendant is not entitled to an evidentiary hearing on either basis. Therefore, Defendant's request for an evidentiary hearing is denied.

## CONCLUSION

For the reasons stated above, Defendant's Motion for a Temporary Stay (doc. #161) is DENIED. If the Defendant does not repatriate the subject foreign assets within ten (10) days of this Order, the Government may renew its request for an order of contempt.

**SO ORDERED.**

Dated: October 19, 2006
      Central Islip, New York        /s/_____
                                                    Denis R. Hurley,
                                                    United States Senior District Judge

---

Nobel Reply Letter at 13) would be a sufficient guarantee that the assets in those accounts would be available for seizure if forfeiture follows. The Court is uncertain if the Government would be amenable to the Defendant's proposal that "[t]he defense is prepared to periodically provide the government with documents that confirm that the owners of the subject assets are not dissipating them during the pendency of any relevant litigation" (*id.* at 14.), as it offered no response in its submissions.