```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------X
UNITED STATES OF AMERICA,
                                        MEMORANDUM AND ORDER
          -against-                     04-CR-699 (DRH)(S-2)


RODNEY ARNOLDO MORRISON,

               Defendant.
------------------------------X
```

A P P E A R A N C E S:

For the Government:
    Roslynn R. Mauskopf
    United States Attorney
    Eastern District of New York
    One Pierrepont Plaza
    Brooklyn, New York 11201
      By: James M. Miskiewicz, A.U.S.A.
         Richard Thomas Lunger, Jr., A.U.S.A

For Defendant:
    Law Offices of Peter Smith & Associates
    232 East Main Street
    Huntington, New York 11743
      By: Peter Smith, Esq.

    Colleen Quinn Brady, Esq.
    99 Hudson Street - 8th Floor
    New York, New York 10013

    Daniel Nobel, Esq.
    401 Broadway - 25th Floor
    New York, New York 10013

    Law Offices of Richard Ware Levitt
    148 E. 78th Street
    New York, New York 10021
      By: Richard Ware Levitt, Esq.

    William T. Martin & Associates
    32 Court Street
    Suite 707
    Brooklyn, New York 11201
      By: William T. Martin, Esq.

HURLEY, Senior District Judge

By letter dated February 2, 2007, the government has "advise[d] the Court and counsel of certain evidence of uncharged acts it intends to introduce at the defendant's trial." (Gov't's Feb. 2, 2007 Letter in Supp. at 1.) The purpose of this opinion is to discuss and, in some instances, resolve these issues pretrial.

Not all of the items which the government seeks to introduce implicate Federal Rule of Evidence ("Rule") 404(b). However, to the extent they do, such applications are often better addressed later in the proceedings, such as after the defendant's case. United States v. Bruder, No. 98 Cr. 196, 2000 WL 290269, at *4 (Feb. 5, 2000 E.D.N.Y.); United States v. Zackson, 12 F.3d 1178, 1183 (2d Cir. 1993). However, where it is earlier apparent that such information may or may not be appropriately placed before the jury, Rule 404(b) determinations may be made pretrial. Cf. Zackson, 12 F.3d at 1183. Here, I will decide some of the applications by the government now, and defer decision on the others for later determination.

## APPLICABLE LAW

Some of the government's applications are governed by Rule 404(b). The following excerpt from United States v. Allocco provides an overview of the applicable law:

> Federal Rule of Evidence 404(b) provides that prior act evidence "is not admissible to prove the character of a person in order to show action in conformity therewith", but may

> "be admissible to other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." The Second Circuit follows an "'inclusionary approach'" to the rule. <u>Unites States v. Brennan</u>, 798 F.2d 581, 589 (2d Cir. 1986), <u>cert. denied</u>, 490 U.S. 1022, 109 S.Ct. 1750, 104 L.Ed.2d 187 (1989)(citation omitted). This approach allows such evidence "'for any purpose other than to show a defendant's criminal propensity.'" <u>United States v. Roldan-Zapata</u>, 916 F.2d 795, 804 (2d Cir. 1990), <u>cert. denied</u>, 499 U.S. 940, 111 S.Ct. 1397, 113 L.Ed.2d 453 (1991)(citation omitted).
>
> The standards by which a district court is to assess the admissibility of other acts evidence under Rule 404(b) are well-established: the court must first determine if the evidence is offered for a proper purpose; if so, the court must decide whether it is relevant, and then whether its probative value is substantially outweighed by the danger of unfair prejudice [hereinafter referred to as the "<u>Huddleston</u>" factors]. <u>United States v. Gilan</u>, 967 F.2d 776, 780 (2d Cir. 1992)(citing <u>Huddleston v. United States</u>, 485 U.S. 681, 691, 108 S.Ct. 1496, 1502, 99 L.Ed.2d 771 (1988)). Upon request, the district court must give an appropriate limiting instruction to the jury. <u>United States v. Pitre</u>, 960 F.2d 1112, 1119 (2d Cir. 1992); <u>United States v. Colon</u>, 880 F.2d 650, 656 (2d Cir. 1989).

