```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------X
UNITED STATES OF AMERICA,
                                        MEMORANDUM AND ORDER
         -against-                      04-CR-699 (DRH)(S-2)


RODNEY ARNOLDO MORRISON,

              Defendant.
----------------------------X
A P P E A R A N C E S:

For the Government:
    Roslynn R. Mauskopf
    United States Attorney
    Eastern District of New York
    One Pierrepont Plaza
    Brooklyn, New York  11201
      By: James M. Miskiewicz, A.U.S.A.
          Richard Thomas Lunger, Jr., A.U.S.A

For Defendant:
    Law Offices of Peter Smith & Associates
    232 East Main Street
    Huntington, New York 11743
      By: Peter Smith, Esq.

    Colleen Quinn Brady, Esq.
    99 Hudson Street - 8th Floor
    New York, New York 10013

    Daniel Nobel, Esq.
    401 Broadway - 25th Floor
    New York, New York 10013

    Law Offices of Richard Ware Levitt
    148 E. 78th Street
    New York, New York 10021
      By: Richard Ware Levitt, Esq.

    William T. Martin & Associates
    32 Court Street
    Suite 707
    Brooklyn, New York 11201
      By: William T. Martin, Esq.

HURLEY, Senior District Judge
```

Among the items of relief sought in the January 3, 2007 Notice of Motion of defendant Rodney Morrison ("Morrison" or "defendant") is an order "[g]ranting a hearing to determine whether the government has wrongfully benefit[t]ed from a substantial conflict of interest of which it was actively or constructively aware regarding Mr. Morrison's previous attorneys." (Def.'s Jan. 3, 2007 Not. Mot. at 1.) For the reasons provided infra, that request is denied.

DEFENDANT'S POSITION IN SEEKING A CONFLICTS HEARING

By way of providing an overview of defendant's position, he states:

> Two attorneys who have represented Mr. Morrison, either in previous matters or in the instant case, also represented persons who are now government cooperators. These relationships created actual conflicts of interest yet, notwithstanding the government's knowledge of these conflicts, no conflict hearing was requested or conducted. The Court should hold a hearing to determine whether the government has wrongly benefitted from these conflicts and, if it has, to devise an appropriate remedy.

(Def.'s Mem. in Supp. at 17.)

Defendant indicates that Steven Wilutis ("Wilutis"), the first of the two attorneys, represented him from "approximately 1987 to 2002" in both civil and criminal matters. (Id.) In March of 2002, Tony Phillips ("Phillips") was arrested on federal drug and weapons charges in the Eastern District of New York. As to those charges, Phillips hired Wilutis who filed

-2-

his notice of appearance on April 19, 2002. "Wilutis [then] actively encouraged his new client, Phil[l]ips, to cooperate against his client Morrison, and probably participated in debriefing sessions that aided the government's investigation of Morrison." (Id. at 18.)

The second attorney referenced above is Randi Chavis ("Chavis"), an attorney with the Federal Defender's office. She, defendant contends, created several conflicts of interest in this case, beginning with her representation of Leslie Ferreira ("Ferreira"), a co-defendant of Phillips on the federal drug and weapons charges. "On information and belief, Chavis initially spoke with Ferreira while Ferreira was held at the FBI offices in Melville. Chavis was familiar with the government's and Detective Trotta's investigation of . . . Morrison and encouraged her to cooperate." (Id.) The source of defendant's information and belief is not provided.

Chavis represented Ferreira at her initial appearance as well as at a bail hearing in March of 2002, following which she was released on bail and thereafter retained private counsel.

In addition to Chavis's representation of Ferreira, she also, commencing on July 13, 2004, represented Dwight Carter ("Carter") in the Eastern District of New York. "During her representation of Carter[,] Chavis negotiated a cooperation agreement on his behalf with the government, and Carter

thereafter agreed to plead guilty, in Supreme Court, Kings County to involvement in the murder of Sherwin Henry (the named victim in the murder charges pending against Morrison)." (Id. at 19.)

> Based on the foregoing, defendant states: Certainly Morrison is entitled to remedy any violation of his right to conflict-free counsel. What we respectfully request of the Court is that a hearing be conducted to determine, among other relevant things, (1) whether and when the government became aware that attorneys Wilutis and Chavis were conflicted and what steps, if any, they took to address these conflicts; (2) the extent of each attorney's involvement in negotiating cooperation agreements for their respective clients; (3) whether each attorney was present at debriefing sessions during which their clients provided information regarding Mr. Morrison; (4) whether each attorney communicated any confidences obtained from Mr. Morrison to the government, directly or indirectly; and (5) whether each attorney assisted their client and/or the government in any additional ways to Mr. Morrison's detriment.

