```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------X
UNITED STATES OF AMERICA,
                                        MEMORANDUM AND ORDER
          -against-                     04-CR-699 (DRH)(S-2)


RODNEY ARNOLDO MORRISON,

               Defendant.
-----------------------------X
A P P E A R A N C E S:

For the Government:
     Roslynn R. Mauskopf
     United States Attorney
     Eastern District of New York
     One Pierrepont Plaza
     Brooklyn, New York  11201
       By: James M. Miskiewicz, A.U.S.A.
           Richard Thomas Lunger, Jr., A.U.S.A

For Defendant:
     William H. Murphy, Jr. & Associates
     12 West Madison Street
     Baltimore, MD 21201
       By: William H. Murphy, Jr.

     Anthony A. Capetola, Esq.
     2C Hillside Avenue
     Williston Park, New York 11596

     Law Offices of Peter Smith & Associates
     232 East Main Street
     Huntington, New York 11743
       By: Peter Smith, Esq.

     Colleen Quinn Brady, Esq.
     99 Hudson Street - 8th Floor
     New York, New York 10013

     Daniel Nobel, Esq.
     401 Broadway - 25th Floor
     New York, New York 10013
```

Law Offices of Richard Ware Levitt
    148 E. 78th Street
    New York, New York 10021
      By: Richard Ware Levitt, Esq.

    William T. Martin & Associates
    32 Court Street
    Suite 707
    Brooklyn, New York 11201
      By: William T. Martin, Esq.

HURLEY, Senior District Judge

By notices of motion dated October 6, 2006 and January 3, 2007, Rodney Morrison ("Morrison" or "defendant") sought the following items of relief: (1) dismissal of the indictment; (2) an order precluding the government from using, for any purpose, before or at trial, any statement made by defendant at a proffer session held on May 19, 2005; (3) an order precluding the government from calling Tony Phillips ("Phillips") as a witness at trial given "the wilful or negligent loss of critical recordings relevant to [his] testimony";[1] (4) an order directing the government to make available to the defense the minutes of the plea allocutions of persons who entered guilty pleas to the murder of Sherwin Henry; (5) an order requiring the government to provide certain items of requested discovery; and (6) an order requiring the government to reveal the identities of confidential informants or to produce them in open court for possible

---

[1] Caption to Point Two of Def.'s Oct. 6, 2006 Memorandum of Law in Support of Def.'s Motions for Dismissal or Preclusion (block capitalization omitted).

interviews by the defense. In addition, the government, by letter dated February 2, 2007, made a motion in limine concerning its intention to introduce evidence of uncharged acts against defendant as part of its case-in-chief pursuant to Federal Rule of Evidence 404(b).

The purpose of this decision is to address and resolve item 3 above,[2] to wit, defendant's request that the government be precluded from calling Phillips as a witness.

1. BACKGROUND

   a) Government's Seizure of a Microcassette

Defendant's place of business was searched, pursuant to a search warrant, on August 4, 2004. The search warrant inventory sheet for one of the rooms at that location, to wit room 2M, indicates that a microcassette (hereinafter "cassette") was seized by law enforcement. (Gov't's Ex. 8, Item # 6.)

   b) Proffers of Defendant and Government as to
      Contents of Cassette

It is undisputed that Wynette Randall ("Randall"), a then assistant to defendant, recorded a telephone conversation she had with Phillips, a potential government witness with respect to the arson related counts of the indictment, during

---

[2] The motions listed in the text as items 4, 5, and 6, as well as the government's 404(b) application, were previously decided by me via bench and written decisions. Items 1 and 2, as yet undecided, will be the subject of a separate written decision.

which Phillips uttered a threat. "The defense . . . believes that the remarks Phillips made would not only support the general impeachment of Phillips but would establish that Phillips threatened to <u>fabricate</u> evidence against Morrison . . . ." (Def.'s Mem. Supp. of Mot. for Dismissal or Preclusion at 14 (emphasis added); <u>see also</u> Jan. 5, 2007 transcript ("Tr.") at 40-41 (defense counsel reports that their preliminary, albeit "cursory," investigation suggests that Phillips "threatened to fabricate evidence" against Morrison, i.e. "to frame Mr. Morrison.").)

