UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------X
UNITED STATES OF AMERICA,

            MEMORANDUM AND ORDER

  -against-        04-CR-699 (DRH)(S-2)

RODNEY ARNOLDO MORRISON,

    Defendant.
---------------------------------------------------X

A P P E A R A N C E S:

For the Government:
 Benton J. Campbell
 United States Attorney
 Eastern District of New York
 One Pierrepont Plaza
 Brooklyn, New York 11201
  By: James M. Miskiewicz, A.U.S.A.

For Defendant:
 William H. Murphy, Jr. & Associates
 12 West Madison Street
 Baltimore, MD 21201
  By: William H. Murphy, Jr.

 Anthony A. Capetola, Esq.
 2C Hillside Avenue
 Williston Park, New York 11596

 Law Offices of Peter Smith & Associates
 232 East Main Street
 Huntington, New York 11743
  By: Peter Smith, Esq.

 Daniel Nobel, Esq.
 401 Broadway - 25th Floor
 New York, New York 10013

 Law Offices of Richard Ware Levitt
 148 E. 78th Street
 New York, New York 10021
  By: Richard Ware Levitt, Esq.

 William T. Martin & Associates

32 Court Street
        Suite 707
        Brooklyn, New York 11201
            By: William T. Martin, Esq.

        Schulman, Treem, Kaminkow, Gilden
        & Ravenell, P.A.
        Attorneys at Law
        Suite 1800 - 18th Floor
        The World Trade Center
        401 East Pratt Street
        Baltimore, Maryland 21202
            By: Kenneth W. Ravenell, Esq.

**HURLEY, Senior District Judge:**

Presently before the Court are the following two motions by defendant Rodney Morrison ("Defendant" or "Morrison"): (1) Defendant's motion for reconsideration of my October 9, 2007 bench decision denying his motion to dismiss racketeering acts 4 through 80 of the superseding indictment (docket no. 367); and (2) Defendant's motion to dismiss racketeering acts 4 through 80 of the superseding indictment on substantive due process grounds (docket no. 392). For the following reasons, Defendant's motions are DENIED.

*BACKGROUND*

Familiarity with the facts and procedural background is presumed. Thus, the Court states only those facts necessary for disposition of the instant motions.

**I.**     *The Superseding Indictment and Relevant Statutes*

Racketeering acts 4 through 80 of the superseding indictment allege that Morrison "knowingly and intentionally sold and distributed contraband cigarettes . . . lacking valid New York State tax stamps, in violation of Title 18, United States Code, Sections 2342(a) and 2" from January 8, 1997 to August 2, 2004. 18 U.S.C. § 2342(a) is part of the Contraband Cigarettes

Trafficking Act ("CCTA"), 18 U.S.C. §§ 2341 et seq., and provides:

> It shall be unlawful for any person knowingly to ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes or contraband smokeless tobacco.

18 U.S.C. § 2342(a). Contraband cigarettes are defined in section 2341 as follows:

> a quantity in excess of 60,000[1] cigarettes, which bear no evidence of the payment of applicable State or local cigarette taxes in the State or locality where such cigarettes are found, *if the State or local government requires a stamp*, impression, or other indication to be placed on packages or other containers of cigarettes to evidence payment of cigarette taxes, and which are in the possession of any person other than [setting forth exempted persons]

*Id.* § 2341(2) (emphasis added).

Article 20 of the New York State Tax Law imposes "a tax on all cigarettes possessed in the state by any person for sale, except that no tax shall be imposed on cigarettes sold under such circumstances that this state is without power to impose such tax" or on certain sales to the United States. N.Y. Tax Law § 471(1). It further provides that "[i]t is intended that the ultimate incidence of and liability for the tax shall be upon the consumer, and that any agent or dealer who shall pay the tax to the tax commission shall collect the tax from the purchaser or consumer." *Id.* § 471(2). Federal law forbids the collection of these taxes on cigarettes sold on Native American reservations to enrolled tribal members. *See Moe v. Confederated Salish & Kootenai Tribes*, 425 U.S. 463 (1976). However, when cigarettes are sold on the reservation to non-Native American consumers, the taxes may be collected. *See Washington v. Confederated*

---

[1] At the time of the acts alleged in the superseding indictment, "contraband cigarettes" was defined to mean a quantity in excess of 60,000 cigarettes which bore no evidence of the payment of state cigarette taxes. The statute was amended in March 2006 and the number required to trigger the provisions of the CCTA was reduced to 10,000.

