```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------X
UNITED STATES OF AMERICA,
                                          MEMORANDUM AND ORDER
          -against-                       04-CR-699 (DRH)(S-2)


RODNEY ARNOLDO MORRISON,

              Defendant.
-----------------------------X
A P P E A R A N C E S:

For the Government:
     Benton J. Campbell
     United States Attorney
     Eastern District of New York
     One Pierrepont Plaza
     Brooklyn, New York  11201
       By: James M. Miskiewicz, A.U.S.A.
           John Durham, A.U.S.A

For Defendant:
     William H. Murphy, Jr. & Associates
     12 West Madison Street
     Baltimore, MD 21201
       By: William H. Murphy, Jr.

     Anthony A. Capetola, Esq.
     2C Hillside Avenue
     Williston Park, New York 11596

     Law Offices of Peter Smith & Associates
     232 East Main Street
     Huntington, New York 11743
       By: Peter Smith, Esq.

     Daniel Nobel, Esq.
     401 Broadway - 25th Floor
     New York, New York 10013

     Law Offices of Richard Ware Levitt
     148 E. 78th Street
     New York, New York 10021
       By: Richard Ware Levitt, Esq.

     William T. Martin & Associates
     32 Court Street
     Suite 707
```

    Brooklyn, New York 11201
      By: William T. Martin, Esq.

    Schulman, Treem, Kaminkow, Gilden
    & Ravenell, P.A.
    Attorneys at Law
    Suite 1800 - 18th Floor
    The World Trade Center
    401 East Pratt Street
    Baltimore, Maryland 21202
      By: Kenneth W. Ravenell, Esq.

HURLEY, Senior District Judge

By Notice of Motion dated October 12, 2007, defendant moves to dismiss "the arson and firearm counts of the indictment on speedy trial and due process grounds."[1] (Oct. 12, 2007 Notice of Mot. ¶ 1.) In doing so, he refers to this Court's order of August 25, 2006 which denied his prior motion for "Dismissal Based Upon Speedy Trial Violation(s)." (See June 26, 2006 Notice of Mot.) In seeking to "now renew[] his [earlier statutory-based] speedy trial dismissal motion," defendant cites as a changed circumstance "this Court['s] October 3, 2007 order . . . suppressing Mr. Morrison's proffer of May 19, 2005." (Oct. 12,

---

[1] The defendant's Memorandum in Support identifies the bases for the relief sought being violations "of defendant's right to due process and the speedy trial clause of the Sixth Amendment and the Speedy Trial Act." (Mem. in Supp. at 1.) However, his legal arguments and the government's response thereto address solely the purported violations of 18 U.S.C. § 3161, i.e. defendant's statutory-based claim. This opinion, therefore, will similarly be confined to that subject as it is the only one appropriately framed for consideration. See Guzman v. Local 32B-32J, Service Employees International Union, 151 F.3d 86, 93 (2d Cir. 1998).

2007 Mem. in Supp. at 5.)

Specifically, defendant maintains that (1) the governmental misconduct detailed in the October 3, 2007 order contributed to his replacing counsel, thereby prolonging the plea negotiations, and (2) had replacement counsel known of that misconduct — as he would have had the January 28, 2005 tape been timely furnished to the defense — the May 19, 2005 proffer session would not have occurred. Accordingly, the associated delays, in defendant's view, should have been charged to the government, not the defense.[2]

### DISCUSSION

1. Motion for Reconsideration

Defendant's "renew[al]" (Oct. 12, 2007 Mem. in Supp. at 5) of his initial June 26, 2006 motion seeks reconsideration of this Court's order of August 25, 2006 denying the relief requested.

Initially, it warrants mention that there is no specific rule, either in the Federal Rules of Criminal Procedure or in this Court's Criminal Local Rules, providing for the reconsideration of a ruling on a criminal matter. See, e.g., United States v. James, No. 02 CR 0778, 2007 WL 914242, at *3

---

[2] If the periods cited by the defendant as erroneously tolled are included in the Speedy Trial Act calculations, the statutory time limit for the commencement of trial was long ago violated.

