

| | THE CITY OF NEW YORK | |
|---|---|---|
| MICHAEL A. CARDOZO<br>*Corporation Counsel* | **LAW DEPARTMENT**<br>100 CHURCH STREET<br>NEW YORK, NY 10007 | ERIC PROSHANSKY<br>Phone 212 788 1324<br>Fax 212 788 1633<br>eproshan@law.nyc.gov |

January 28, 2010

Honorable Denis R. Hurley
United States District Judge
Eastern District of New York
Long Island Courthouse
100 Federal Plaza
Central Islip, New York 11722

    Re:    *United States v. Rodney Morrison*, 2:04-cr-00699-DRH-AKT

Dear Judge Hurley:

    The City respectfully submits this response to defendant Rodney Morrison's ("Morrison") January 27, 2010 comment on *Hemi Group LLC v. City of New York*, 2010 U.S. LEXIS 768 (Jan. 25, 2010) ("*Hemi Group*"), reversing *City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425 (2d Cir. 2008) ("January 27th Letter"). Morrison offers no legal reasoning to explain why a decision construing proximate cause under the RICO statute governs a determination under the MVRA, but instead rests on a conclusory assertion that the two cases are "legally equivalent." Although the term "proximate cause" appears in the Mandatory Victim Restitution Act ("MVRA") and in *Hemi Group*, the similarity ends there. Morrison parrots language in *Hemi Group* without regard for dispositive differences in the standards of proximate cause, in the fact that Morrison's legal obligations are utterly different than those of the *Hemi Group* defendants – who violated no New York tax laws – and finally, that the issue here is restitution for injury, not damages. Proximate cause in the arena of restitution requires only that "the causal chain .. not [be] extended so far as to become unreasonable." *United States v. Peterson*, 538 F.3d 1064 (9th Cir. 2008). It is hardly unreasonable to expect that illegal sales of cigarettes without New York State tax stamps by the conspiracy of which Morrison was a part would lead to re-sales of those cigarettes in the City, injuring the City.

    RICO, under which *Hemi Group* was decided, has its own unique proximate cause requirements: "A plaintiff must make a different showing of proximate cause -- one that is often more difficult to make -- when bringing suit under the RICO statute than when bringing a common-law cause of action." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 278 (2d Cir. 2006) (emphasis added) (failure of the allegations of proximate cause under RICO does not, therefore, necessarily imply a similar finding for other claims). RICO causation is a concept distinct from "proximate causation as that term is used at common law." *McBrearty v. Vanguard Group, Inc.,*

2009 U.S. App. LEXIS 25675 at *3 (2d Cir. Nov. 20, 2009) (quoting *Abrahams v. Young & Rubicam Inc.*, 79 F.3d 234, 237 (2d Cir. 1996). By contrast, under the MVRA, "The requirement that the victim be 'directly and proximately harmed' encompasses the *traditional* 'but for' and proximate cause analyses." *Rendon Galvis v. Murillo-Bejerano*, 564 F.3d 170, 175 (2d Cir. 2009) (emphasis added).

The traditional policy concerns and purposes addressed by proximate cause requirements, *see, e.g., McBrearty v. The Vanguard Group, Inc.*, 2009 U.S. Dist. LEXIS 29775 at *6-7 (S.D.N.Y. Apr. 2, 2009) are not even relevant here. Under the particular, if not unique, circumstances of this case, in which the very criminal statute under which Morrison was convicted independently provides the City with express authority to recover for the same injuries, traditional proximate cause concerns become greatly attenuated. The City's independent standing under the CCTA serves as strong evidence that, for restitution purposes, the City satisfies the requirements of proximate cause virtually as a matter of law. This conclusion follows, because, in evaluating proximate cause with respect to statutory claims, the issue is one of statutory intent: was the plaintiff "in the category the statute meant to protect, and was the harm that occurred ... the 'mischief' the statute sought to avoid." *Abrahams v. Young & Rubicam*, 79 F.3d 234, 237 (2d Cir. 1996). Although the statute construed here is the MVRA, it is more accurately described as the MVRA with an underlying CCTA violation. The fact that the City has independently been provided by Congress with an unprecedented array of remedies under the CCTA, shown below, is evidence that the City is "in the category the [CCTA] is meant to protect," and that contraband sales in the City was the "mischief the statute sought to avoid," and that those considerations should apply in the MVRA context.

