UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------X
UNITED STATES OF AMERICA,

                                  MEMORANDUM AND ORDER

        -against-                      04-CR-699 (DRH)(S-2)

RODNEY ARNOLDO MORRISON,

              Defendant.
---------------------------------------------------X

A P P E A R A N C E S:

For the Government:
      Benton J. Campbell
      United States Attorney
      Eastern District of New York
      610 Federal Plaza
      Central Islip, New York 11722
        By: James M. Miskiewicz, A.U.S.A.
          John Joseph Durham, A.U.S.A.
          Diane C. Leonardo-Beckman, A.U.S.A.

For Defendant:
      William H. Murphy, Jr. & Associates
      12 West Madison Street
      Baltimore, MD 21201
        By: William H. Murphy, Jr., Esq.
          Kenneth W. Ravenell, Esq.

      Law Offices of Peter Smith & Associates
      232 East Main Street
      Huntington, New York 11743
        By: Peter Smith, Esq.

      Daniel Nobel, Esq.
      401 Broadway - 25th Floor
      New York, New York 10013

      Levitt & Kaizer
      40 Fulton Street, 23rd Floor
      New York, New York 10038-5077
        By: Richard Levitt, Esq.

For the City of New York:
    Michael A. Cardozo
    Corporation Counsel of the City of New York
    Law Department
    100 Church Street
    New York, New York 10007
      By: Eric Proshansky, Assistant Corporation Counsel

For the State of New York:
    Department of Taxation and Finance
    Office of Tax Enforcement
    Special Investigations Unit
    Suffolk District Office
    250 Veterans Memorial Highway, Room 3A2
    Hauppauge, New York 11788
      By: David Paldy, Esq.

**HURLEY, Senior District Judge:**

Following a jury trial, defendant Rodney Morrison ("defendant" or "Morrison") was convicted on May 1, 2008 of conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d), the object of which was to sell and distribute contraband cigarettes in violation of the Contraband Cigarette Trafficking Act ("CCTA"), 18 U.S.C. § 2342(a), and of illegal possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). The State of New York (the "State") and the City of New York (the "City") claim that they are victims of the RICO conspiracy and seek restitution pursuant to the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. § 3663A. Alternatively, restitution is sought pursuant to the Victim and Witness Protection Act of 1982 ("VWPA"), 18 U.S.C. § 3663, the MVRA's discretionary counterpart. For the reasons that follow, the Court finds that the MVRA applies and that the State, and not the City, is a victim under that statute. Accordingly, the State's application for restitution is granted in part, subject to the limitations set forth below, and the City's application for restitution is denied.

## BACKGROUND

The Court assumes familiarity with the facts and procedural background as stated in the Court's many prior decisions in this action. Thus, the Court states only those facts necessary for disposition of the instant motion.

On July 11, 2006, the government filed the indictment charging defendant, a cigarette on-reservation retailer,[1] with eleven counts. Count Two charged racketeering conspiracy in violation of 18 U.S.C. § 1962(d) ("RICO conspiracy"). The indictment charged eighty separate predicate Racketeering Acts. Racketeering Acts Four through Eighty alleged that Morrison "knowingly and intentionally sold and distributed contraband cigarettes . . . lacking valid New York State tax stamps, in violation of Title 18, United States Code, Sections 2342(a) and 2" from January 8, 1997 to August 2, 2004. For each Racketeering Act Four through Eighty, the indictment sets forth the approximate quantity of contraband cigarettes sold by defendant and sets forth a specific date per act. On May 1, 2008, the jury found that the government had proved Racketeering Acts Five through Eighty (the "CCTA Racketeering Acts")[2] and found defendant guilty of Count Two, RICO conspiracy based on the CCTA Racketeering Acts.

Presently before the Court are the State's and City's applications for restitution. Both parties claim that they are victims of the RICO conspiracy in that they have lost significant tax revenue as a result of defendant's actions. As explained *infra*, the government supports both

---

[1] For ease of identification, defendant is referred to as a reservation retailer although his business also included a significant wholesale component.

