UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
UNITED STATES OF AMERICA,

                                              MEMORANDUM AND ORDER
          -against-                           04-CR-699 (DRH)(S-2)

RODNEY ARNOLDO MORRISON,

               Defendant.
--------------------------------X
A P P E A R A N C E S :

For the Government:
     Benton J. Campbell
     United States Attorney
     Eastern District of New York
     610 Federal Plaza
     Central Islip, New York  11722
          By: James M. Miskiewicz, A.U.S.A.
               John Joseph Durham, A.U.S.A.
               Diane C. Leonardo-Beckman, A.U.S.A.

For Defendant:
     William H. Murphy, Jr. & Associates
     12 West Madison Street
     Baltimore, MD 21201
          By: William H. Murphy, Jr., Esq.
               Kenneth W. Ravenell, Esq.

     Law Offices of Peter Smith & Associates
     389 Fort Salonga Road
     Northport, New York 11768
          By: Peter Smith, Esq.

     Daniel Nobel, Esq.
     401 Broadway - 25th Floor
     New York, New York 10013

     Levitt & Kaizer, Esqs.
     40 Fulton Street, 23rd Floor
     New York, New York 10038
          By: Richard Levitt, Esq.

HURLEY, Senior District Judge

          The purpose of this Memorandum and Order is to correct

and clarify portions of my bench decision of January 29, 2010.

Firstly, the following comment made by me during the bench decision regarding Arturo Kerr ("Kerr") is incorrect: "[L]ater in [his] testimony there was testimony to the effect that the defendant said that he wanted [Shirwin Henry ("Henry")] killed." (Jan. 29, 2010 Sentencing Transcript ("Sentencing Tr.") at 74.) Indeed, the tenor of Kerr's testimony was that Rodney Morrison ("Morrison" or "defendant") never used the word "kill" but rather indicated that he didn't "want to see [Henry] again" in response to Kerr's inquiry as to whether Henry was to be "roughed up or eliminated." (Trial Transcript ("Trial Tr.") at 5202.) Kerr testified he understood that Morrison's goal was to have Henry murdered. (Id., e.g., at 5448.)

Morrison's post-murder conduct, when viewed in conjunction with the other evidence in the case (some of which was underscored during the January 29, 2010 bench decision) and measured against the fair preponderance of the credible evidence standard, demonstrates that Kerr's assessment was on-target. Not only did Morrison immediately arrange with Wynette Randall — following his November 14, 2003 telephone conversation with Kerr — for the $5,000 to be paid as per the Morrison/Kerr agreement reached at Ladakins on November 9, 2003 (Sentencing Tr. at 81), but he also personally paid Kerr a "$10,000" bonus sometime thereafter for doing a "[g]ood job" (Trial Tr. at 5294). As to both payments, it is significant not only that they were made but

that neither was accompanied by Morrison complaining, commenting, or even suggesting that the plan as implemented departed an iota from what he wanted done, viz. to have Henry killed.  Moreover, Morrison's conversation with Henry's mother Pauline McCammon ("McCammon") is also germane, which leads us to the clarification aspect of this Memorandum and Order.

In the January 29, 2010 bench decision, I commented on the post-murder Morrison/McCammon interaction thusly:

> Interestingly, or sadly, and as a matter of fact, before Mr. Henry's body was found, Mr. Morrison called Mr. Henry's mother.  And although they knew one another, their contacts were very infrequent.  And during that telephone conversation Mr. Morrison was very solicitous.  He said if there was anything he could do, he would do it.  And I think he ultimately sent like a $3,500 check to the mother of Sherwin Henry.

(Sentencing Tr. at 88-89.)

The substance of my above quoted comments are correct[1] but what I said was incomplete and did not adequately portray the point intended to be made.  To partially reiterate by way of background, reference to McCammon's testimony indicates that after Morrison knew of Henry's fate, but before his body was found on Monday, November 17, 2003 and, thus, before she knew of her son's death, Morrison contacted her as reflected in the trial transcript:

---

[1] However, the amount of the check Morrison sent to McCammon was "$3000," not $3500.  (Trial Tr. at 8966.)

Q.   After the detectives left [on Saturday, November 15, 2003], did you receive a phone call from anyone?

A.   Yes.

Q.   Who did you receive a phone call from?

A.   Rodney Morrison.

Q.   And approximately what time was that?

A.   It was like 10 minutes after they left.

Q.   And approximately how long were the detectives at your house?

A.   They did not spend like a very long time.

Q.   When the defendant called you what, if anything, did he say to you?

A.   He said what is this I'm hearing, a rumor that Shirwin is missing?
I said, no, it's not a rumor. Shirwin is missing.
He said what was he doing, was he selling cigarettes?
I said I don't know.
He said was he by himself?
I said I don't know.
He said I told Shirwin not to trust anyone, not to trust anyone.  He said was Duane with him?
I said I don't know.  He said you see me, I do not trust anyone.  That is why I move my family out of the country.  Right now I'm not in the country.  I'm in Mexico.  And if there's anything that you need, do not hesitate to call.  If I'm not there, you could ask Wynette, she's my secretary.  I said okay.
                         . . . .

Q.   After this conversation did the defendant call you again?

A.   Yes.

```
Q.    When was that?

A.    That Tuesday after Shirwin was found.

Q.    In the conversation on Tuesday what, if
      anything, did the defendant say to you?

A.    He said he was sorry of Shirwin's death, and
      if there's anything that I need, to call him,
      but he would like to speak with Duane.
```

(Trial Tr. at 8882-84.)

Why did Morrison call McCammon?  Was it to learn what Henry's mother knew about her son's absence as suggested by his queries about "was he by himself," "was Duane with him," and "was he selling cigarettes"?  (Id. at 8883.)  Perhaps it was a preemptive effort by Morrison to divert attention from being focused on him once Henry's body was found consistent with Morrison reporting to McCammon that he was then "not in the country" and his later expressions of sympathy.  (Id.)  Maybe it was both, or some other reason or reasons were at play.  But whatever the motivation, the placing of the calls viewed in their totality appear far more consistent with the mindset of someone satisfied with a contract performed as intended (to wit, Morrison), as distinct from someone whose plan went horribly awry due to the incompetence or the intervening intention of his agent (namely, Kerr).

This concludes the intended modifications of the January 29, 2010 bench decision.

SO ORDERED.

Dated:    March 4, 2010
          Central Islip, New York

                              _____/s/_____
                              DENIS R. HURLEY, U.S.D.J.