801 F. Supp. 1000, 1005 (E.D.N.Y. 1992), <u>aff'd</u>, 29 F.3d 620 (2d Cir. 1994).

One of the events that the government seeks to introduce during its case-in-chief is proffered as uncharged acts constituting direct evidence of the RICO conspiracy charged in

Count Two of the superseding indictment.[1] To the extent that the characterization by the government is correct, the evidence "is not an 'other' act within the meaning of Rule 404(b); rather, it is part of the very act charged." United States v. Concepcion, 983 F.2d 369, 392 (2d Cir. 1992).

With the above general principles in mind, attention will now be directed to the government's specific requests.

### CRIMINALLY NEGLIGENT HOMICIDE

The government provides the following background concerning this "other act" evidence:

> On July 3, 1987, the defendant, who [was] then 20 years old, fired rounds from a 12 gauge shotgun into a shack or outbuilding in the backyard of a residence in Center Moriches, New York. Several children were playing in the vicinity at the time, including a six year old boy who was playing inside the shack in his grandmother's backyard. The six year old was struck in the head by at least one of the shotgun blasts, and died several days later.
>
> On or about April 25, 1991, the defendant pled guilty to the charge of criminally-negligent homicide in violation of New York Penal Law § 125.10. The conviction was based on the 1987 killing.

(Gov't's Feb. 2, 2007 Letter in Supp. at 1.)

The relevance of this "other act," is, in the government's view, as follows:

---

[1] See discussion in text of "ASSAULT OF UNKECHAUG CHIEF HARRY WALLACE," infra.

> In this case, based on in-court comments made by counsel, it is anticipated that the defendant will contend that he lacked intent to murder Sherwin Henry. As described in earlier proceedings, it is anticipated that a government witness will testify that the defendant offered $5,000 to resolve a dispute with Henry, such that Henry would never be seen again. An additional $10,000 was provided by the defendant after several weeks after the murder. It is certain that a critical issue for the jury to decide [is] the defendant's intent when he told his coconspirator that he did not want Henry to ever be seen again. No doubt, the defense will argue that it is an unreasonable leap to assume this meant that Morrison wanted Henry dead.
>
> In that context, the criminally negligent homicide has great probative value. The government submits that an individual who had been convicted a little more than 10 years earlier of killing a young boy under criminal negligent circumstances, would not likely have lacked intent or acted with mistake when he instructed a coconspirator to take care of Sherwin Henry in a manner resulting in Henry never being seen again.

(Id. at 4.)

Application of the Huddleston factors to the government's proffer as to this item indicates that it would be inappropriate to place this information before the jury under Rule 404(b) for a number of reasons, including relevancy. Based on the government's representation of the facts leading to the death of the victim in 1987, coupled with the nature of his conviction, it is apparent that defendant did not intend to kill the youngster. He was convicted of violating Section 125.10 of

the New York State Penal Law, which provides that "[a] person is guilty of criminal negligent homicide when, with criminal negligence, he causes the death of another person." N.Y. Penal Law § 125.10 (McKinney 2007). "Criminal negligence" is defined in Penal Law § 15.05 thusly: "A person acts with criminal negligence with respect to a result or to a circumstance described by a statute defining an offense when he fails to perceive a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation." Id. § 15.05.

The disparate states of mind for criminally negligent homicide and for an intentional killing renders the 1987 homicide largely irrelevant as to the counts of the current indictment pertaining to the death of Sherwin Henry. Moreover, the length of time separating the two events detracts from the probative value of the proffered "other act" evidence. United States v. Garcia, 291 F.3d 127, 138 (2d Cir. 2002). Finally, to the extent what transpired in 1987 has some relevance regarding the absence of mistake or lack of homicidal intent when Morrison allegedly sent one or more individuals to pay Henry a visit, that relevance is substantially outweighed by the unfair prejudice that would result to the defendant if this application by the government was

granted.

For the reasons indicated, the government's Rule 404(b) application with respect to the events of 1987 is denied.[2]

## NARCOTICS DISTRIBUTION

The government reports that several of its witnesses, including cooperating witness Tony Phillips ("Phillips"), "will testify at trial that their friendships and criminal associations with the defendant dated to the early 1990s" during which time "they worked for the defendant as part of a cocaine and cocaine base (i.e., 'crack') distribution business." (Gov't's Feb. 2, 2007 Letter in Supp. at 2.)