(Id. at 21-22.)

By way of concluding his argument, defendant states:

> Although we do not know that either Mr. Wilutis or Ms. Chavis in fact imparted to the government confidential information obtained from Mr. Morrison, the conflicts that unquestionably existed raise that possibility and, arguably, create an appearance of impropriety. At the least, both attorneys represented conflicting interests; they could help their clients at Mr. Morrison's expense. Rather than leave that serious possibility unexplored, we ask that an appropriate hearing be conducted.

(Def.'s' Reply at 11.)

GOVERNMENT'S RESPONSE IN OPPOSITION

The government's argument in opposing the requested relief is, in toto, as follows:

> The defendant next argues that a hearing should be conducted to "determine whether the government has wrongly benefited [sic] from substantial conflict of interest" arising from the past representations of certain individuals by attorneys Randi Chavis and Steven J. Wilutis. The request for a hearing should be denied.
>
> If the defendant in fact previously retained either Mr. Wilutis or Ms. Chavis, he, and not the government, would be solely in possession of such information from which the Court may be able to determine whether in fact an attorney-client relationship existed. The open-ended query about possible government misconduct should not, without more, cause this Court to waste additional time in hearings.
>
> As the Court minutes reflect, Ms. Chavis appeared at the defendant's initial appearance on August 4, 2004 solely for the basis of entering a not guilty plea and to request a detention hearing date in the near future at which point the first of a number of retained counsel entered appearance[s] on behalf of the defendant . . . . If the defendant made admissions to Ms. Chavis about any matters in these proceedings, the government does not possess them.
>
> As for Mr. Wilutis' representation, together with co-counsel Steven Zissou, of cooperating defendant Tony Phillips in a narcotics matter first presented to state authorities in 1998 and then to the federal government in 2002, the government similarly is unaware of any conflict arising from such representation. The 1998/2002 narcotics and weapons possession matters, so far as the government is aware, did not involve the

defendant.

(Gov't's Mem. in Opp'n at 24-25.)

## DISCUSSION

1. Defendant Asks to Defer Identification of the
   Remedy Being Sought Until After the Hearing

Typically, if not invariably identification of the ultimate relief sought by a movant is a precursor to the holding of a requested hearing. Otherwise, the exercise, untethered to a specific purpose, lacks, among other things, a standard against which issues of relevancy may be measured. Notwithstanding the foregoing, defendant simply states: "After the relevant facts have been brought to light we will respectfully request an opportunity to brief the issue of an appropriate remedy." (Def.'s Mem. in Supp. at 22.)

2. Nature of Authorities Cited for the Requested Hearing

The only authority furnished by defendant in support of the requested hearing consists of Sixth Amendment cases concerning a defendant's undisputed right to unconflicted representation. However, the appropriate reference point in determining whether that Sixth Amendment right of Morrison has been compromised is the present proceeding. And, if a possible conflict arises during the course of this proceeding, the Court is required to conduct a so called Curcio[1] hearing to alert

---

[1] United States v. Curcio, 680 F.2d 881 (2d Cir. 1982).

Morrison of the dangers associated with representation by an attorney with divided loyalties and, should the defendant thereupon elect to waive the conflict, to make sure the waiver is knowing and intelligent assuming the conflict is not so dire as to be nonwaivable as a matter of law.  If the defendant does not waive the conflict, or its nonwaivable, the court is required to disqualify the attorney.  See generally Armienti v. United States, 234 F.3d 820, 823-24 (2d Cir. 2000).  With those principles in mind, let's turn to the supposed conflicts involving Wilutis and Chavis, beginning with Wilutis.

3. Purported Conflict Created by Wilutis Representing Morrison on Prior Unrelated Criminal and Civil Matters, and Then by Representing Phillips on an Unrelated Federal Drug and Weapons Charges, Given That Phillips is a Likely Prosecution Witness Against Morrison as the Result of a Cooperation Agreement in the Drug and Weapons Case

Wilutis never represented Morrison with respect to the pending charges.  In apparent recognition of that fact, defendant states that "[t]he context in which the instant issue arises is somewhat different from that in which issues of conflict are typically addressed."  (Def.'s Mem. in Supp. at 20.)  The phrases "somewhat different" and "typically addressed" arguably imply the existence of some precedent, however meager or peripheral, for the type of investigatory inquiry sought here.  Yet, no authority has been furnished which, by analogy or otherwise, supports the position urged.