The government acknowledges, based upon its investigation, that Phillips did utter a threat during a telephone conversation with Randall but maintains that he never threatened to fabricate evidence. Instead, the government maintains that the subject threat "made reference to burning down the Peace Pipe [i.e. defendant's place of business] if Morrison continued to refuse his call and/or pay him [the money he supposedly owed to Phillips]." (Gov't's Mem. Opp'n to Def.'s Mot. for Dismissal or Preclusion at 4.)

c) <u>The Seized Cassette is Missing</u>

Following defendant's discovery demand for a copy of the cassette, the government first represented that it had never been seized. The government later reported that it had been seized, coupled with a representation that, notwithstanding its

diligent efforts to locate the cassette, it was missing.

    d) <u>Hearing Re Absence of Cassette</u>

Given defendant's disturbing proffer concerning the nature of the Phillips's threat, i.e. to fabricate evidence, together with the obvious relevance of the recorded conversation even if it did not contain such a threat, the Court granted defendant's request for a hearing. The purpose of the hearing was to try to (1) reconstruct what was on the cassette, (2) determine what happened to it, and (3) determine if any other recording of the subject phone call existed. Towards that end, the Court, over the government's objection, provided the defense with the "opportunity to examine the two participants to the subject conversion." (Jan. 5, 2007 Tr. at 42.) Multiple other individuals were made available to the defense with virtually the sole court-imposed prequisite to a person testifying was that he or she <u>might</u> be able to shed light as to one or more of the three subjects of inquiry mentioned above. Which is to say, the standard for calling a witness was considerably relaxed.

2. <u>HEARING TESTIMONY</u>

    a)    <u>Contents of Cassette</u>

No evidence was adduced at the hearing that anyone played the cassette after the recording was made, or that anyone else recorded the subject telephone call. Therefore, the best available evidence as to what was said during that telephone call

consists of the testimony of Randall and Phillips.  Accordingly I will synopsize the testimony that each provided,[3] followed by my findings of fact concerning the contents of the tape.

        (i) <u>Randall</u>.  Randall testified that she worked at the Peace Pipe Smoke Shop ("Peace Pipe") as defendant's assistant for a number of years until sometime in 2005.  She indicated that Phillips, a prior Peace Pipe employee, called several times for Morrison in late 2002 or early 2003 indicating that he needed money for lawyers' fees.  Randall answered the phone on each occasion, but did not put the calls through to Morrison.  Rather, pursuant to Morrison's direction, she recorded the phone calls.  During the course of one of the phone calls, she testified that Phillips was "upset that Morrison wasn't returning any of his phone calls.  And he said that he was going to send someone to burn the Smoke Shop down, and that [she] should leave."  (Jan. 18, 2007 Tr. at 23-24.)  She told the defendant about the threat, and sometime thereafter she drove him to Phillips's home.  Significantly, she answered "No" to the following question: "Whether it was on a recording or in any . . . face-to-face conversation, do you recall Mr. Phillips ever threatening to

---

[3] For the hearing's other two purposes, viz. to determine the whereabouts of the cassette and the existence of possible other recordings of the Phillips/Randall conversation, the testimony of the witnesses will not be individually synopsized. Rather, testimonial references will be limited to those necessary for the Court to address those issues with concomitant findings of fact.

fabricate evidence against the defendant, Rodney Morrison"? (Id. at 78.)

Randall indicated that she placed the cassette upon which the phone calls were recorded — including the threatening phone call — on the top shelf of the large safe in her office. Only she and some other Peace Pipe employees — but not defendant — had the combination for that safe. Although one or more of the other employees could have opened the safe for defendant (thus, presumably giving him access to the cassette), she "did not see them open the safe for him." (Id. at 84.) She noted that the cassette was no longer in the safe after the search warrant was executed, nor was it listed in the inventory sheet for her office.

Randall "d[id not] remember" the last time she saw the cassette (id. at 36), although she opened the safe on an almost daily basis and never noticed that it was gone prior to the execution of the search warrant.

And finally she answered "No" to the following question on cross-examination: "Did anyone else hear those calls, either directly or by playing the tape?" (Id. at 57.)

(ii) Phillips. The other participant to the threatening phone call was Phillips. He testified that he was arrested on federal charges in the Autumn of 2002, and shortly thereafter pled guilty pursuant to a cooperation agreement. He

identified his "handling agent" as FBI Special Agent James Langtry ("Langtry"). (Feb. 7, 2007 Tr. at 31.) Langtry, along with Suffolk County Police Detective Robert Trotta ("Trotta"), asked Phillips to assist in an investigation of Morrison. After Phillips agreed, Langtry provided him with a recording device, which Phillips understood was meant to record face-to-face meetings. However, as developed during cross-examination, that device was capable of recording telephone conversations as well. But Phillips did not use the device — or any other device — for that purpose, explaining that neither Langtry nor Trotta had asked him to record telephone conversations. The primary reason Phillips was trying to reach defendant at the Peace Pipe was to arrange for a meeting at Phillips's home during which their conversation could be recorded.

With respect to the phone call that Randall described as "threatening," that call was made by Phillips from his cell phone, absent the presence of either of the officers and was not recorded. After he testified that he did not remember the substance of that call since it occurred "so long ago" (id. at 36), he replied "[p]ossibly, yes" when asked whether he "said something to [her during that phone call] that might have been construed as a threat." (Id. at 36-37.)