3

*Tribes of Colville Indians Reservation*, 447 U.S. 134 (1980).

Effective May 13, 2003, the New York legislature passed N.Y. Tax Law § 471-e which provided:

> Where a non-native American person purchases, for such person's own consumption, any cigarettes or other tobacco products on or originating from native American nation or tribe land recognized by the federal government and reservation land recognized as such by the state of New York, the commissioner shall promulgate rules and regulations necessary to implement the collection of sales, excise and use taxes on such cigarettes or other tobacco products.

N.Y. Tax Law § 471-e (2003). The regulations called for under § 471-e were never adopted.[2]

## II. *The "Forbearance Policy"*

In 1988, the New York Department of Taxation and Finance (the "DTR") determined that a large volume of unstamped cigarettes was being purchased by non-Native Americans from reservation retailers. *Department of Taxation and Finance of N.Y. v. Milhelm Attea & Bros., Inc.*, 512 U.S. 61, 64-65 (1994). Because unlawful purchases of unstamped cigarettes deprived New York of substantial tax revenues, the DTR adopted regulations, 22 NYCRR §§ 336 et seq., for the enforcement of the collection of taxes from non-Native American purchasers of cigarettes from on-reservation retailers. *Id.* at 65; *see also N.Y. Association of Convenience Stores v. Urbach*, 646 N.Y.S.2d 918, 921 (3d Dep't 1996). The regulations recognized the right of exempt Native American consumers to purchase untaxed cigarettes on the reservation. However, "[t]o ensure that nonexempt purchasers do not likewise escape taxation, the regulations limit[ed] the quantity of untaxed cigarettes that wholesalers may sell to tribes and

---

[2] Although § 471-e was amended effective March 2006, the amendment post-dates the acts in the superseding indictment and, accordingly, is not relevant for present purposes.

4

tribal retailers." *Milhelm*, 512 U.S. at 65. "To prevent non-Indians from escaping the tax, [the] regulatory scheme . . . impose[d] record keeping requirements and quantity limitations on cigarette wholesalers who sell untaxed cigarettes to reservation Indians." *Id.* at 64. Under the regulations, "[r]etailers were to keep accurate records of those to whom they sold untaxed cigarettes and submit these records to the [DTR]." *Warren v. Pataki*, No. 01-CV-0004E, 2002 WL 450056, at *1 (W.D.N.Y. Jan. 9, 2002).

Following adoption of the regulations, a proceeding was commenced by Native American merchants to permanently enjoin the DTR from enforcing them and, as a result, the DTR suspended implementation pending the outcome of that litigation. *New York Assoc. of Convenience Stores v. Urbach*, 712 N.Y.S.2d 220, 221 (3d Dep't 2000). Ultimately, the Supreme Court in *Milhelm* held that the regulations were valid and enforceable. 512 U.S. at 70-78. Despite this outcome, the DTR continued its non-enforcement or "forbearance" policy. *Urbach*, 712 N.Y.S.2d at 221.

In May 1997, Governor Pataki directed the repeal of the regulations and proposed legislation that would allow on-reservation stores to sell tax-free cigarettes. *Santa Fe Natural Tobacco Co. v. Spitzer*, No. 00 CIV. 7274, 00 CIV. 7750, 2001 WL 636441 (S.D.N.Y. June 8, 2001), *rev'd on other grounds*, 320 F.3d 200 (2d Cir. 2003). The regulations were repealed by the DTR on April 28, 1998. *New York Assoc. of Convenience Stores v. Urbach*, 92 N.Y.2d 204, 214 (1998). In addition, although Governor Pataki sent to the legislature a bill that would amend the State Tax Law to allow reservation stores to sell tax-free cigarettes, the proposed amendments never passed. Nonetheless, the State's policy of non-enforcement continued.