(E.D.N.Y. Mar. 21, 2007).  However, "[w]here the Rules of Criminal Procedure do not speak specifically to a matter, a court conducting a criminal case is permitted to draw from and mirror a practice that is sanctioned by the Federal Rules of Civil Procedure."  Id. (citation and internal quotation marks omitted). In that regard, Federal Rule of Criminal Procedure 57(b), which is entitled "Procedure When There Is No Controlling Law," provides in part that "[a] judge may regulate practice in any manner consistent with federal law, these rules, and the local rules of the district."  Fed. R. Crim. P. 57(b).  "Thus, when deciding motions for reconsideration in criminal matters, courts in this district have resolved such motions according to the same principles that apply in the civil context."  Id. (citations and internal quotation marks omitted).

A motion for reconsideration in a civil case is governed by Local Civil Rule 6.3 and by Federal Rule of Civil Procedure 54(b).[3]  The standard for a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or [factual] data that the court overlooked – matters, in other words, that

---

[3] In discussing the appropriate standard for reconsideration, many courts refer to Federal Rule of Civil Procedure 59(e), which applies to motions filed after the entry of a final judgment.  Here, the more applicable civil rule is Federal Rule of Civil Procedure 54(b), which applies to motions to reconsider interlocutory orders.  Nonetheless, the substantive standards under both rules are identical.

might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). "The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4478 at 790). Thus, a "party may not advance new facts, issues, or arguments not previously presented to the Court." Nat'l Union Fire Ins. Co. v. Stroh Cos., 265 F.3d 97, 115 (2d Cir. 2001) (quoting Polsby v. St. Martin's Press, No. 97 Civ. 690, 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000)).

2. Claimed Intervening Changes in Law
   and/or Facts Justifying Reconsideration

The proffered basis for reconsideration is, as noted earlier, this Court's order of October 3, 2007 suppressing incriminating statements made by defendant during a May 19, 2005 proffer session due to misconduct by two members of law enforcement, Detectives Trotta & Gozoloff. (Oct. 3, 2007 Mem. and Order.) The gravamen of that misconduct involved the detectives expansively explaining to the defendant, post-arraignment and in the absence of his attorneys, that he should accept the government's eighteen year plea offer lest he face certain conviction at trial, followed by either life imprisonment

or the death penalty.

Defendant does not argue, nor could he, that the October 3, 2007 order represents a change in the law for reconsideration purposes. Instead, his focus is upon defense counsels' belated discovery of the subject misconduct. The question is whether that scenario — viz. ignorance by defense counsel of facts fully known by the client as of the time the initial motion was made — is a proper predicate for reconsideration.

3.  Defendant's Decision Not to Advise His Attorneys of the Detectives' Misconduct Does Not Constitute Newly Discovered <u>Evidence for Reconsideration Purposes</u>

"When newly discovered evidence is the basis for reconsideration, the proponent must demonstrate that the newly discovered evidence was neither in his possession nor available upon the exercise of reasonable diligence at the time the interlocutory decision was rendered." <u>LaSalle Bank Nat'l Assoc. v. Capco Am. Securitization Corp.</u>, No. 02 CV 9916, 2006 WL 177169, at *2 (S.D.N.Y. Jan. 25, 2006) (internal quotations marks, citation, and emphasis deleted); <u>cf.</u> <u>Tri-Star Pictures, Inc. v. Leisure Time Prods., B.V.</u>, No. 88 Civ. 9127, 1992 WL 296314, at *3 (S.D.N.Y. Oct. 6, 1992) ("The Court will not set aside a judgment because a frustrated litigant failed to present on a motion for summary judgment all facts known by or reasonably available to him.").