The enormously broad remedies afforded the City under the CCTA should inform this Court's conclusion on the restitution to be afforded the City when the underlying crime is a CCTA violation. The CCTA is uniquely comprehensive in providing in 18 U.S.C. § 2346 (b), "Enforcement," three separate provisions setting forth the relief available to a local (and state) government:

> (b) (1) A .... local government, ... may bring an action in the United States district courts to prevent and restrain violations of this chapter by any person ....
>
> (b) (2) A ... local government ... may in a civil action under paragraph (1) also obtain any other appropriate relief for violations of this chapter from any person ..., including civil penalties, money damages, and injunctive or other equitable relief. ...
>
> (b) (3) The remedies under paragraphs (1) and (2) are in addition to any other remedies under Federal, State, local, or other law.

(emphasis added). Thus, under 18 U.S.C. 2346 (b)(1)-(3) "A .... local government, ... may bring an action .. to prevent and restrain violations ..."; "may in a civil action ...obtain ... other equitable relief," and those remedies are *in addition to any other remedies* under Federal, State, local, or other law." The sheer scope of the remedies afforded is unprecedented; our research has uncovered no federal statute that expressly extends such a broad array of remedial power, and

2

certainly not to a state or local government. The provision of such extensive remedial powers to the City is strong evidence that Congress intends very broad relief for state and local governments for CCTA violations. A local or state government that brings a CCTA civil action is not even restricted to actions for violations related to the at government's own tax: under 18 U.S.C. § 2346 (b), the City can, without restriction, bring claims for "violations of this chapter." The CCTA contains no "by reason of" requirement by which proximate cause requirements are imported into RICO actions, *see, e.g., Lerner*, 459 F.3d 273, and which guided the plurality opinion in *Hemi Group*. The City is thus clearly distinguishable from an entity like Gristede's for purposes of assessing proximate cause. Proximate cause is at bottom simply a means of avoiding liability to an endlessly expanding pool of plaintiffs. *See Palsgraf v. Long Island Railroad*, 248 N.Y. 339 (1928). The application of the stricter proximate cause requirements of RICO would be especially inappropriate in the present context, where under the MVRA, "proximate cause reflects ideas of what justice demands, or of what is administratively possible and convenient." *United States v. Reifler*, 446 F.3d 65, 135 (2d Cir. 2006) (internal quotation and citation omitted)). As shown by the City's factually well-grounded calculations of restitution in its earlier submissions, those conditions are satisfied here. *See Id.* ("The requirement that the harm have been 'directly' caused doubtless reflects the ... interest in efficiency, because the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation").

*Hemi Group* was a civil RICO action, in which the predicate offense alleged was mail fraud. Out-of-state cigarette sellers were alleged to have concealed Jenkins Act reports (15 U.S.C. § 375 *et seq*.) required under that Act to be filed with New York State.[1] The City argued that, had New York State received the Jenkins Act reports, the State would have, under the terms of an existing agreement, provided the reports to the City, which would have collected the tax from the cigarette purchasers. The Supreme Court, noting also that the Hemi Group defendants had not violated any New York tax laws, held that the chain of causation was too long to sustain a claim under RICO.[2] By contrast, in awarding restitution, the courts accept more complex chains of causation than are accepted under RICO. *See United States v. Peterson*, 538 F.3d 1064, 1076 (9th Cir. Cal. 2008) ("we have upheld restitution orders even where there are multiple links in the causal chain."); *United States v. Hackett*, 311 F.3d 989 (9th Cir. 2002).

---

[1] Jenkins Act reports notify states that a state resident owes use taxes on out-of-state cigarette purchases, and are necessitated by the fact that as a rule, businesses with no physical presence in a state have no liability for state taxes arising out of sales to state residents. *Quill Corp. v. North Dakota*, 504 U.S. 298, 301 (1992). The non-filing of Jenkins Act reports has long been held to constitute mail fraud: "Hemi Group committed fraud ... insofar as it violated the Jenkins Act by failing to report the names and addresses of New York purchasers to New York State." *Hemi Group*, 2010 U.S. LEXIS 768 at *30.