[2] Racketeering Act Four was dismissed at the conclusion of the government's case-in-chief given that no evidence was adduced as to that act.

requests in part. For the reasons that follow, the Court finds that the City is not a victim as that term is defined by the relevant statute and has been interpreted by case law. The City's application is therefore denied. With regard to the State, the Court finds that it is a victim and grants its application in part as set forth below.

*DISCUSSION*

**I.** *The MVRA Applies to the Parties' Claims*

Under the MVRA, restitution is mandatory for certain crimes, including "an offense against property under this title." 18 U.S.C. § 3663A(c)(1)(A)(ii). A district court must order restitution where "an identifiable victim or victims has suffered a . . . pecuniary loss." *Id.* § 3663A(c)(1)(B).

The City contends, and no one disputes, that Morrison was convicted of an offense against property. *See United States v. Conway*, 323 F. App'x 517 (9th Cir. 2009) (unpublished) (affirming district court's award of restitution under the MVRA for Washington State's tax losses resulting from defendants' contraband cigarettes sales). Accordingly, the Court will analyze the parties' claims under the MVRA.[3] The only question remaining is whether the State and/or the City are victims under the MVRA.

---

[3] "The MVRA and VWPA do not overlap. Rather, the MVRA makes restitution mandatory for the crimes it covers, and the VWPA enables discretionary restitution for non-MVRA crimes. *See* 18 U.S.C. § 3663(a)(1)(A) (excluding from the VWPA 'offense[s] described in section 3663A(c)')." *United States v. Battista*, 575 F.3d 226, 231 n.3 (2d Cir. 2009). The City also posits in a footnote that its "loss of tax revenue attributable to Morrison's federal crimes also qualifies the City as a victim under the Crime Victims Rights Act of 2004 [(the 'CVRA')], 18 U.S.C. § 3771." (City Mem. of Law, docket no. 848, at 7 n.3.) Given that § 3771(e), like the MVRA, limits restitution to those persons "directly and proximately harmed as a result of the commission of a Federal offense," the analysis in the text as to the MVRA is equally applicable to the CVRA.

**II.**     *The State is the Victim of Defendant's Criminal Conduct, not the City*

    **A.**     *The Definition of a Victim Under the MVRA*

Before the Court addresses whether the City qualifies as a victim under the MVRA, some discussion of the history behind the MVRA and the VWPA is necessary.

The VWPA was enacted in 1982 to authorize, but not require, district courts to order restitution to victims of criminal conduct. *See, e.g.*, *United States v. Day*, 418 F.3d 746, 751 (7th Cir. 2005). In *Hughey v. United States*, 495 U.S. 411 (1990), the Supreme Court addressed the question of whether the provisions of the VWPA "allow a court to order a defendant who is charged with multiple offenses but who is convicted of only one offense to make restitution for losses related to the other offenses." *Id.* at 412-13. At the time, the VWPA authorized federal courts to order "a defendant convicted of an offense" to "make restitution to any victim of such offense." *Id.* at 412. Hughey had been indicted for three counts of theft by a postal worker and three counts of unauthorized credit card use. After pleading guilty to a single count of unauthorized credit card use, Hughey was nonetheless sentenced to restitution for all of the charges underlying his indictment. The Supreme Court reversed, holding that "the language and structure of the [VWPA] make plain Congress' intent to authorize an award of restitution only for the loss caused by the specific conduct that is the basis of the offense of conviction." *Id.* at 413.

In 1990, Congress amended the VWPA's definition of "victim" to mean:

> a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

18 U.S.C. § 3663(a)(2). The MVRA was enacted in 1996 and contains an identical definition of victim. 18 U.S.C. § 3663A(a)(2).