The government maintains that such evidence is admissible under Rule 404(b) as background evidence to assist the jury in understanding the relationship between defendant and the individuals whose services he allegedly enlisted to commit a number of the crimes alleged in the superseding indictment. The defendant opines that "evidence of Mr. Morrison's alleged narcotics activities with Tony Phillips and others should be excluded, both as irrelevant and as unfairly prejudicial under Fed. R. Evid. 403." (Def.'s Feb. 16, 2007 Letter in Opp'n at 2.)

---

[2] By Memorandum and Order dated August 25, 2006, I indicated, in response to an argument advanced by two of defendant's earlier attorneys, Messrs. Cleere and Gallo, that the government would not be able to utilize Morrison's criminally negligent homicide conviction for impeachment purposes should defendant testify.

As to the relationship between Morrison and Phillips, defendant argues that the proffered Rule 404(b) evidence is unnecessary given the "substantial contact [they have had] with one another of a non-drug nature" over the years.³ (Id.) That argument is unpersuasive. It is one thing to ask an associate or friend to aid in a lawful activity, and yet another to request his assistance in a criminal endeavor. And given the heightened risk typically associated with the latter, the concomitant degree of trust is usually greater. That Morrison and Phillips, acting together, previously crossed the line between lawful and unlawful activities, makes it more probable than otherwise that Morrison would call upon Phillips in the present case to criminally assist him. Accordingly, the relevance of the proffered testimony is clear.

As to Rule 403, the following observations are in order: (1) the prior criminal conduct "did not involve conduct more serious" than that charged in the current indictment (United States v. Williams, 205 F.3d 23, 34 (2d Cir. 2000)), (2) the current charges differ significantly from the earlier ones

---

³ Defendant's response is primarily limited to Phillips in the sense that no detailed argument in opposition has been presented as to the "and others" component of the government's application. That is understandable given that, unlike with respect to Phillips, it is unclear based on the information provided by the government what role these others supposedly played in the criminal conduct charged. Therefore, the Court defers decision until trial as to what background evidence, if any, may be presented to the jury as to these other individuals.

thereby lessening the likely prejudicial effect (United States v. Puco, 453 F.2d 539, 542 (2d Cir. 1971)("The potential for prejudice . . . is greatly enhanced where . . . the prior offense is similar to the one for which the defendant is on trial.")), and (3) there is an absence, notwithstanding defendant's protestations to the contrary, of alternate proof having "substantially the same or greater probative value but a lower danger of unfair prejudice." Old Chief v. United States, 519 U.S. 172, 183 (1997).

As explained by the Second Circuit in United States v. Rosa:

> We have held repeatedly that it is within the court's discretion to admit evidence of prior acts to inform the jury of the background of the conspiracy charged, in order to help explain how the illegal relationship between participants in the crime developed, or to explain the mutual trust that existed between coconspirators.

11 F.3d 315, 334 (2d Cir. 1993).

The Rosa listing is in the disjunctive. The portion that is most germane for present purposes pertains to shedding light on "the mutual trust that existed between [Morrison and Phillips]." Id.; see also United States v. Araujo, 79 F.3d 7, 8 (2d Cir. 1996); United States v. Harris, 733 F.2d 994, 1006-07 (2d Cir. 1984).

In sum, the government may introduce evidence of the criminal association between Morrison and Phillips in the early

1990's as part of its case-in-chief. However, the "retirement party" portion of the proffer is off-limits as unnecessarily cumulative under Rule 403. The government's application as to "others" will be decided during trial, as explained earlier.

Finally and to the extent that I have granted the government's Rule 404(b) application, an appropriate limiting instruction will be provided at defendant's request.

### "STATUTORY RAPE" AND "ON-GOING CRIMINAL ACTIVITY"[4]

The two captioned items are also being proffered by the government under Rule 404(b). As to each, the Court declines to render a decision at this point. Instead, the applications will be addressed either at the close of defendant's case, or earlier depending upon what happens during opening statements, cross-examination of government witnesses, or other events which would permit the Court to make a determination within a more ample context then presently exists.