For the defense to suggest, as it does, that the perceived conflict "could have been avoided . . . by the government's request for a <u>Curcio</u> hearing," is at best problematic. (<u>Id.</u> at 21.) Surely the government could not have requested a <u>Curcio</u> hearing in this case in which Wilutis never appeared. And there is no indication that Phillips was denied conflict-free representation in his case before District Judge Arthur D. Spatt, thus rendering <u>Curcio</u> irrelevant to that proceeding as well.

In the Court's view, the cases cited by the defense with respect to Wilutis are of marginal relevance. However, I do recognize that a prosecutor's use of information garnered, directly or derivatively, from a known violation of an accused's attorney-client privilege may give rise to serious constitutional concerns. <u>See</u> <u>United States v. Schwimmer</u>, 924 F.2d 443, 446-447 (2d Cir. 1991). Viewed in the abstract, the legal principles implicated in decisions like <u>Schwimmer</u> seem to more closely dovetail with the gravamen of defendant's complaint which he describes thusly:

> The conflict issue arises . . . from the fact that Mr. Wilutis was in possession of confidential information from Mr. Morrison and was in a position to use that information to help Mr. Phillips obtain a cooperation agreement.

(Def.'s Reply at 10-11.)

Significantly, however, neither Morrison nor anyone

-8-

else with first hand information has filed an affidavit suggesting that defendant ever discussed one or more of the claimed incidents underlying the current charges with Wilutis, no less provided him with that information under the cloak of privilege. Without such information, Wilutis would be incapable of breaching his obligation to Morrison in the manner defense counsel opines may have occurred. And beyond that, although one purpose of a hearing may be to uncover facts theretofore unknown at least to the movant, more is required to warrant a hearing than the rank surmise proffered here. Instead, some specific factual assertion — as distinct from a conclusory, speculative claim — must be made, again by someone with personal knowledge, which, if established, would warrant the relief requested or, at a minimum, would give rise to a likelihood of a constitutional violation having occurred warranting further inquiry. See, e.g., United States v. Ginsberg, 758 F.2d 823, 833-34 (2d Cir. 1985); United States v. Longo, 70 F. Supp. 2d 225, 248 (W.D.N.Y. 1999).

For the reasons indicated, defendant's request for a hearing regarding Wilutis is denied.

4. Purported Conflicts Created by Chavis Appearing for Morrison at his Arraignment in the Present Case and Also Representing Ferreira and Carter on two Other Federal Cases

Chavis, unlike Wilutis, did appear on Morrison's behalf with respect to this case. Moreover, the federal robbery and weapons charges against Carter are apparently intertwined with

the charges against Morrison relating to the Sherwin Henry murder. But here again, Morrison has not said that he discussed the Sherwin Henry murder, or the subject of any of the other counts of the original or superseding indictments with Chavis during the brief period of her representation. In an apparent effort to fill that void, defense counsel argues:

> Chavis represented Morrison at his first court appearance upon the initial indictment in this case, on August 4, 2004 – just a few days after her appearance with Carter on July 29, 2004, and while her represent[ation] of Carter was ongoing. At this appearance, Morrison spoke in confidence with Chavis, as evidenced by Morrison's affirmative answer in court when asked whether he had the opportunity to "discuss this case with Ms. Chavis."

(Def.'s Mem. in Supp. at 19.)

As noted, on August 4, 2004, Chavis entered a not guilty plea on behalf of Morrison and consented to his remand. Thereafter, he was represented by a series of retained counsel. There is nothing proffered by the defense to indicate that the conversation that Morrison had with Chavis was any more expansive, or detailed than necessary to perform the two aforementioned, relatively straightforward acts. And Morrison's affirmative answer to the Court's inquiry whether he had "discuss[ed] this case with Ms. Chavis" does not suggest otherwise. Which is to say, that comment, viewed in the context in which it was uttered, is too thin a reed to infer that

Morrison provided privileged information to Chavis which she may have shared with the government in her representation of Ferreira or Carter. More is required to trigger a hearing as explained <u>supra</u> with respect to Wilutis.

### CONCLUSION

For the reasons indicated, defendant's application for a conflicts hearing is denied.

SO ORDERED.

Dated: April 13, 2007
      Central Islip, New York

/s_____
DENIS R. HURLEY, U.S.D.J.