Parenthetically, Phillips was never asked if he threatened to fabricate evidence against Morrison nor was any

evidence to that effect elicited from any other source during the hearing.

      (iii) <u>Conclusion re Content of Missing Cassette</u>.

  With respect to the first reason that the hearing was held, namely, to determine what was on the cassette, I found Randall to be a credible witness, as I did Phillips insofar as his testimony largely confirms that he made some type of comment to her that could be considered as threatening.

  In sum, I find that (1) Phillips did call Randall on several occasions at the Peace Pipe for the purpose of speaking with the defendant and that, during the course of one of those telephone conversations, he threatened to send someone to burn down the Peace Pipe and, (2) Phillips never told Randall during any of those calls or otherwise that he intended to fabricate evidence against Morrison.

  b)  Whereabouts of Cassette - Question of Whether Missing Cassette Contains Recording of "Threatening" Phillips/Randall Telephone Call

  Initially it should be noted that the defendant's motion for an order precluding the government from calling Phillips as a trial witness is predicated on the belief that the missing cassette shown on the "Search Warrant Inventory" (Gov't's' Ex. 8) is the cassette upon which Randall recorded the threatening phone call from Phillips. Based on the hearing evidence, that assumption is problematic at best.

Randall, as noted, testified that the subject cassette was stored in the large safe in her office. However, the cassette depicted as Item # 6 on Government's Exhibit 8 was seized by IRS Agent Ann Paradiso ("Paradiso") from a different location, viz. from a microcassette player located on the desk in Morrison's office.

There is no direct evidence that a cassette was seized from the safe in Randall's office during the execution of the search warrant. Defendant proffers, however, that the Court, as the trier-of-fact, should infer that some member of the search team removed the subject cassette from the safe and delivered it to Trotta at Morrison's desk, together with a cassette player. Thereupon, the argument continues, it was played by Trotta before being seized and inventoried by Paradiso. Although there is evidence that Trotta sat at Morrison's desk during the search for some unspecified period of time, there is no evidence from him, or from anyone else on the scene that, while so positioned, he played a cassette. Instead, Trotta testified he was at the desk because "another agent or detective had discovered handcuffs or something from the desk and he was showing [him] where they were." (Feb. 1, 2007 Tr. at 35.)

Paradiso explained that "[p]robably over a dozen" law enforcement personnel were present during the search of the Peace Pipe. (Jan. 18, 2007 Tr. at 106.) Most of those individuals

testified at the hearing as per defendant's requests. Yet, all of those witnesses credibly denied listening to, or removing a cassette from the safe in Randall's office, or seeing anyone else engaged in such conduct. I believe their testimony, as I do the testimony of Trotta as to this issue. Accordingly, I reject the conclusion urged by the defense, viz. that Item # 6 on Government's Exhibit 8 is the cassette recording of the threatening Randall/Phillips telephone call.[4] However, I will assume for present purposes that it is, and address the relief sought by defendant on the merits. Before doing so, however, the appropriate label to attach to the government's conduct leading to the loss of Item #6 will be discussed.

    c) Loss of Item # 6 is Attributable to
       Government's Negligence

The loss of the cassette listed as Item # 6 — whatever its contents may be — is solely attributable to the government. But having listened to numerous witnesses involved in the seizure and subsequent chain of custody, I decline to label the loss, as

---

[4] Melvin Mays, an investigator for the defendant, was provided with a microcassette by a secretary at the Peace Pipe on February 27, 2007. That microcassette, received into evidence as defendant's Exhibit R, was found in a desk drawer inside Randall's office. It is noteworthy because it contains a recorded conversation between Randall and Phillips. During that conversation, Phillips can be heard threatening to "get serious" with Morrison. In the government's view, Exhibit R is, in all probability, the missing cassette. However, given that the content of the conversation on Exhibit R differs significantly from the threatening conversation described by Randall, the Court has reservations as to the merit of the government's position.

defendant would have me do so, as intentional or in bad faith. Instead, I find that the term negligence appropriately describes the government's inability to produce the item. Nothing in the record, other than defendant's unsubstantiated theory that wrongdoing by Trotta produced the loss, suggests otherwise.

d) Absence of Other Recording of the Randall/Phillips Threatening Phone Call

Simply put, it appears that the only recording of the Randall/Phillips threatening phone call was the one made by Randall.