**III.** *The Court's October 9, 2007 Decision*

On October 9, 2007, the Court denied Defendant's motion to dismiss racketeering acts four through eighty, finding, inter alia, that New York's failure to enforce the Tax Law with regard to on-reservation cigarette sales to non-Native Americans did not vitiate the statutory obligation to pay the tax (Oct. 9, 2007 Tr. at 57), and that Morrison could be found guilty of aiding and abetting for "sell[ing] a quantity of [contraband] cigarettes to an entity which he knows intends to resell the cigarettes in a taxable transaction" (*id.* at 63), assuming Morrison did so for the purpose of aiding the unlawful resales. In reaching this decision, the Court relied in part on *United States v. Kaid*, 05-4470-cr(L) (2d Cir. Sept. 12, 2007) (summary order), which though not entitled to precedential effect, was helpful.[3] In *Kaid*, the Circuit rejected defendants' argument that the "non-enforcement policy effectively detaxed sales of cigarettes to non-Native Americans on reservation land," finding it to be "meritless." *Id.* at 4. The Circuit also noted that "[w]hile it appears that New York does not enforce its taxes on small quantities of cigarettes purchased on reservations for personal use by non-Native Americans, nothing in the record supports the conclusion that the state does not demand that taxes be paid when, as in this case, massive quantities of cigarettes were purchased on reservations by non-Native Americans for resale." *Id.*

## DISCUSSION

**I.** *Defendant's Motion for Reconsideration of*
   *the Court's October 9, 2007 Decision is Denied*

---

[3] The Court is also mindful of the fact that the defendants in *Kaid* were not Native-American retailers but rather non-Native Americans who purchased large quantities of untaxed cigarettes on the reservation for the purpose of selling them off-reservation.

In support of his motion for reconsideration of the Court's October 9, 2007 bench decision, Morrison argues that N.Y. Tax Law § 471 is not a self-executing statute as applied to the sale of cigarettes on tribal lands and may apply to tribal cigarette sales *only* if implementing regulations are in place. He asserts that by repealing the 1998 regulations, the State not only announced a "forbearance policy" but rather rendered § 471 unenforceable as applied to reservation cigarette sales.

There is no specific rule, either in the Federal Rules of Criminal Procedure or in this Court's Criminal Local Rules, providing for the reconsideration of a ruling on a criminal matter. *See, e.g.*, *United States v. James*, No. 02 CR 0778, 2007 WL 914242, at *3 (E.D.N.Y. Mar. 21, 2007). "Where the Rules of Criminal Procedure do not speak specifically to a matter, a court conducting a criminal case is permitted to draw from and mirror a practice that is sanctioned by the Federal Rules of Civil Procedure." *Id.* (citation and internal quotation marks omitted). In that regard, Federal Rule of Criminal Procedure 57(b), which is entitled "Procedure When There Is No Controlling Law", provides in part that "[a] judge may regulate practice in any manner consistent with federal law, these rules, and the local rules of the district." Fed. R. Crim. P. 57(b). "Thus, when deciding motions for reconsideration in criminal matters, courts in this district have resolved such motions according to the same principles that apply in the civil context." *Id.* (citations and internal quotation marks omitted).

A motion for reconsideration in a civil case is governed by Local Civil Rule 6.3 and by Federal Rule of Civil Procedure 54(b).[4] The standard for a motion for reconsideration "is

---

[4] In discussing the appropriate standard for reconsideration, many courts refer to Federal Rule of Civil Procedure 59(e), which applies to motions filed after the entry of a final judgment. Here, the more applicable civil rule is Federal Rule of Civil Procedure 54(b), which applies to

7

strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or [factual] data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atl. Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4478 at 790). Thus, a "party may not advance new facts, issues, or arguments not previously presented to the Court." *Nat'l Union Fire Ins. Co. v. Stroh Cos.*, 265 F.3d 97, 115 (2d Cir. 2001) (quoting *Polsby v. St. Martin's Press*, No. 97 Civ. 690, 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000)).