Obviously the misconduct underlying the suppression of the proffer session admissions were known to the defendant since he was the individual with whom the detectives inappropriately interacted. If defendant was a dolt and/or a total stranger to the criminal justice system, perhaps a plausible argument could be advanced that he did not understand the significance of what had transpired, thus permitting his silence vis-a-vis his attorneys to be somehow equated with an absence of prior awareness of the ground cited for reconsideration. But neither is the case. Defendant had at least one State arrest and conviction before being arrested in this case and, by the time of the first proffer session in January of 2005, he had been represented by the following counsel: Henry E. Mazurek, Robert Y. Altchiler, Gerald Shargel, Alan Levine, and Steven M. Cohen. And in the interim between the time Ephraim Savitt was retained sometime in March of 2005 and the May 19, 2005 proffer session, Morrison, as evidenced by Mr. Savitt's testimony at the proffer suppression hearing and the Metropolitan Detention Center ("MDC") sign-in sheets, had approximately forty additional meetings with counsel. Thereafter, other attorneys were retained prior to the initial speedy trial motion being made in June 2006, to wit Anthony John Colleluori, Raymond Colon, Thomas P. Cleere, Anthony

P. Gallo, Anthony J. Gallo, and Peter Smith.[4] In sum, defendant had both the intelligence and background to recognize the significance of his conversations with the detectives and abundant opportunities to discuss the subject with his attorneys.[5]

As to the level of defendant's mental wherewithal, he has been described by Mr. Savitt as an intelligent, sophisticated individual. That assessment, which the Court accepts as accurate given its source, dovetails with (1) the fact that defendant

---

[4] Of the above listed attorneys, only Peter Smith is a member of the current seven attorney defense team.

[5] Defendant, in an affidavit submitted in support of his motion to suppress the incriminating statement he made at the May 19, 2005 proffer session, claims that he "never discussed [his] interactions with Trotta with any attorney [because] Detective Trotta seemed to be so comfortable with the way that he treated [him] that it never occurred to [him] that [Trotta] was violating legal or ethical standards of conduct." (Def.'s Jan. 27, 2007 Aff. ¶ 10; see also id. ¶ 13 and Def.'s Oct. 6, 2006 Aff. ¶ 21 (all to the same effect).)
   Although it is difficult to make credibility determinations based on evidence presented in affidavit form, here the truth seeking function is aided by another representation made by the defendant in his October 6, 2006 affidavit, viz. "[] I decided to participate in [the May 19, 2005 proffer] session, even before I had an opportunity to thoroughly discuss it with my new attorney [, Mr. Savitt]." (Def.'s Oct. 6, 2006 Aff. at ¶ 18 (emphasis added).) That material representation is clearly false (see text supra at 7 concerning defendant's multiple meetings with Mr. Savitt prior to the May 19, 2005 proffer session), thus raising significant reservations as to accuracy of some of the defendant's other averments including his purported reason for not advising any of his attorneys during their many times together about the detectives' misconduct. Simply put, and more to the point vis-a-vis the latter averment, I do not accept defendant's explanation as true.

headed a complicated multi-million dollar, albeit allegedly illegal enterprise for a number of years, (2) the tenor of his recorded comments while the detectives were transporting him from the United States Attorney's Office to the MDC following this initial proffer session on January 28, 2005, and (3) my observations of him during a recently conducted <u>Curcio</u> inquiry.[6]

        Defendant had the option of telling his attorneys that he had received legal advice during the interim between the first and second proffer sessions not only from them but from the detectives as well. His failure to do so surely was not simply an oversight of what he perceived to be an insignificant occurrence given the explanation in his January 27, 2007 affidavit "that if he had 'not had [those] conversations with Detective Trotta and other members of SCPD [he] would not have given the [incriminating] statement that [he] in fact made on May 19, 2005.'" (Oct. 3, 2007 Mem. and Order at 22 (quoting Jan. 27, 2007 Morrison Aff. ¶ 2).) Indeed, in that same affidavit, he identifies Trotta as "the single most influential individual in all aspects of decision making regarding the handling of [his] case." (Jan. 27, 2007 Morrison Aff. ¶ 2.) What, then, prompted defendant to withhold from his attorneys the very conduct which is the basis for the current motion for reconsideration? Conceivably, he sought to foster two separate and distinct

---

      [6] <u>United States v. Curcio</u>, 680 F.2d 881 (2d Cir. 1982).

avenues, viz. the detectives and counsel, in pursuing his goal of obtaining additional information about the government's case[7] and/or a better plea offer than the one made by the government on January 28, 2005. Perhaps another, or other reasons promoted his silence. Be that as it may, however, defendant's effort to present his speedy trial claim for the pre-June 6, 2006 period to the Court in a piecemeal, serialized fashion runs diametrically counter to the previously cited well established rules governing reconsideration.