[2] Interestingly, the Supreme Court's decision did not reference the City pleadings showing that the City collected had millions of dollars in use taxes when Internet sellers were forced to provide Jenkins Act reports to the State. *See City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 434 n. 8 (2d Cir. 2008).

Hon. Denis R. Hurley, U.S.D.J.
January 27, 2010
Page 4 of 6

The dispositive issue with respect to MVRA restitution is whether a direct injury is proximately caused "by the specific conduct that is the basis of the offense of conviction." *United States v. Oladimeji*, 463 F.3d 152, 158-59 (2d Cir. 2006)). Proximate cause in this case is thus not examined under RICO, as in *Hemi Group*, but by examining the specific conduct underlying the specific offense of which Morrison was convicted -- conspiracy to violate the CCTA. As suggested by the Court at oral argument, examining the jury charge ("Charge") is an appropriate means to reveal the "specific conduct that is the basis of the offense of conviction." It is from that conduct that injury is to be traced. Examining the Charge demonstrates that Morrison's conduct caused direct injury to the City, as the City has shown previously by examining the Indictment.

As stated in the Charge, the jury was not even asked to find that Morrison had violated the CCTA, but merely whether he had joined in a conspiracy to commit CCTA violations. ("[Y]ou are not being called upon to determine whether Racketeering Acts Five through Eighty have been committed. [T]he elements of proof for the substantive crimes are only being provided since it is alleged that the commission of Racketeering Acts Five through Eighty was among the intended goals of the conspiracy charged in Count Two.") *See Charge*, 117-119. The Court then instructed the jury that "Paragraph 21 of the Indictment charges that 'the defendant Rodney Arnoldo Morrison, *together with others*, knowingly and intentionally sold and distributed Contraband Cigarettes'" *Charge* at 119 (emphasis added). Morrison's claim in the January 27th Letter that the City seeks restitution for Morrison's on-reservation sales of untaxed cigarettes, plainly misrepresents the facts of his conviction, which is far broader in terms of persons involved and contains no restriction as to where the sales occurred. Certainly nothing restricts the Charge to "on-reservation sales," where there was abundant evidence of sales by co-conspirators in the City.

The jury was instructed in the elements of a CCTA violation, principally that "It shall be unlawful for any person knowingly to . . . sell [or] distribute . . . Contraband Cigarettes," *i.e.* a sale or distribution of cigarettes which bear no evidence of the payment of applicable state cigarette taxes in the state where such cigarettes are found, if such state requires a stamp. *Charge* at 120. The Court then charged that "Under New York Tax Law section 471, ... tax stamps were required to be affixed to cigarettes sold by Peace Pipe and/or Smokersden.com." *Charge* at 122. Morrison was thus convicted of participating in a conspiracy to sell and distribute cigarettes that did not have affixed to them *New York State* tax stamps.

Based on trial testimony, the vast bulk of the unstamped cigarettes sold and distributed by Morrison and his co-conspirators were sold and distributed in New York City. To state the obvious, New York City is in New York State; the New York State cigarette tax is an "applicable tax" within the meaning of the CCTA when cigarettes are sold in New York City. Cigarettes sold and distributed by the conspiracy in New York City without a New York *State* tax stamp meet the definition of contraband cigarettes. Morrison violated the CCTA by selling

Hon. Denis R. Hurley, U.S.D.J.
January 27, 2010
Page 5 of 6

and distributing cigarettes lacking *State* tax stamps in New York City because the cigarettes sold and distributed in the City by the conspirators "bore no evidence of applicable [State] taxes."[3]