Since the change in definition, courts have struggled to discern whether the amendment to the VWPA was intended to overrule *Hughey* "in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity." The Second Circuit has found that it was not:

> Although *Hughey* involved the pre-amendment version of the VWPA, courts have extended its analysis to the amended version of that statute. *See, e.g., United States v. Hughey*, 147 F.3d 423, 437 (5th Cir. 1998) ("That part of *Hughey* which restricted the award of restitution to the limits of the offense, however, still stands."). We have approved of this analysis and, because the amended version of the VWPA contains identical language to the MVRA, we have further extended *Hughey* to the MVRA. *United States v. Oladimeji*, 463 F.3d 152, 158-59 (2d Cir. 2006) (holding that the relevant question in imposing restitution under the MVRA is whether the "loss [is] caused by the specific conduct that is the basis of the offense of conviction"); *see also United States v. Akande*, 200 F.3d 136, 141 (3d Cir.1999) (holding that "[t]he conduct underlying the offense of conviction thus stakes out the boundaries of the restitutionary authority" under the MVRA).
>
> . . . .
>
> While the language expands what it is that will give rise to a compensable loss when a scheme, conspiracy or pattern is involved, the reference point to which such conspiracy is tied remains the "offense" of which the defendant has been convicted. *See* 18 U.S.C. § 3663A(a)(1) ("[W]hen sentencing a defendant *convicted of an offense* described in subsection (c), the court shall order, in addition to . . . any other penalty authorized by law, that the defendant make restitution to the victim *of the offense* . . . ." (emphasis added)). That is, the "scheme, conspiracy, or pattern of criminal activity" must be an "element" of that "offense" in order for the conduct in the course of the scheme or conspiracy to be considered as a basis for determining compensable harm.

*In re Local # 46 Metallic Lathers Union*, 568 F.3d 81, 86-87 (2d Cir. 2009).

6

> Similarly, in *Battista*, the Second Circuit stated:
>
>> Although the definition of victim is certainly broad, in determining whether one qualifies as a victim, a sentencing court can only consider the offense or offenses for which the defendant was convicted. *See Hughey v. United States*, 495 U.S. 411, 413, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990); *United States v. Metal Lathers Local 46 Pension Fund (In re Local # 46 Metallic Lathers Union)*, 568 F.3d 81, 86 (2d Cir. 2009). Thus, restitution may be ordered "only for the loss caused by the specific conduct that is the basis of the offense of conviction." *Hughey*, 495 U.S. at 413, 110 S.Ct. 1979. "[T]he loss caused by the conduct underlying the offense of conviction establishes the outer limits of a restitution order." *Id.* at 420, 110 S.Ct. 1979.

575 F.3d at 231.

These findings are consistent with the legislative history behind the 1990 amendment to the VWPA. As noted in the accompanying Senate Report:

> Section 2109 of the legislation amends 18 U.S.C. § 3663(a), which authorizes the sentencing court to order a convicted defendant to make restitution to *a victim of the offense* for which the defendant has been convicted. Section 2109 adds to 18 U.S.C. § 3663(a) a provision defining the term "victim". The definition provides that, for the purposes of an offense that has as an element a scheme, a conspiracy, or a pattern of crime activity, "victim" means a person who is *directly harmed by the offense*.

H.R. Rep.101-688(1) (1990), *as reprinted in* 1990 U.S.C.C.A.N. 6472, 6583 (emphasis added).

This sentiment was echoed in a later Senate Report accompanying the enactment of section 3663A:

> Moreover, the committee amendment requires that there be an identifiable victim who suffers a physical injury or pecuniary loss before mandatory restitution provisions would apply. The committee intends this provision to mean . . . that mandatory restitution provisions apply only in those instances where a named,

7

> identifiable victim suffers a physical injury or pecuniary loss
> directly and proximately caused by *the course of conduct under the
> count or counts for which the offender is convicted*.