### ASSAULT OF UNKECHAUG CHIEF HARRY WALLACE

According to the government:

> On October 24, 1996, the Tribal Council of the Unkechaug Indian Nation met at Community Center at the Poospatuck Reservation in Mastic, New York. One of the matters on the agenda of the meeting was a proposal, supported by a number of Council members including Chief Harry Wallace, to raise funds for the physical improvement of Poospatcuk [sic] Reservation through the imposition of a

---

[4] (Gov't's Feb. 2, 2007 Letter in Supp. at 3.)

> 25 cent-per-carton tax or "fee" on sales of
> cigarettes made on the reservation. It is
> anticipated that Wallace would testify at
> trial that the defendant opposed such fees.
>
> Witnesses at the meeting saw the defendant
> leave his seat, open a door of the community
> center, and call out in sum and substance
> that there was "not going to be any meeting."
> The defendant then returned to his seat after
> closing the door and leaving it slightly
> ajar. Within minutes two masked men, one of
> whom carried a gun, rushed through that same
> door and ordered everyone to the floor. One
> man ran up to Chief Wallace, who ducked under
> a table in an effort to flee, but who was
> immediately cornered. With his gun pointed
> at Wallace's head, one of the men, said in
> sum and substance, "You've been fucking with
> our boss. Take this as a warning. You
> understand the message?" Wallace would say
> he understood that the message was that he
> should drop his cigarette sales fee proposal.
> The proposal was in fact indefinitely tabled
> by the council for several years thereafter.
>
> When the gunmen left, Wallace went to the
> telephone to call the police. The defendant
> placed his hand on the telephone and told
> Wallace not to call the police. The
> defendant and his wife then left the meeting.
> Chief Wallace called the police as soon as
> MORRISON left.
>
> There were no arrests. However, witnesses
> [will testify] that the defendant engineered
> the assault, and provided the pistol used by
> one of the gunmen. Lastly, a Peace Pipe
> employee overheard MORRISON speaking of the
> assault several days later saying, in sum and
> substance, "every now and then you have to
> bite people."

(Gov't's Feb. 2, 2007 Letter in Supp. at 3.)

The conspiracy charge in Count Two is said to have been in existence from October 1996 until September 2004. October 24,

1996 is the date of the charged assault. The triggering event is identified by the government as the Chief's effort to impose a 25 cent per carton tax on sales of cigarettes on the Reservation. If the government is correct, the subject conduct would not be Rule 404(b) evidence, but rather direct evidence of the charged conspiracy.

The defense maintains, however, that the October 24th meeting "concerned a land use issue regarding cut trees entirely unrelated to the generation of profits on behalf of the named enterprise — the Peace Pipe Smoke Shop." (Def.'s Feb. 16, 2007 Letter in Opp'n at 3.)

Given the dispute as to the purpose of the meeting, I will, as suggested by the defense, require a specific proffer from the government as to "the evidence it will offer to establish the underlying factual basis for admitting this evidence[] pursuant to Fed. R. Evid. 104(a)." (Id.) Such proffer will be entertained by the Court once the trial is underway.

## CONCLUSION

The government's Rule 404(b) application as to the 1987 "CRIMINALLY NEGLIGENT HOMICIDE" incident is denied. Its Rule 404(b) "NARCOTICS DISTRIBUTION" application regarding the relationship of trust that existed between Morrison and Phillips is granted; however, decision is deferred as to the "others" said

to be earlier criminal confederates of Morrison whom he supposedly enlisted to aid him with respect to the crimes charged in the current indictment.

The Court also defers decision as to the "STATUTORY RAPE" and "ON-GOING CRIMINAL ACTIVITY" portions of the government's Rule 404(b) application.

Finally, decision is also deferred as to the "ASSAULT OF UNKECHAUG CHIEF HARRY WALLACE" pending a more specific Rule 104(a) proffer by the government as to its anticipated trial proof regarding the purpose of the October 24, 1996 meeting.

SO ORDERED.

Dated: Central Islip, New York
      April 5, 2007

                                          DENIS R. HURLEY, U.S.D.J.