3. APPLICABLE LAW

As noted, there is no credible evidence to indicate that the government destroyed the Randall/Phillips threatening phone call cassette, assuming, arguendo, that the cassette seized on the date of the search was in fact a recording of that phone call. Under the circumstances, the following excerpt from United States v. Rahman is instructive:

> When it occurs, the Government's loss of evidence may deprive a defendant of the right to a fair trial. Whether that loss warrants sanctions depends on the Government's culpability for the loss and its prejudicial effect. Before these factors become relevant, however, the record must first show that evidence has been lost and that this loss is "chargeable to the State."

189 F.3d 88, 139 (2d Cir. 1999)(internal citations deleted).

As explained previously, the Court accepts for present purposes that the missing cassette contains the threatening phone

-12-

call and, thus, the recording of that phone call is in fact "lost," which "loss is chargeable" to the government. Id. Accordingly, attention will now be turned to the prejudice prong of the Rahman analysis.

In arguing that preclusion of Phillips's testimony is required, defendant maintains that the hearing evidence established both the "bad faith on the part of the federal and local officers who caused the unavailability of the subject microcassette [and] that the missing tape had both exculpatory value and that there is no alternative proof of equivalent evidentiary significance." (Def.'s Post-Hr'g Reply in Supp. of Preclusion of Phillips's Testimony at 8-9.) As to the last point, regarding the purported lack of alternative proof, that is said to be so because "[n]o account, even were it accurate, could capture the tone and mannerisms reflected in an electronic recording." (Id. at 10.)

Proceeding in reverse order, i.e. considering the last argument first, Randall, as the recipient of the threatening call, demonstrated the ability to convey Phillips's "tone and mannerisms" when she explained to me during the hearing, inter alia, that Phillips "was upset that Mr. Morrison wasn't returning any of his phone calls," that he sounded "angry," rather than "friendly" as before (Jan. 18, 2007 Tr. at 23), and by answering "yes" to the question of whether the threatening call caused her

-13-

to become "afraid for [her] personal safety." (Id. at 47.) Which is to say, there is, defendant's protestations notwithstanding, alternate proof available. Even if, as defendant contends, that alternative proof is not of equal evidentiary value, the arguable difference does not establish a due process violation as explained in United States v. Rastelli:

> Even if the missing evidence had been exculpatory, Weissman also failed to meet the second requisite of the Trombetta test; he did not show that he could not have "obtain[ed] comparable evidence by other reasonably available means." [California v.] Trombetta, 467 U.S. [479,] 489, 104 S. Ct. [2528,] 2534 [1984]. As to the tapes, Weissman had ample opportunity to obtain and use comparable evidence but failed to do so. He could have used the contemporaneously prepared F.B.I. summaries of the tape-recorded conversations or he could have called as a witness F.B.I agent Mullaney who monitored the taped conversations.

870 F.2d 822, 833 (2d Cir. 1989).

Attention will now be focused on the exculpatory nature of the threatening call. There are, of course, degrees of prejudice attributable to the loss of such evidence. In that regard it warrants underscoring that no evidence has been introduced to suggest, inferentially or otherwise, that Phillips ever threatened to fabricate evidence against Morrison. Instead, Phillips threatened, in a state of frustration as explained by Randall, to burn down the Peace Pipe. While that information will surely be included within the arsenal of material available

-14-

to the defense for impeachment purposes, the "conceivable prejudice flowing from this deprivation is hardly as compelling as the claims in Miranda[5] or Bufalino[6] that the missing evidence would affirmatively establish the appellant's factual innocence." United States v. Grammatikos, 633 F.2d 1013, 1020 (2d Cir. 1980).

Finally, the Court previously rejected defendant's position that the government's loss of the cassette is attributable to bad faith. Accordingly, that part of the previously quoted synopsis of defendant's preclusion argument will not be further discussed.

4. CONCLUSION

For the reasons indicated, I find (1) that Randall accurately portrayed the substance of the threatening phone call she received from Phillips; (2) during that phone call Phillips did not threaten to fabricate evidence against Morrison; (3) the inability of the government to produce the cassette reflected as Item # 6 on Government's Exhibit 8, the search warrant inventory form, is attributable to negligence, not to bad faith or an intentional act on the government's part; (4) the content and tone of the subject phone call will be available to the jury via the testimony of Randall, and (5) the defendant has provided no convincing authority, nor argument, justifying the issuance of a

---

[5] United States v. Miranda, 526 F.2d 1319 (2d Cir. 1975).

[6] United States v. Bufalino, 576 F.2d 446 (2d Cir. 1978).

-15-

court order precluding the government from calling Phillips as a witness at trial.

In sum, defendant's motion for an order precluding the government from calling Phillips as a witness during its direct case is denied. To the extent the defendant seeks a dismissal of the indictment on the same ground, that application is also denied.

SO ORDERED.

Dated: August 17, 2007
      Central Islip, New York

                                    /s/_____
                                    DENIS R. HURLEY, U.S.D.J.