Applying the standards enunciated above, the Court finds that Defendant has failed to satisfy his burden of showing that this Court overlooked a controlling decision or material fact that would alter the outcome of its previous decision. The ground raised by Defendant in support of his motion for reargument was explicitly discussed at oral argument on the original motion. (*See* Oct. 5, 2007 Tr. at 144.) To the extent Defendant has cited new case authority, the cases do not present controlling authority which "might reasonably be expected to alter the conclusion reached by the court." *Shrader*, 70 F.3d at 257. Accordingly, Defendant's motion for reargument is denied.[5]

---

motions to reconsider interlocutory orders. Nonetheless, the substantive standards under both rules are identical.

[5] Parenthetically, the Court notes that Defendant's reliance on cases such as *Pierre v. Gonzales*, – F.3d –, 2007 WL 2597600 (2d Cir. Sept. 11, 2007) and *United States v. Belcher*, 927

**II.**     *Defendant's Motion to Dismiss Racketeering Acts 4 through 80 of the Superseding Indictment on Substantive Due Process Grounds is Denied*

Upon rendering its bench decision on Defendant's motion to dismiss racketeering acts four through ninety, the Court noted that it had decided Defendant's motion on the issues as framed in the underlying letter briefs and that it would be amenable to revisiting Defendant's application on new grounds, including a potential substantive due process violation. (Oct. 9, 2007 Tr. at 64.) Thereafter, by letter dated October 23, 2007, Defendant filed a second motion to dismiss racketeering acts 4 through 80 "on the grounds that prosecuting Morrison on those acts would constitute a violation of his substantive due process rights." (Letter by William H. Murphy, Jr. ("Murphy Letter"), dated Oct. 23, 2007, at 1.) For the reasons that follow, Defendant's motion is denied.

**A.**     *As-Applied Challenge*

"A statute may be challenged on vagueness grounds either as applied or on its face." *Thibodeau v. Portuondo*, 486 F.3d 61, 67 (2d Cir. 2007). Here, Morrison asserts that the statute is vague as applied. (*See* Murphy Letter, dated Oct. 30, 2007, at 1.) Racketeering acts 4 through 80 charge Defendant with selling and distributing contraband cigarettes in violation of the CCTA and 18 U.S.C. § 2, i.e., with both substantive violations of the CCTA as well as aider and abettor liability. However, although the government has espoused various prosecutorial

---

F.2d 1182, 1185 (11th Cir. 1991), is misplaced as the treaty and statute addressed, respectively, in those cases were clearly not self-executing. Here, on the other hand, the effect of the repeal of the regulations is that cigarette retailers located on Indian reservations can sell an unrestricted number of untaxed cigarettes without keeping records or reporting to the DTR but "'the repeal [of the regulations] does not eliminate the statutory liability for taxes as they relate to sales on Indian reservations to nonexempt individuals.'" *Urbach*, 92 N.Y.2d at 214 (quoting the DTRs's notice of adoption, 20 N.Y.S. Register, Apr. 29, 1998, Issue 17, Book 1, at 23).

theories as the case has progressed, the government's most recent correspondence limits itself to a theory of aiding and abetting. (*See, e.g.*, Gov't's Oct. 18, 2007 Letter at 2 ("[Morrison's] liability in this case will be determined on evidence that he knowingly and intentionally aided and abetted others in sales and distribution of untaxed cigarettes off the reservation in violation of both New York and federal law."); Gov't's Oct. 9, 2007 Letter at 3 ("In the present case the government will show as to Racketeering Acts 4 through 80 that the defendant aided and abetted others in the sale and distribution of contraband cigarettes.").) Thus, the Court's analysis will be confined to whether the CCTA is void for vagueness as applied to Morrison in this limited situation, viz. as an aider and abettor of off-reservation violations of the CCTA.