That defendant's attorneys were unaware of the misconduct as of the date of the initial motion is not germane. Defendant's knowledge, not theirs, is controlling for he is the party seeking reconsideration with counsel being simply his advocate for that purpose. And while neither counsel nor defendant knew of the January 28, 2005 tape recording of the conversation between the detectives and defendant until well after June of 2006, it must be remembered that the tape merely memorialized what the defendant already knew. Similarly, the specifically cited basis for reconsideration, viz. my October 3, 2007 decision suppressing the fruits of the May 19, 2005 proffer

---

[7] During the reverse proffer session held on January 28, 2005, the government apparently provided defendant and his attorneys with an overview of its proof as to the weapon and arson-related charges which are the subject of the instant motion for reconsideration, as well as its proof regarding the then prospective additional charges which are found in the second superseding indictment.

session, did not create the evidence which underlies the reconsideration request, to wit the detectives' misconduct.

In sum, the factual predicate for the current application was fully known to defendant when he first moved for dismissal pursuant to 18 U.S.C. § 3161. Accordingly, I decline — to the extent invocation of the resulting procedural bar is addressed to my discretion — to entertain the current motion seeking the same relief for the same period as the predecessor application.

4. Considerations of "Manifest Injustice" do not Suggest a Different Result Than That Stated Above

Even though defendant has not established "the availability of new evidence," reconsideration would, nonetheless, be appropriate if necessary to "prevent manifest injustice." <u>Virgin Atlanta Airways, Ltd.</u>, 956 F.2d at 1255. But such is not the case here.

Although the detectives' misconduct contributed to defendant entering into the May 19, 2005 proffer session as detailed in the October 3, 2007 order, there is nothing beyond conclusory assertions by defense counsel to suggest that the detectives' actions influenced defendant's decision to ask for multiple adjournments, to concur in the case being designated as "complex" under 18 U.S.C. § 3161(h)(8)(B)(ii), and to sign the concomitant speedy trial waivers throughout the pre-June 2006

period, which process typically was triggered upon the appearance of new counsel on defendant's behalf. Defendant neither testified nor — unlike his submissions with respect to the motion to suppress the incriminating statements made during the May 19, 2005 proffer session — even submitted an affidavit suggesting such a linkage.

In an effort to cure that causation deficiency, defense counsel asserts that the subject misconduct "shifted Mr. Morrison from a trial based strategy to a plea-based strategy and [thereby] delayed the proceeding by more than two years." (Second of Def.'s two Replies at 1.)[8] That statement by counsel not only finds scant support in the record[9] but is also at odds with the evidence elicited during the proffer-related suppression hearing.

The January 28, 2005 tape, although clearly audible, is not a model of clarity. Some of the utterances heard on the tape

---

[8] Defendant's initial Reply was filed on October 19, 2007 (docket no. 379); his second Reply was filed on October 25, 2007 (docket no. 394), parenthetically, absent Court permission.

[9] The only evidence to my knowledge tending to support defendant's purported initial intention to proceed to trial, rather than pursue plea negotiations, is found in one of his two affidavits submitted in support of his motion to suppress his May 19, 2005 incriminating statements. In that affidavit, he avers, without further detail: "Trotta and Koslov [sic; presumably should read "Gozoloff"] expressed their opinion that <u>my expressed desire to proceed to trial</u> would only result in my being convicted of something and the lawyers receiving a large fee." (Def.'s Oct. 6, 2006 Aff. at ¶ 9 (emphasis added).)