The City fully recognizes that Morrison was not charged with selling and distributing cigarettes on which a City stamp had not been applied, but the absence of language to that effect in the jury charge is completely irrelevant to a determination of whether "the specific conduct that is the basis of the offense of conviction," injured the City. That is, whether Morrison did or did not have any responsibility to sell cigarettes with New York City tax stamps on them is not determinative of whether the City was injured or not. The City does not claim that Morrison owes the City taxes, or that he had a duty to collect City taxes or that he had a duty to apply City tax stamps; the City's injury does not flow from his failure to do any of those things. Morrison also did not even have a duty to collect State taxes or to apply State tax stamps. Morrison was not a State stamping agent and had no duties at all that relate to stamping or collection of tax. The injury here, to either the City or the State, does not turn on regulatory violations by Morrison, because he had no regulatory responsibilities and was not required to pay anything to the City or the State. Morrison's only relevant "duty" for present purposes was to sell cigarettes to the public on which amounts attributable to taxes had been built into the price of the cigarettes. By not selling that category of cigarettes, a category evidenced by the presence of tax stamps on the packages, Morrison violated the CCTA. Neither the State nor the City are injured *per se* merely because cigarettes do not have stamps on them. The injury that Morrison's conduct causes both the City and the State arises because he illegally buys unstamped cigarettes and sells them to the public more cheaply than can dealers who legally sell stamped cigarettes; as a result, consumers do not purchase stamped cigarettes and the State and the City lose tax revenue as a result of reduced demand.

Morrison's sale of cigarettes lacking State stamps, the "specific conduct that is the basis of the offense," directly and proximately injured the City because cigarettes sold without the amount of tax included in the sales price are vastly cheaper than those sold by legitimate retailers. Every sale of a "Morrison carton" in the City or to a City resident replaces a sale of cigarettes to that resident on which the City and State tax had already been paid by a stamping agent. There is nothing "indirect" about this injury, and there is no long chain of causation as the Supreme Court believed was the case in *Hemi Group* – it is virtually a law of nature that a "Morrison carton" sold to a bootlegger for $25 a carton will eliminate a legal sale in the City at

---

[3] Under *United States v. Boyd*, 222 F.3d 47, 50 (2d Cir. 2000), Morrison is liable in restitution for the acts of his co-conspirators. "Under the MVRA, "if someone is convicted of a conspiracy, the court can order restitution for damage resulting from any conduct that was part of the conspiracy and not just from specific conduct that met the overt act requirement of the conspiracy conviction.'" *United States v. Elson*, 577 F.3d 713 (6th Cir. 2009) (quoting *United States v. Bussell*, 504 F.3d 956, 966 (9th Cir. 2007).

$90 a carton. The State would be injured in exactly the same fashion when sales of unstamped cigarettes occur outside the City.[4]

Morrison's assertion in the January 27th Letter that he is being held liable for taxes he had no obligation to collect, remit or pay, which harmed a party to whom it owed no duty is utter nonsense: the City is not seeking to recover taxes from Morrison. Based on the structure of the tax system, no seller of cigarettes to the public like Morrison has a duty to collect, remit or pay cigarette taxes. Sellers like Morrison have a duty to sell cigarettes on which someone else (a wholesaler) has paid taxes, as evidenced by the presence of tax stamps. Morrison certainly had obligations under the CCTA to sell stamped cigarettes. *See City of New York v. Golden Feather*, 2009 U.S. Dist. LEXIS 76306 (E.D.N.Y. August 25, 2009). The City seeks restitution for injuries caused by Morrison's sales of cigarettes at prices made possible by the fact that Morrison illegally bought and re-sold cigarettes under the false pretense that the cigarettes were intended for sales to Indians. That, and the resultant fact that Morrison and his conspirators' sales thereby undercut sales of taxed cigarettes, is the specific conduct underlying the specific offense of which Morrison was convicted.

Respectfully submitted,

Eric Proshansky
Assistant Corporation Counsel

cc: All Counsel of Record (via ECF)

---

[4] Restitution is appropriate even if persons who re-sold cigarettes purchased from Morrison are not deemed part of the conspiracy of which Morrison was convicted. For restitution purposes, the defendant's conduct need not be the sole cause of the loss, as long as any subsequent action that contributes to the loss, even an intervening cause, is directly related to the defendant's conduct. *United States v. Peterson*, 538 F.3d 1064 (9th Cir. 2008). It is completely reasonable to expect that the Big Customers to whom Morrison sold would re-sell unstamped cigarettes in the City.