S. Rep. 104-179, at 19 (1995), *as reprinted in* 1996 U.S.C.C.A.N. 924, 932 (emphasis added).

Thus, in analyzing whether the State and/or City may be properly classified as victims under the MVRA, the Court begins with an examination of the offense of which defendant stands convicted.[4]

### B. *Defendant's Conviction*

As noted above, defendant was convicted of a RICO conspiracy in which the goal of the conspiracy was to commit the CCTA Racketeering Acts, i.e. the sale and distribution of contraband cigarettes. However, a perusal of the indictment and the Court's charge elucidates the scope of the conspiracy. In that regard, both the indictment and the charge reflect that defendant was charged and convicted of conspiring with others to sell and distribute cigarettes lacking valid New York State tax stamps only, there being no reference to the absence of City tax stamps. (*See* Jury Charge, docket no. 769, at 121; Second Superseding Indictment, docket no. 95, ¶ 21.) In fact, the statutory definition of contraband cigarettes was intentionally modified for charge purposes to delete any reference to local taxes.

Moreover, as explained in great detail in the Court's February 26, 2009 decision denying defendant's Rule 29 motion to dismiss Count Two, the indictment charged, and the evidence at trial supported, that these sales occurred on-reservation. (*See generally* Am. Mem.

---

[4] Tellingly, in asking this Court to apply a broader definition of victim, the City relies on case law from the Ninth Circuit, which is not binding on this Court. *See* City's Jan. 28, 2010 Letter Br. at 6 n.4 (citing *United States v. Peterson*, 538 F.3d 1964, 1075 (9th Cir. 2008) ("[W]e have upheld restitution orders even where there are multiple links in the causal chain.")).

and Order dated Feb. 26, 2009, docket no. 792, at 47-48.) That is to say, the scope of the conspiracy is as follows: Defendant was convicted of entering into a RICO conspiracy in which the goal was to sell and distribute cigarettes on-reservation, including internet sales, that lacked applicable New York State tax stamps in violation of the CCTA.

### C. *The City was not Directly and Proximately Harmed by the Conspiracy of Which Defendant Stands Convicted*

The City contends that it is a victim of Morrison's conspiracy because it has lost significant tax revenue as a result of defendant's on-reservation sales of unstamped cigarettes. The City does not argue that its injury stems from Morrison's failure to purchase cigarettes bearing City tax stamps.[5] Instead, the City claims that its losses stem from Morrison's sale of cigarettes lacking applicable *state* tax stamps because City residents were induced to purchase these less expensive, unstamped cigarettes. The City asserts that these sales of discounted cigarettes displaced sales that would have otherwise occurred in the City generating City tax

---

[5] In its Reply Memorandum, the City indicates that Morrison had no duty to purchase cigarettes bearing City tax stamps: "The City tax stamps whose purchase by cigarette stamping agents actually generates revenue are by law applied only to cigarettes that are to be sold at retail within the confines of New York City. Such stamping agents would never even have occasion to sell Peace Pipe cigarettes bearing New York City tax stamps because Peace Pipe was not located in New York City. That is, cigarettes sold to Peace Pipe would never have borne City tax stamps because, ostensibly at least, they were not sold to a City retailer." (City's Reply Mem., docket no. 854, at 12 n.3.) At oral argument, however, the City suggested that if Peace Pipe knew "that it was selling cigarettes effectively to New York City residents, then there would have had to be tax stamps on them." (Jan. 22, 2010 Tr. at 75.) The City has never provided an explanation, however, as to how Peace Pipe could have acquired cigarettes bearing City stamps. *See City of N.Y. v. Milhelm Attea & Bros., Inc.*, 550 F. Supp. 2d 332, 341 (E.D.N.Y. 2008) ("Defendants' [cigarette wholesalers] sales to reservation retailers, located outside of New York City, fall outside the scope of the pre-collection scheme for City taxes."). In any event, in its most recent submission, the City asserts that the point is academic because "whether Morrison did or did not have any responsibility to sell cigarettes with New York City tax stamps on them is not determinative of whether the City was injured or not." (City's Jan. 28, 2010 Letter Br. at 5.)

9

revenue.