  **B.**   *Applicable Standards*

"It is well-established that the Fourteenth Amendment, which guarantees that no state shall 'deprive any person of life, liberty, or property, without due process of law,' U.S. Const. amend. XIV, § 1, ensures that the individual need not 'speculate as to the meaning of penal statutes' and is 'entitled to be informed as to what the State commands or forbids.'" *Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir. 2007) (quoting *Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939)). Although "this doctrine does not require 'meticulous specificity' from every statute," *id.* at 66 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972)), "as language is necessarily marked by a degree of imprecision," *id.*, courts do "apply a more stringent analysis when examining laws that impose criminal penalties because the consequences of imprecision are qualitatively more severe." *Id.*

"'As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what

conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.'" *Gonzales v. Carhart*, – U.S.–, 127 S. Ct. 1610, 1628 (2007) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). Here, the CCTA, and the concomitant New York State Tax Law, satisfy both requirements.

### C. *Fair Notice*

A criminal statute fails to provide fair notice "if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). Here, the CCTA provides that "[i]t shall be unlawful for any person to ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes or contraband smokeless tobacco." 18 U.S.C. § 2342(a). At the time of the acts alleged in the superseding indictment, contraband cigarettes were defined as "a quantity in excess of 60,000 cigarettes, which bear no evidence of the payment of *applicable* State or local cigarette taxes in the State or locality where such cigarettes are found, *if the State or local government requires a stamp* . . . ." *Id.* § 2341(2) (emphasis added).

Defendant argues that the terms "applicable" law and "if the State . . . requires a stamp" are "clearly ambiguous as applied to Indian cigarette sales in New York in all time periods relevant to this prosecution." (Murphy Letter, dated Oct. 30, 2007, at 3-4.) Alternatively, Defendant contends that "there is no basis to conclude that Congress intended the[se] terms . . . to have a meaning different than one that could be understood by an ordinary citizen as a reflection of the operational policy of the state." (*Id.* at 3.) In other words, Defendant argues that an ordinary person would believe that New York does not "require[]" a stamp and that state taxes are not "applicable" because the State does not enforce its tax laws.

11

The Court disagrees.

In the Court's view, Defendant's interpretation is strained because it relies solely on the executive branch's enforcement policies rather than the applicable State laws, which clearly provide that Morrison's sale of cigarettes to non-native Americans on the reservation is a taxable event. Defendant's interpretation essentially nullifies the requirements of state law as that term is commonly understood and reads the legislature right out of the picture. Simply stated, states "require" certain conduct via duly enacted laws; the failure of the executive branch to enforce the law is not the same as saying that the legislative branch has repealed it. *Compare Lenscrafters, Inc. v. Wadley*, 248 F. Supp.2d 705, 737 (M.D. Tenn. 2003) ("The court can see no basis for finding that the avowed benefits of a statute duly enacted by the legislature may be undermined by poor enforcement on the part of the executive branch. If such were the case, the executive branch would be in a position to invalidate any law with which it disagreed."), *aff'd*, 403 F.3d 798 (6th Cir. 2005). In addition, in drafting the CCTA, Congress chose the term "applicable" taxes, not an "enforced" tax or a "collected" tax, to trigger a violation. The term "applicable" means "capable of being applied." *City of N.Y. v. Beretta*, 401 F. Supp. 2d 244, 261 (E.D.N.Y. 2005) (noting common dictionary definitions of word "applicable."). Defendant's attempt to equate applicability and enforceability belies the plain meaning of the former term and, thus, what an ordinary person would understand the statute to mean.[6]

---

[6] Indeed, Defendant's position is contrary to the view taken by courts which have addressed the issue. *See Kaid*, 05-4470-cr(L), at 4 (2d Cir. Sept. 12, 2007) (summary order) (finding that State "demand[s]" taxes be paid regardless of non-enforcement policy); *Urbach*, 92 N.Y.2d at 214 ("'[T]he repeal [of the regulations] does not eliminate the statutory liability for taxes as they relate to sales on Indian reservations to nonexempt individuals.'") (quoting 20 N.Y.S. Register, Apr. 29, 1998, Issue 17, Book 1, at 23).