-12-

lend themselves to more than one interpretation. Yet it is clear, at least from the January 28, 2005 tape, that defendant never harbored a "trial based strategy." Instead, from the outset, i.e. before the detectives' quasi-harangue apparently had its intended effect of convincing defendant he had no chance at trial, defendant wanted to resolve the pending and prospective charges via plea negotiations. (See Tr. of Jan. 28, 2005 tape recording, attached as Ex. 3 to Gov't's Mem. in Opp'n to Def.'s Mot. for Dismissal or Preclusion of Evidence at 6 (in response to Trotta's comment at the beginning of the tape "[d]on't talk . . . . [Y]ou can get yourself in trouble," Morrison says "[l]et's talk about this negotiation thing. I don't want to go to trial, but I have no choice [seemingly referring to the eighteen year offer].").)

Similarly clear from the tape is that the eighteen year plea offer extended by the government while Mr. Shargel represented defendant was unacceptable to defendant. As a result, Mr. Savitt was hired for the sole purpose of "negotiat[ing] the best possible disposition . . . of the [then pending] charges . . . and the potential . . . charges against [Morrison]." (Oct. 3, 2007 Mem. and Order at 24 (citation deleted).) In defendant's view, that circumstance, i.e. the replacement of Mr. Shargel with Mr. Savitt, is the reason the Court must revisit its earlier denial of the relief currently

sought. As expressed by defendant, "[t]he Court has determined that Mr. Morrison would not have fired Mr. Shargel[] but for the uncounseled conversations Detective Trotta had with Mr. Morrison" (Def.'s Mem. in Supp. at 6 (citing the Oct. 3, 2007 decision at 24)) and, thus, any delays attributable to new counsel familiarizing himself with the case and participating in the May 19, 2005 proffer should be charged to the government.

It was not my intention in the October 3, 2007 decision to suggest that Trotta's misconduct was the only, or even necessarily the primary reason that Mr. Shargel was discharged. Indeed, defendant has told us, via his affidavit of January 27, 2007, that he was dissatisfied with Mr. Shargel's representation on several fronts <u>before Detective Trotta spoke to him on January 28, 2005</u>. Specifically, defendant reports that the "inability of my attorneys [referring to the Shargel defense team] to secure bail or to successfully challenge what [he] knew to be factual distortions of events <u>shattered my confidence in [his] attorneys</u>." (Def.'s Jan. 27, 2007 Aff. at ¶ 3 (emphasis added).) Moreover, defendant explained that immediately prior to the January 28, 2005 car ride, he experienced "enormous[] frustrat[ion] when the meeting quickly ended without [his] having had a chance to speak," which frustration he attributes to his then counsel. (<u>Id.</u> at ¶ 6.) And "[b]efore and after January 28, 2005 [defendant reports, he] received bills from [his] lawyers

-14-

that [he] considered to be excessive." (Id. at ¶ 8.)  Therefore, although Detective Trotta's actions may have been the "final straw" in leading to Mr. Shargel's discharge, it appears highly unlikely that he, who defendant aptly describes as "one of the most highly regarded defense attorneys in the New York metropolitan area" (id. at ¶ 3), was destined to be defendant's final attorney.  Instead, given the history of this case and the festering dissatisfaction defendant had with Mr. Shargel before Detective Trotta's misconduct, it was surely simply a matter of time until new counsel arrived on the scene charged with the task of endeavoring to obtain a better plea offer from the government.  Whether that process would have ultimately lessened or increased the pretrial period is problematic on this record even if the government had furnished the January 28, 2005 tape in a timely fashion.

In sum, defendant has neither testified nor furnished an affidavit suggesting that the multiple requests made on his behalf for adjournments, or the accompanying speedy trial waivers that he signed, were caused, in whole or in part, by Detectives Trotta's and Gozoloff's misconduct.  Such information as there is in the record fails to suggest that a "manifest injustice" will result if defendant's motion for reconsideration is denied as procedurally barred given the fact that the very ground advanced currently for reconsideration, i.e. the misconduct of Detectives

Trotta and Gozoloff, was fully known to the defendant when the June 2006 motion was made.

## CONCLUSION

For the reasons indicated, defendant's motion for reconsideration of my earlier decision denying his motion for claimed pre-June 2006 violations of the Speedy Trial Act is denied.

SO ORDERED.

Dated: December 7, 2007
 Central Islip, New York /s_____
 Denis R. Hurley,
 United States District Judge