In attempting to demonstrate that its harm was directly and proximately caused by the conspiracy Morrison was convicted of, the City concedes, as it must, that Morrison was convicted of a RICO conspiracy to sell and distribute cigarettes lacking applicable state tax stamps in violation of the CCTA. However, the City argues that by including the term "distribution" in the indictment, Morrison was convicted not only of conspiring to sell contraband cigarettes on-reservation, but also of conspiring to distribute untaxed cigarettes to City residents. In that regard, the City maintains that there was evidence at trial that Morrison knew that some of his purchasers were bootleggers who intended to sell a majority of the contraband cigarettes they purchased in the City. This argument misses the mark. Morrison's offense of conviction did not include within its ambit a scheme to defraud the City out of tax revenue. Rather, it was a narrower conspiracy to sell and distribute cigarettes on-reservation lacking applicable state tax stamps, the unlawful goal of which was to defraud the state. *Cf. Hemi Group, LLC v. City of N.Y.*, – S.Ct. –, 2010 WL 246151, at *8 (2010) ("[T]he City cannot escape the proximate cause requirement [in civil RICO case] merely by alleging that the fraudulent scheme embraced all those indirectly harmed by the alleged conduct.").

The Court recognizes that the City may well have been harmed by the defendant's conduct. That does not mean, however, that the City was a direct victim of the defendant's criminal conduct as that term is defined by § 3663A(a)(2). In this regard, the City places great reliance on the decision of Judge Amon in *City of N.Y. v. Golden Feather Smoke Shop, Inc. et al.*, 2009 WL 2612345 (E.D.N.Y. Aug. 25, 2009), in which Judge Amon granted the City's motion for a preliminary injunction enjoining Morrison, Peace Pipe, and other defendant Native

10

American reservation retailers from selling unstamped cigarettes other than to tribe members for their personal use. Although Judge Amon found that "defendants' considerable sales of unstamped cigarettes injure the City," *id.* at *22, her finding of injury was made in the context of a preliminary injunction hearing and was therefore governed by a different standard. *See id.* at *23 (finding that defendants' sales "*likely* deprive[] the City of significant tax revenue") (emphasis added); *see also City of N.Y. v. Milhelm Attea & Bros., Inc.*, 550 F. Supp.2d 332, 341 (E.D.N.Y. 2008) (finding City had established Article III standing against cigarette wholesalers who supplied reservation retailers with unstamped cigarettes "by demonstrating an injury *fairly traceable* to the defendants' alleged actions") (emphasis added). Judge Amon's findings, therefore, do not support the conclusion urged by the City.

Similarly, the City's argument that it "satisfies the requirements of proximate cause virtually as a matter of law" by virtue of defendant's CCTA violations (City's Jan. 28, 2010 Letter Br. at 2), conflates the City's right to seek damages against defendant under the CCTA in a civil proceeding with its right to restitution under the MVRA, the latter being confined to loss directly and proximately caused by defendant's criminal conduct in the course of the conspiracy for which he stands convicted. *See* S. Rep. 104-179, at 18, *as reprinted in* 1996 U.S.C.C.A.N. 924, 931 ("It is the committee's intent that courts order full restitution to all identifiable victims of covered offenses, while guaranteeing that the sentencing phase of criminal trials do not become fora for the determination of facts and issues better suited to civil proceedings.").

Not only is the City's restitution claim untethered to the count of conviction, the City's causal theory is far too attenuated to demonstrate direct and proximate causation. To the

11

extent the City seeks restitution based upon its distribution theory, i.e. that Peace Pipe engaged in on-site sales to bootleggers who then resold the cigarettes to City residents who would have otherwise purchased tax-stamped cigarettes in the City, the City's claimed injury "rests not just on separate *actions*, but separate actions carried out by separate *parties*." *Hemi Group,* 2010 WL 246151, at *7 (emphasis in original).[6] Notwithstanding what Morrison's purchasers intended to do with the cigarettes they purchased, the "offense" to which Morrison was convicted was solely and exclusively a conspiracy to sell and distribute cigarettes lacking applicable state tax stamps. *Compare In re Local # 46 Metallic Lathers Union*, 568 F.3d at 86 (finding that union was not a victim of conspiracy to launder money offense to which defendant pled guilty; "While [defendant] admittedly had a plan to obtain laundered money and then use that money to pay . . . employees in cash and simultaneously avoid paying taxes and union obligations, the only criminal charge that the Government brought and of which [defendant] stands convicted is conspiracy to engage in money laundering."). Thus, the crime of which Morrison was convicted was "completed" when he sold the unstamped cigarettes on-reservation. *See id.*