In fact, the two executive pronouncements Morrison places great reliance on, when fairly read, actually undercut his position. In May 1997, Governor Pataki directed the DTR to repeal its regulations governing the collection of taxes from cigarette sales at reservation stores. (Governor Pataki Press Release, dated May 22, 1997.) The press release states that the Governor "sent to the State Legislature a bill that would amend the State Tax Law to allow reservation stores to sell tax-free . . . cigarettes." (*Id.*) The Governor stated: "Let me make my message to all Indian Nations clear: It is your land, we respect your sovereignty and, if the Legislature acts as I am requesting, you will have the right to sell tax-free . . . cigarettes free from interference from New York State." (*Id.*) The Governor's proposed amendments were never passed. Thus, far from communicating that Native-American retailers such as defendant were exempt from the State Tax Law, the Governor's statement was in fact an acknowledgment that the executive's policy of forbearance could not repeal the state law; only the legislature could do that, and it did not.

Similarly, in repealing the regulations on April 28, 1998, the DTF stated that "[t]he repeal of the regulations does not eliminate the statutory liability for the taxes as they relate to sales on Indian reservations to non-exempt individuals." (Murphy Letter, dated Oct. 30, 2007, Ex. 1 at 4.) The DTF also noted that it proposed legislation to the legislature that would exempt sales of cigarettes made on-reservation, regardless of whether the purchaser was a Native-American or non-Native American. (*Id.*) Clearly, then, the DTF also recognized that despite its non-enforcement policy, the underlying law remained intact.

Further buttressing the Court's conclusion is the fact that the crime Defendant is being prosecuted for, viz. aiding and abetting others in the sale and distribution of untaxed

13

cigarettes off the reservation, requires the government to prove that Defendant acted with specific intent. *See United States v. Samaria*, 239 F.3d 228, 234-35 (2d Cir. 2001) ("[A]iding and abetting is . . . a specific intent crime."). "The [Supreme] Court has made clear that scienter requirements alleviate vagueness concerns." *Carhart*, 127 S. Ct. at 1628; *see also Colautti v. Franklin*, 439 U.S. 379, 395 (1979) ("This Court has long recognized that the constitutionality of a vague statutory standard is closely related to whether that standard incorporates a requirement of *mens rea*."). As explained in *Screws v. United States*, 325 U.S. 91 (1945):

> [T]he requirement of a specific intent to do a prohibited act may avoid those consequences to the accused which may otherwise render a vague or indefinite statute invalid. . . . The requirement that the act must be willful or purposeful may not render certain, for all purposes, a statutory definition of the crime which is in some respects uncertain. But it does relieve the statute of the objection that it punishes without warning an offense of which the accused was unaware.

*Id.* at 101-02. Here, the specific intent that must be proved to impose liability further mitigates statutory vagueness concerns.

In sum, the Court finds that the CCTA, read together with the New York Tax Law, provide an ordinary person with sufficient notice of what conduct is proscribed. The Court now turns to the second prong of the vagueness analysis.

### D. *Arbitrary and Discriminatory Enforcement*

In addition to the fair notice requirement, a law is unconstitutionally vague "if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill*, 530 U.S. at 732. "This second ground, which the Supreme Court recognizes as 'the more important aspect of the vagueness doctrine,' mandates that laws contain 'minimal guidelines to govern law enforcement.'" *Thibodeau*, 486 F.3d at 66 (quoting *Kolender*, 461 U.S. at 358). "[S]tatutes

14

must 'provide explicit standards for those who apply' them to avoid 'resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Id.* (quoting *Grayned*, 408 U.S. at 108-09).