       Moreover, to the extent the City's claim is predicated upon both on-reservation sales to bootleggers as well as sales by Peace Pipe directly to City residents, it is entirely speculative to presume that any alleged diverted City purchasers would have purchased their cigarettes in the City had Morrison's cigarettes not been available. There is nothing to suggest that such diverted purchasers could not have obtained other unstamped cigarettes originating

---

    [6] The Court recognizes that the *Hemi* decision interpreted proximate causation in the context of a civil RICO claim. Nonetheless, the Court finds *Hemi's* reasoning instructive as like the civil RICO statute, the MVRA requires the City to establish that its injuries were directly and proximately caused by defendant's conduct.

from a different reservation retailer. Alternatively, they could have purchased unstamped cigarettes from one of the many out-of-state cigarette retailers who are not required to collect state and city taxes at the time of sale. *See City of N.Y. v. Smokes-Spirits.com, Inc.*, 12 N.Y.3d 616, 619 (2009). In fact, given the City's theory that City residents were induced to purchase Morrison's cigarettes because they were less expensive, it would seem more likely that these hypothetically displaced purchasers would have sought out discounted cigarettes from another source rather than pay full price to a City retailer.

In sum, for the reasons stated, the Court finds that the injury said to be suffered by the City was not a direct and proximate result of defendant's on-reservation sales of "contraband cigarettes . . . lacking valid New York State tax stamps." (Indictment ¶ 21.) Accordingly, the City is not a victim under the MVRA and its application for restitution is denied.

### D. *The Direct Victim of Defendant's Conduct Under the MVRA is the State*

#### 1. *The State is a Victim under the MVRA*

The defendant does not dispute that the State is a direct and proximate victim of defendant's criminal conduct under the MVRA. Instead, defendant conclusorily argues that the State should be precluded from seeking restitution for those tax losses the State Department of Taxation and Finance did not collect pursuant to its forbearance policy.[7] (*See* Jan. 22, 2010 Tr. at 53-62.) The defendant proffers no authority in support of this position, other than making a vague reference to "an estoppel theory." (*Id.* at 56.) Defendant's argument is rejected. As I indicated on the record and as the Court has stated many times in this case, the State Department

---

[7] The forbearance policy is discussed in great detail in the Court's February 26, 2009 Amended Memorandum and Order.

of Taxation and Finance does not speak for the entire State. (*See generally* Am. Mem. and Order dated Feb. 26, 2009, docket no. 792, at 37.) The failure of the executive branch to enforce the law cannot eviscerate a statute duly enacted by the legislature and, by extension, does not vitiate the State's status as a victim for restitution purposes. Accordingly, the Court finds that the State is a victim under the MVRA.

### 2. *Calculating the Amount of Restitution*

The State maintains that it is entitled to restitution in the sum of approximately $202,441,165.11, representing the amount of New York State sales and excise tax that defendant allegedly failed to pay from 1996 through 2009.[8] According to the State's papers, the State derived this figure by taking the total number of unstamped cigarettes sold to Peace Pipe during this time frame and calculating the amount of excise tax due on those cigarettes. The State then calculated the amount of sales tax due on those cigarettes and added the two numbers together resulting in a total unpaid State tax loss. From this figure, the State deducted taxes due on 25% of these sales, explaining that "25% of the unstamped cigarettes sold to Peace Pipe Smoke Shop during the relevant period would not be taxable." (Aff. of Emanuel Urzi, dated Dec. 16, 2009, ¶ 9.)

As best the Court can glean from the cursory and confusing papers offered by the State in support of its application and from statements made by the State at oral argument, that 25% represents both on-reservation sales to Native Americans as well as on-reservation retail sales to non-Native Americans in minimal amounts. The remaining 75%, according to the State,

---

[8] At oral argument, the State provided the Court and all parties with a copy of a new schedule laying out its claimed losses for restitution purposes. A copy of this schedule is annexed to the end of this decision and is hereby designated State Hearing Exhibit 1.

corresponds to all on-reservation sales made from Peace Pipe directly to wholesale bootleggers for resale. Although the Court finds that the State is entitled to some restitution, as discussed below, there are several flaws with the State's calculation.