In examining challenges on this ground, the Second Circuit has instructed as follows:

> [C]ourts undertaking an as-applied challenge may determine either (1) that a statute as a general matter provides sufficiently clear standards to minimize the risk of arbitrary enforcement or (2) that, even without such standards, the conduct at issue falls within the core of the statute's prohibition, so that the enforcement was not the result of the unfettered discretion that law enforcement officers and factfinders might have in other, hypothetical applications of the statute.

*Id.* at 67-68.

Here, Defendant argues that because of the "'muddled' state law enforcement scheme" (Murphy Letter, dated Oct. 23, 2007, at 3), the CCTA accords unfettered discretion to prosecutors and juries. Stressing what he calls the "inaction" of state and federal prosecutors, Defendant asserts that despite the fact that New York is given explicit notice that "Indian retailers are selling cigarettes in large quantities to individuals who will transport them off the reservation" (Murphy Letter, dated Oct. 23, 2007, at 7), to the best of Defendant's knowledge, "no New York Indian retailer has ever been prosecuted in connection to on reservation cigarette sales in an instance which did not involve off-reservation acts *by that retailer himself*." (Murphy Letter, dated Oct. 30, 2007, at 1 (emphasis in original.)[7] In this regard, Defendant notes that "[t]he lack of State criminal prosecutions against Indian retailers for aiding and abetting by State

---

[7] The government does not contest this allegation.

authorities charged with enforcing their own criminal statutes can only be attributed to the lack of guidance that undeniably prudent law enforcement officials have perceived to be a consequence of the current status of the State enforcement scheme relating to Indian retailers." (Murphy Letter, dated Oct. 23, 2007, at 6.) Finally, Defendant relies on what he characterizes as the prosecutor's "inconsistent positions on the CCTA" which, according to Defendant, underscore the "constitutionally proscribed lack of clarity in applying the CCTA against a New York State Indian retailer for the acts alleged in this indictment." (Murphy Letter, dated Oct. 30, 2007, at 4.)

The Court finds Defendant's arguments to be without merit. As applied to Morrison, the statutory language under which he is charged clearly delineates what conduct is unlawful. As noted above, the government has limited its theory of prosecution to one of aiding and abetting off-reservation sales. Pursuant to 18 U.S.C. § 2341, New York State clearly "requires" a stamp be placed on all cigarettes sold off-reservation (*see supra* at 3 (discussing N.Y. Tax Law § 471(1)). To the extent the forbearance policy arguably muddied the legal waters, it did so only with regard to *on-reservation sales* and Defendant is not being prosecuted for such sales per se.

In that regard, Defendant's reliance on the assertion that he is the first Native American retailer to be prosecuted for off-reservation acts that he did not commit himself is misplaced. In *Kaid*, the defendants were non-Native Americans who purchased large quantities of untaxed cigarettes on the reservation for the purpose of selling them off-reservation. *Kaid*, 05-4470-cr(L) (2d Cir. Sept. 12, 2007) (summary order). Here, Defendant is charged with aiding and abetting such individuals. The aiding and abetting statute, which was rooted in common law

16

and enacted in 1909, is nothing new. "It removes all doubt that one who puts in motion or assists in the illegal enterprise . . . is guilty as a principal even though he intentionally refrained from the direct act constituting the completed offense." 18 U.S.C. § 2 Historical and Statutory Notes. Defendant cannot viably claim that he is necessarily insulated from such liability simply because he believed he was authorized to sell unlimited quantities of cigarettes on the reservation. By way of analogy, if an individual had the right to sell unlimited firearms, he could still be held liable as an aider and abettor if he sells a firearm to another with knowledge that the weapon will be used to murder a third party and that knowledge is coupled with the intent to aid the purchaser in his unlawful endeavor. That is not to say that evidence of the forbearance policy is not relevant in proving Defendant's intent. Rather, the Court merely finds that the decision by the DTR not to enforce applicable state law with regard to on-reservation sales does not render the statutory scheme under which Defendant is being prosecuted unconstitutionally vague.