First, it is worth noting that although the government supports the State's application, it does so only to the extent that the State's calculation of tax loss is tethered to actual CCTA violations, viz. sales of contraband cigarettes in quantities in excess of 60,000 per transaction.[9] The Court agrees. As discussed *supra*, restitution under the MVRA is limited to loss directly and proximately caused by the course of conduct under the count for which defendant was convicted, here conspiring to violate the CCTA in the manner described above. Thus, the State's application will be granted only to the extent the State can establish its tax loss resulting from actual CCTA violations.

Second, this Court has already found that notwithstanding the forbearance policy, all on-reservation cigarette sales to non-Native Americans were subject to the State cigarette tax under N.Y. Tax Law § 471. Nevertheless, the State proposes a computation under which it contends that 25% of the unstamped cigarettes sold by Peace Pipe were not taxable. This figure, however, was computed based upon the State's compilation of the total number of unstamped cigarettes sold *to* Peace Pipe. The State took this figure and then estimated that 75% of these cigarettes were sold by defendant to bootleggers and were thus taxable. When defendant's actual CCTA sales become the reference point, it may be that this percentage calculation becomes unnecessary.

---

[9] The CCTA was amended in March 2006 and the quantity required to trigger the provisions of the statute was reduced to 10,000.

Finally, the State seeks restitution for tax losses it allegedly incurred from 1996 to 2009. The State does not explain why this is the relevant time frame other than to state that it adopts the City's arguments in this regard. (*See* Jan. 22, 2010 Tr. at 38.) In the City's papers, the City argues that "[a]lthough Morrison's indictment describes a conspiracy extending from at least October 1996 through September 2004, abundant evidence demonstrates that the conspiracy began on June 22, 1994 [the date Peace Pipe obtained its Suffolk County business certificate], and continued through at least September 25, 2009 [the date Peace Pipe closed due to court order]." (City's Mem. of Law, docket no. 848, at 8.) Thus, the question for the Court is whether the State is entitled to restitution for conduct that occurred outside the time frame of the conspiracy as alleged in the indictment. The Court finds that it is not. Given that both the legislative history behind the enactment of the MVRA and recent Second Circuit case law indicate that the boundaries of restitution are to be circumscribed by the conduct underlying the offense of conviction, it logically follows that these limits include the specific temporal scope of the criminal conduct as outlined in the indictment. *See, e.g.*, *United States v. Inman*, 411 F.3d 591, 595 (5th Cir. 2005) ("[W]here a fraudulent scheme is an element of the conviction, the court may award restitution for actions pursuant to that scheme. However, the restitution for the underlying scheme to defraud is limited to the specific temporal scope of the indictment.") (citations and internal quotation marks omitted); *United States v. Akande*, 200 F.3d 136, 141 (3rd Cir. 1999) ("[T]he 'offense of conviction,' as defined by *Hughey I*,[10] remains the reference point for classifying conduct that determines liability for restitution. Although the amendment expanded the breadth of the definition of victims, the text did not extend the length of the period

---

[10] *Hughey v. United States*, 495 U.S. 411 (1990).

attributable to the offense of conviction. We therefore find ourselves in agreement with the *Hughey II* Court[11] that the offense of conviction is temporally defined by the period specified in the indictment or information."). "Because the government has control over the drafting of the [indictment], it bears the burden of includ[ing] language sufficient to cover all acts for which it will seek restitution." *Akande*, 200 F.3d at 142 (citation and internal quotation marks omitted). Here, the indictment covers a very specific time frame, viz. October 1996 through September 2004. The Court finds that any restitution award issued in this case must be confined to that period.