Defendant also argues that because "[t]he legislative history of the CCTA reflects that the Federal role in the fight against cigarette smuggling would be to '*assist the states in their law enforcement efforts* and will be undertaken with the recognition that [] primary [enforcement] responsibility remains with the individual states'" (*Id.* at 3 (quoting H.R. Conf. Rep. No. 95-1778, at 1 (2d Sess. 1978), *reprinted in* 1978 U.S.C.C.A.N. 5535, 5536)), and because New York is not enforcing its tax law, "the federal government has no state law enforcement effort to support and the state's citizens are not on notice that a foreign jurisdiction will interpose itself and initiate an unprecedented criminal action to do what the state has demurred from doing." (Murphy Letter, dated Oct. 30, 2007, at 3.) The Court finds this logic

misguided.

The CCTA was enacted in 1978. At the time of its enactment, the clear intent of Congress was to pass legislation to deal with large-scale cigarette bootlegging and the involvement of organized crime[8] because the states had theretofore been unable to successfully address the problem themselves. *See* S. Rep. 95-962 (2d Sess. 1978), *reprinted in* 1978 U.S.C.C.A.N. 5518, 5526. As stated in the relevant Senate Report:

> We continue to believe that many of the states most affected have not made serious commitments to the enforcement effort in this area. . . . We continue to believe strongly that primary efforts to stop cigarette smuggling must be made by the states affected. However, we recognize that federal legislation in aid of state enforcement effort may be desirable, if not essential, in light of the interstate nature of the problem.

*Id.* Thus, contrary to Defendant's assertions, it should of be of no surprise that the federal government would utilize the CCTA under these circumstances precisely *because of* the State's forbearance policy, i.e., because New York was not getting the job done itself, and not in spite of it.

Finally, the Court notes that the scienter requirement of 18 U.S.C. § 2 narrows the scope of the prohibited conduct and in so doing, limits prosecutorial discretion. *See Carhart*, 127 S. Ct. at 1629. Thus, the Court finds that as applied to Morrison, the CCTA and 18 U.S.C. § 2 establish the requisite minimal guidelines to prevent arbitrary or discriminatory enforcement in that they apply only to those who act with the specific intent to aid and abet a violation by a non-Native American who purchases un-stamped cigarettes on the reservation for the purpose of

---

[8] Defendant does not contend that the CCTA does not apply to Native Americans. In fact, this argument has been explicitly rejected. *See, e.g.*, *United States v. Baker*, 63 F.3d 1478, 1484-86 (9th Cir. 1995).

selling them off-reservation.

Even assuming, arguendo, that the CCTA did not provide sufficient explicit criteria to prevent arbitrary enforcement, the statute as applied to Morrison would not be unconstitutionally vague because the conduct to which the statute was applied clearly falls within the "core meaning" of the statute. *Thibodeau*, 486 F.3d at 69. Racketeering Acts 4 through 80 allege that Defendant aided and abetted others in the sale and distribution of contraband cigarettes *off the reservation*. It is undisputed that New York State "requires a stamp" on the sale of such cigarettes and, accordingly, it cannot be said that the CCTA is vague as applied to these circumstances. *See Farrell v. Burke*, 449 F.3d 470, 494 (2d Cir. 2006) (noting that relevant "inquiry . . . involve[s] determining whether the conduct at issue falls so squarely in the core of what is prohibited by the law that there is no substantial concern about arbitrary enforcement because no reasonable enforcing officer could doubt the law's application in the circumstances.").

The Court has considered the parties' remaining arguments and finds them to be without merit. Accordingly, the Court finds that the CCTA as applied to Morrison is not unconstitutionally vague.

## *CONCLUSION*

For all of the above reasons, Defendant's motions for reconsideration of my October 9, 2007 bench decision (docket no. 367) and to dismiss racketeering acts 4 through 80 of

19

the superseding indictment on substantive due process grounds (docket no. 392) are DENIED.

**SO ORDERED.**

Dated: November 9, 2007
Central Islip, New York

/s
Denis R. Hurley,
United States District Judge