The two Second Circuit cases cited by the City do not compel a different result. In *United States v. Dupre*, 2007 WL 1589451 (S.D.N.Y. June 4, 2007), defendants were convicted of two counts, one for conspiracy to commit wire fraud and one for wire fraud. Although "the period for each count was charged as 2002 to 2004," the indictment alleged that Dupre operated the scheme from 1994 to 2004. The court found that because the "crimes of conviction included both a conspiracy and a scheme to defraud . . . regardless of the narrower time period in the Statutory Allegation for Count One and Count Two, restitution is allowed for all losses caused during the course of the criminal scheme, which extends from 1994." *Id.* at *5.[12] The Second Circuit affirmed, finding that "the indictment sufficiently linked [defendant] with a criminal scheme, wire fraud, beginning as early at 1994." *United States v. Dupre*, 296 F.

---

[11] *United States v. Hughey*, 147 F.3d 423 (5th Cir. 1998).

[12] Parenthetically, the Court notes that although the district court found that *Hughey* had been partially superseded by the amendment to the VWPA, the court did not have the benefit of later Second Circuit case law indicating that the analysis set forth in *Hughey* survives the amendment. *See Battista*, 575 F.3d at 231; *In re Local # 46*, 568 F.3d at 86-87.

App'x 113, 114, 2008 WL 4501912, at *1 (2d Cir. 2008) (unpublished). Because the *Dupre* court limited restitution to the time frame alleged in the indictment, the case does not support the City's position. Moreover, the Second Circuit's decision is an unpublished summary order and therefore has no precedential effect. *See* Local Rule 32.1.1(a).

In *United States v. Hart*, 1997 U.S. App. LEXIS 2339 (2d Cir. Feb. 10, 1997) (unpublished), the defendant was convicted of one count of bank fraud which the indictment alleged occurred over a four-day period. *Id.* at *1, 10. Nonetheless, the Second Circuit affirmed the lower court's award of restitution for the bank's losses caused by the same scheme which occurred during the four months prior to the time period specified in the indictment. Although *Hart* seems to support the City's and State's argument, it is an unpublished summary order and therefore has no precedential effect. *See* Local Rule 32.1.1(a). Indeed, the decision was filed in 1997 and only summary orders filed after January 1, 2007 may be cited in a party's brief. *Id.* 32.1.1(b). In any event, to the extent the Court awarded restitution for conduct occurring outside the time frame of the indictment, this would seem to be inconsistent with more recent Second Circuit case law indicating that "[w]hile the [MVRA] expands what it is that will give rise to a compensable loss when a scheme, conspiracy or pattern is involved, the reference point to which such conspiracy is tied remains the 'offense' of which the defendant has been convicted." *In re Local # 46 Metallic Lathers Union*, 568 F.3d at 87. *See also Battista*, 575 F.3d at 231 ("[T]he loss caused by the conduct underlying the offense of conviction establishes the outer limits of a restitution order."). Here, the "offense" of which defendant was convicted is prescribed in the indictment as relating to a specific time frame.

In sum, the State's application for restitution is granted to the extent that the State

may recover for its tax loss attributable to actual CCTA violations that occurred during the conspiracy as that time frame was outlined in the indictment, i.e. from October 1996 to September 2004. The State is directed to submit documentation in support of its claim consistent with the Court's decision on or before February 19, 2010. In this regard, that submission shall set forth each CCTA violation for which it seeks restitution, together with the corresponding tax loss to the State. To the extent the State seeks restitution for loss extending beyond the tax stamps, i.e. for what the State labels lost sales tax per carton, the State shall submit authority for why it is entitled to recover these amounts and how they relate to the offense of which defendant was convicted, i.e. conspiring to sell and distribute contraband cigarettes lacking applicable state tax stamps. The defendant shall submit any objections on or before February 26, 2010.

## *CONCLUSION*

For all of the above reasons, the City's application for restitution is DENIED. The State's application is GRANTED IN PART subject to the limitations set forth above.

**SO ORDERED.**

Dated: February 12, 2010
      Central Islip, New York       /s_____
                                                    Denis R. Hurley,
                                                    United States District Judge