```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------X
UNITED STATES OF AMERICA,
                                          MEMORANDUM AND ORDER
          -against-                       04-CR-699 (DRH)(S-2)

RODNEY ARNOLDO MORRISON,

               Defendant.
-----------------------------X
A P P E A R A N C E S:

For the Government:
     Benton J. Campbell
     United States Attorney
     Eastern District of New York
     610 Federal Plaza
     Central Islip, New York  11722
          By: James M. Miskiewicz, A.U.S.A.
              John Joseph Durham, A.U.S.A.
              Diane C. Leonardo-Beckmann, A.U.S.A.

For Defendant:
     William H. Murphy, Jr. & Associates
     12 West Madison Street
     Baltimore, MD 21201
          By: William H. Murphy, Jr., Esq.
              Kenneth W. Ravenell, Esq.

     Law Offices of Peter Smith & Associates
     389 Fort Salonga Road
     Northport, New York 11768
          By: Peter Smith, Esq.

     Daniel Nobel, Esq.
     401 Broadway - 25th Floor
     New York, New York 10013

     Levitt & Kaizer
     40 Fulton Street, 23rd Floor
     New York, New York 10038
          By: Richard Ware Levitt, Esq.

HURLEY, Senior District Judge
```

By letter motion dated March 17, 2010, Rodney Morrison ("Morrison" or "defendant") "request[s] reconsideration of this

Court's rulings denying Mr. Morrison's previous motions seeking dismissal of Count Two on the ground that it was a violation of due process to prosecute him under a federal statute that incorporated a violation of New York Tax Law § 471 as a necessary element." (Def.'s Mar. 17, 2010 Letter at 1.) For the reasons provided <u>infra</u>, defendant's motion for reconsideration is granted and, upon reconsideration, Count Two of the indictment is dismissed.

<u>BACKGROUND</u>

Familiarity with the facts and procedural background is presumed. Thus, the Court states only those facts necessary for disposition of the instant motion.

By indictment filed on July 11, 2006, defendant was accused of multiple crimes, but was found guilty of only two by a jury verdict returned on May 1, 2008, to wit, Count Two, a RICO conspiracy charge under 18 U.S.C. § 1962(d) with the goal of the conspiracy being to sell cigarettes lacking valid New York State tax stamps as alleged in Racketeering Acts Five through Eighty in violation of N.Y. Tax Law § 471 and 18 U.S.C. § 2342(a),[1] and

---

[1] The grand jury in Racketeering Acts Five through Eighty charged defendant, acting either directly and/or through employees and associates, with making sales of unstamped cigarettes to non-Native Americans in specific amounts on specific dates. The chart, provided in paragraph 21 of the indictment, which lists those amounts and dates, was prepared from records seized from defendant's place of business, the Peace Pipe Smoke Shop, and reflects that all of the subject sales were made on-reservation.

Count Eight charging defendant with the illegal possession of a firearm as a felon in violation of 18 U.S.C. § 922(g)(1).

Count Two, the RICO conspiracy Count, is the subject of the current motion for reconsideration, as it has been for the numerous earlier reconsideration motions.[2]

## STANDARD FOR RECONSIDERATION

"The standard for a motion for reconsideration is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or [factual] data that the court overlooked -- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court. The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." United States v. Morrison, 2007 WL 4326796, at *1 (E.D.N.Y. Dec. 7, 2007)(citations and internal quotation

---

[2] As explained by defense counsel, "[w]e specifically request reconsideration of the Court's pre-trial decisions dated November 9, 2007, now published at 521 F. Supp. 2d 246 (EDNY 2009), the decision on defendant's Rule 29 motions dated February 6, 2009, now published at 596 F. Supp. 2d 661 [this decision was amended for non-substantive reasons via Amended Memorandum and Order dated February 26, 2009], and the decisions made following publication of Cayuga Indian Nation v. Gould, 884 N.Y.S.2d 510 (N.Y. App. Div. 2009), dated August 11, 2009 (oral decision) and December 4, 2009 (Document # 838). Mr. Morrison's motions addressing his due process arguments, sometimes in conjunction with other issues, that were decided in the referenced decisions were filed as Documents Nos. 367, 392, (pre-trial); 773 (Memo in support of Rule 29 motion); 817, 827 (motions for reconsideration following Cayuga)." (Def.'s Mar. 17, 2010 Letter at 1 n.1.)

marks omitted). See also United States v. Matos, 2009 WL 2883054, at *2 (E.D.N.Y. Sept. 3, 2009); United States v. Basciano, 2008 WL 905867, at *1 (E.D.N.Y. Mar. 31, 2008).

BASIS FOR CURRENT RECONSIDERATION MOTION,
AND POSITIONS OF PARTIES

As proffered by defense counsel:

The changed circumstance that occasions the instant application is that a newly issued decision of the United States Court of Appeals for the Second Circuit ("Second Circuit") rejects key findings made by this Court in the denial of the earlier motions. That decision is now controlling authority. In City of New York v. Golden Feather Smoke Shop, Inc., [597] F.3d [115], 2010 WL 724707 (March 4, 2010)("Golden Feather") . . . the Second Circuit certified questions regarding New York Tax Law §§ 471 and 471-e to the New York State Court of Appeals ("Court of Appeals"). The Second Circuit's published opinion is grounded on the conclusion that the applicability of the State's cigarette taxation scheme to reservation cigarette sellers is "unsettled" pending a definitive ruling by the Court of Appeals. That holding, and the supporting analysis of the Second Circuit, negate the central conclusions, and thus the final result, of this Court's determination that Mr. Morrison's due process rights were not violated because Tax Law § 471 gave him "fair notice" of the illegality of his conduct. As a result, upon reconsideration we seek dismissal of Count Two.

(Def.'s Mar. 17, 2010 Letter at 1 (footnote omitted).)

In opposing defendant's application, the government notes that "N.Y. Tax Law § 471-e, at issue in Cayuga [Indian Nation of New York v. Gould, 884 N.Y.S.2d 510 (4th Dep't 2009)]

-4-

and to some extent in <u>Golden Feather</u>, has never been relied upon in the criminal matter before this Court, where the defendant has been found guilty of violations of the CCTA [the Contraband Cigarette Trafficking Act] and N.Y. Tax Law § 471 up through 2004." (Gov't's Mar. 26, 2010 Letter in Opp'n at 1-2.) The government also argues that

> [a]s for the Second Circuit's recent decision to certify a question about N.Y. Tax Law § 471, that order is not, as the defendant desperately claims, a "holding" or other judicial determination of the Court – let alone a holding in conflict with this Court's previous rejections of the defendant's dismissal motions. As the Second Circuit said, at page 18 of its order, certification of questions of law is possible pursuant to its Local Rule 27.2 and a complimentary rule of the New York State[] Court of Appeals, 22 N.Y.C.R.R. §500.27(a) allowing for the certification of questions of law to the latter court, "[w]henever it appears . . . that determinative questions of New York law are involved in a case pending before [a federal appellate court or the U.S. Supreme Court] for which no controlling precedent of the Court of Appeals exists. . . ."

(<u>Id.</u> at 2 (quoting 22 N.Y.C.R.R. § 500.27(a)).)

DISCUSSION

1. <u>Relevant Statutes</u>

As noted, defendant was convicted of a RICO conspiracy under Count Two, the goal of which was to sell the contraband cigarettes listed in Racketeering Acts Five through Eighty in violation of N.Y. Tax Law § 471 and 18 U.S.C. § 2342.

Section 18 U.S.C. § 2342(a) is part of the Contraband

Cigarette Trafficking Act ("CCTA"), 18 U.S.C. §§ 2341 et seq., and provides:

> It shall be unlawful for any person knowingly to ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes or contraband smokeless tobacco.

18 U.S.C. § 2342(a). Contraband cigarettes are defined in § 2341 as follows:

> a quantity in excess of 60,000[3] cigarettes, which bear no evidence of the payment of applicable State or local cigarette taxes in the State or locality where such cigarettes are found, <u>if the State or local government requires a stamp</u>, impression, or other indication to be placed on packages or other containers of cigarettes to evidence payment of cigarette taxes, and which are in the possession of any person other than [setting forth exempted persons]

Id. § 2341(2) (emphasis added).

At the time of the Racketeering Acts of which defendant was convicted, N.Y. Tax Law § 471(1), entitled "Imposition of cigarette tax," provided:

> There is hereby imposed and shall be paid a tax on all cigarettes possessed in the state by any person for sale, except that no tax shall be imposed on cigarettes sold under such circumstances that this state is without power to impose such tax. . . . It shall be presumed that all cigarettes within the state

---

[3] At the time of the acts alleged in the indictment, "contraband cigarettes" was defined to mean a quantity in excess of 60,000 cigarettes which bore no evidence of the payment of state cigarette taxes. The statute was amended in March 2006 and the number required to trigger the provisions of the CCTA was reduced to 10,000.

> are subject to tax until the contrary is
> established, and the burden of proof that any
> cigarettes are not taxable hereunder shall be
> upon the person in possession thereof.

N.Y. Tax law § 471(1) (effective Apr. 3, 2002 to June 2, 2008).

Federal law forbids the collection of these taxes on cigarettes sold on Native American reservations to enrolled tribal members for their personal consumption. See Moe v. Confederated Salish & Kootenai Tribes of Flathead Reservation, 425 U.S. 463 (1976). However, when cigarettes are sold on the reservation to non-Native Americans, the taxes may be collected. See Washington v. Confederated Tribes of Colville Indian Reservation, 447 U.S. 134 (1980).

2. This Court's Earlier Decisions Denying Defendant's Substantive Due Process Claims

This Court has repeatedly found in the decisions listed in footnote 2, supra, that § 471 (which was the sole applicable state statute in effect vis-à-vis the on-reservation sales by defendant of unstamped cigarettes to non-Native Americans during the relevant time frame)[4] provided more than adequate notice to Morrison, and others similarly situated, that such sales are

---

[4] Neither party has claimed that the original version of N.Y. Tax Law § 471-e, effective May 13, 2003 to February 28, 2006, which pertained solely to non-Native American purchasers acquiring cigarettes for their "own consumption," is applicable to the instant CCTA prosecution. (See Am. Mem. and Order dated Feb. 26, 2009 at 18-19.)

illegal. (See, e.g., Am. Mem. and Order dated Feb. 26, 2009 at 62-80.) In reaching that conclusion, I considered both the forbearance policy (i.e. the decision of the New York State Department of Taxation and Finance not to enforce § 471 as to on-reservation sales of unstamped cigarettes to non-Native Americans), as well as the absence of regulations geared towards the collection of the taxes due from such sales. Neither, in my judgment as expressed in my prior decisions, served to eradicate or obscure the mandate of § 471(1). Among the authorities and other sources I relied upon are:

> (1) Dep't of Taxation and Fin. of N.Y. v. Milhelm Attea & Bros., Inc., 512 U.S. 61, 64 (1994) ("Cigarette consumers in New York are subject to a state tax of 56 cents per pack. Enrolled tribal members who purchase cigarettes on Indian reservations are exempt from this tax, but non-Indians making purchases on reservations must pay it.");

> (2) United States v. Kaid, 241 F. App'x 747, 750 (2d Cir. 2007) (unpublished) ("New York law provides for taxes on non-Native Americans purchasing cigarettes in stores on reservations, but New York has a policy of non-enforcement of this tax. [Defendants] assert that this non-enforcement policy effectively de-taxed sales of cigarettes to non-Native Americans on reservation land, thereby negating the element of contraband necessary to a conviction for trafficking in contraband cigarettes under 18 U.S.C. §§ 2341-42. This argument is meritless.") (internal quotation marks and citation omitted);

> (3) N.Y. Ass'n of Convenience Stores v. Urbach, 92 N.Y.2d 204, 214 (1998) ("'[T]he

repeal [of the regulations] does not eliminate the statutory liability for taxes as they relate to sales on Indian reservations to nonexempt individuals.'") (quoting 20 N.Y.S. Register, Apr. 29, 1998, Issue 17, Book 1, at 23);

(4) <u>Milhelm Attea & Bros., Inc. v. Dep't of Taxation and Fin. of N.Y.</u>, 81 N.Y.2d 417, 422 (1993) ("[M]any non-Indians travel to Indian reservations to buy unstamped cigarettes and avoid the sales tax which should attach to all sales to non-Indians."), <u>rev'd on other grounds</u>, 512 U.S. 61 (1994);

(5) <u>The Text of, and Concomitant Historical and Statutory Notes to §§ 471-e and 471</u>.  By its terms, the amended version of § 471-e was not to go into "effect [until] March 1, 2006, <u>provided</u> that any actions, rules and regulations necessary to implement the provisions of [the statute] on its effective date are authorized and directed to be completed on or before such date."  N.Y. Tax Law § 471-e (Historical and Statutory Notes 2006) (emphasis added).  In contrast, § 471 contained no condition precedent to its effective date of April 1, 2002.  Indeed, to the contrary, reference to the Historical and Statutory Notes to § 471 indicates that "the commissioner of taxation and finance shall be authorized on and after this act shall have become a law to take steps necessary to implement these provisions [i.e. to assure payment of the taxes imposed] on their effective date."  <u>Id.</u> § 471 (Historical and Statutory Notes 2002).  (<u>See</u> also Am. Mem. and Order dated Feb. 26, 2009 at 26-29; Mem. and Order dated Dec. 4, 2009 at 4, n.4.); and

(6) <u>Absence of Evidence That a Member of the Executive Branch Ever told on-Reservation Retailers That the Forbearance Policy Overrode the Tax Obligation Imposed by § 471</u>.  "[T]here is no evidence nor other information in the pretrial, trial, or post-trial record to indicate that a member of the state executive branch, notwithstanding the

> existence of the forbearance policy, ever
> communicated to on-reservation retailers that
> the sale of unstamped cigarettes to non-
> Native Americans was legal.  In fact, the
> only evidence furnished by Morrison speaking
> to that issue, a May 1997 press release
> issued by then-Governor Pataki, indicates
> precisely the contrary.  In the press
> release, Governor Pataki referenced his
> efforts to change the New York Tax Law so
> that Native American retailers would no
> longer be required to pay the tax. (See
> Governor Pataki Press Release dated May 22,
> 1997 ('Let me make my message to all Indian
> Nations clear:  It is your land, we respect
> your sovereignty and, if the Legislature acts
> as I am requesting, you will have the right
> to sell tax-free . . . cigarettes free from
> interference from New York State.').  The
> Governor's proposed amendments were never
> passed [, ergo, § 471's tax obligation
> remained operative]."  (Mem. and Order dated
> Dec. 4, 2009 at 8-9.)

In addition, I denied defendant's motions for reconsideration based on the Fourth Department's decision in Cayuga Indian Nation v. Gould, 884 N.Y.S.2d 510 (4th Dep't 2009).

In Cayuga, the majority found that "section 471-e is the exclusive statute governing the imposition of sales and excise taxes on cigarettes sold on reservations," id. at 513, and that "§ 471 alone [is] insufficient to impose the tax." Id. at 517. Given the Fourth Department's prior decision in Day Wholesale, Inc. v. State of New York, 856 N.Y.S.2d 808 (4th Dep't 2008) that § 471-e was not in effect based on the absence of implementing regulations which were a condition precedent to the statute's effective date, the Cayuga court concluded that "there is no

statutory basis for the imposition of a cigarette tax on a qualified reservation."  884 N.Y.S.2d at 517.

By bench decision dated August 11, 2009 and Memorandum and Order dated December 4, 2009, I rejected defendant's argument that the majority's decision in Cayuga was binding on the Court, and, thus, essentially eviscerated my prior fair notice determinations; instead, I found "persuasive evidence" that the New York Court of Appeals would reach a different conclusion. (Mem. and Order dated Dec. 4, 2009 at 5.  See also Bench Decision dated August 11, 2009.)  I explained that the majority's "conclusion was made under a significantly different statutory scheme than the one in effect when defendant committed the [CCTA] Racketeering Acts charged in Count Two."  (Mem. and Order dated Dec. 4, 2009 at 3.)  The Cayuga court's "view of the statutory scheme was perceived through the prism of §§ 471 and 471-e together, and 'the intention of the Legislature to overhaul the statutory scheme [in enacting § 471-e to] . . . provide a single statutory basis for taxing cigarette sales on qualified reservations.'" (Id. at 6 (quoting Cayuga, 884 N.Y.S.2d at 516).) "In contrast, [I further opined that] the hypothetical person of ordinary intelligence in a situation akin to Morrison's during 2003 and 2004 would be deemed to have focused solely on § 471 as the then applicable statute and its" clear statutory mandate. (Id.)

3. Second Circuit's March 4, 2010 Decision in <u>City of New York v. Golden Feather Smoke Shop, Inc.</u>, 597 F.3d 115 ("<u>Golden Feather</u>") Requires Reconsideration of my Earlier Determinations That N.Y. Tax Law § 471 Provided Clear Notice That on-Reservation Sales of Unstamped Cigarettes to non-Native Americans is Illegal

   A. <u>Issue to be Decided</u>

The core issue framed by the current motion for reconsideration is not whether Morrison and others similarly situated were prohibited from selling unstamped cigarettes on reservation to non-Native Americans during the time frame embraced in the subject indictment. Rather, the question is "'whether the language [of § 471] conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.'" <u>Arriaga v. Mukasey</u>, 521 F.3d 219, 224 (2d Cir. 2008)(quoting <u>Jordan v. De George</u>, 341 U.S. 223, 231 (1951)). If it does not, a resulting conviction is invalid under the Due Process Clause. <u>Rubin v. Garvin</u>, 544 F.3d 461, 467 (2d Cir. 2008). "For obvious reasons, the standard of certainty required in criminal statutes is more exacting than in noncriminal statutes.[5] This is simply because it would be

---

[5] "The degree of vagueness tolerated in a statute varies with its type." <u>Rubin</u>, 544 F.3d at 467. "A civil statute is generally deemed unconstitutionally vague only if it commands compliance in terms so vague and indefinite as really to be no rule or standard at all." <u>Advance Pharm., Inc. v. United States</u>, 391 F.3d 377, 396 (2d Cir. 2004) (citations and internal quotation marks omitted).

unthinkable to convict a man for violating a law he could not understand."  Barenblatt v. United States, 360 U.S. 109, 137 (1959).

    B.    Synopsis of Second Circuit's March 4, 2010 Decision in Golden Feather

By complaint filed on September 29, 2008, the City of New York alleged that defendants, reservation retailers on the Poospatuck Reservation in Mastic, New York, sold untaxed cigarettes in bulk to nonmembers of the Unkechauge Indian Nation who then resold them in the City, causing a significant loss of tax revenue to both the City and New York State.  The Complaint alleged that such sales violated the CCTA as well as the Cigarette Marketing Standards Act ("CMSA"), N.Y. Tax Law § 483 et seq.  By decision dated August 25, 2009, the Honorable Carol Bagley Amon, United States District Judge for the Eastern District of New York ("Judge Amon"), granted the City's motion for a preliminary injunction and enjoined defendants from selling unstamped cigarettes other than to members of the Unkechauge Nation for their personal use.  City of N.Y. v. Golden Feather Smoke Shop, Inc., 2009 WL 2612345 (E.D.N.Y. Aug. 25, 2009).  In reaching this decision, Judge Amon found, inter alia, that "the New York Court of Appeals would reject the majority's reasoning in Cayuga and conclude that § 471 imposes a tax on reservation sales of cigarettes to non-Tribe members."  Id. at *29.

Defendants then moved before the Second Circuit for a stay of Judge Amon's decision pending appeal and for an interim stay pending resolution of their application for a permanent stay. In their motion, defendants argued that a stay should be granted to preserve the status quo until a final determination by the New York Court of Appeals could be obtained. In this regard, defendants asserted that they would seek certification of the "determinative issues of State law" in their appeal papers. (Defs.' Mem. of Law in Supp. of a Mot. for an Interim and a Permanent Stay at 4, Second Circuit docket nos. 09-3942-CV, 09-3997-CV.) After holding "a hearing on [defendants'] emergency motion to lift the preliminary injunction," Golden Feather, 597 F.3d at 118, the Circuit, by Order dated October 14, 2009, denied defendants' motion, expedited the appeal process and directed the parties to address whether the following two questions should be certified to the New York Court of Appeals:

> (1) is N.Y. Tax. Law § 471-e in effect and does Tax Law §§ 471 and 471-e, or both, impose responsibility upon Native American vendors to collect taxes on sales to non-Native Americans?
>
> (2) Can Native American vendors' sales of unstamped cigarettes to non-Native American consumers open them to criminal or other liability?

City of N.Y. v. Golden Feather Smoke Shop, Inc., Nos. 09-3942-CV, 09-3997-CV (2d Cir. Oct. 14, 2009).

By decision dated March 4, 2010, the Circuit further addressed defendants' appeal from Judge Amon's preliminary injunction order. Golden Feather, 597 F.3d 115. The Circuit noted that in determining whether the City had demonstrated a likelihood of success on the merits of its claims, viz. a violation of the CCTA and/or the CMSA and a risk of recurrence, "there must be an underlying tax provision that requires the reservation vendors to purchase stamped cigarettes for resale" to non-Tribe members. Id. at 122. After reviewing New York's cigarette taxing framework, the court set forth the parties' opposing positions. The City argued that § 471-e merely set up a system to collect the tax that was unambiguously imposed by the plain language of § 471. Id. at 124-25. The defendants, on the other hand, urged the Circuit to, inter alia, adopt the majority decisions in both Cayuga and Day Wholesale that § 471-e is not in effect given the absence of implementing regulations as well as Cayuga's holding that § 471 alone is insufficient to impose the tax. Id. at 125. The Circuit found that both "interpretations of §§ 471 and 471-e [were] supported by cogent arguments and prior judicial analysis," and posed the following question: "Given this state of affairs, does the absence of any such mechanism applicable to taxes imposed on cigarette sales on reservations give rise to 'circumstances that [render New York] without power to impose such tax'?" Id. (quoting N.Y. Tax Law §

471). Because resolution of this issue required the Circuit to interpret New York statutes, the court examined whether certification to the New York Court of Appeals was appropriate.

The Circuit began its analysis by noting the general rule that certification should be done "sparingly, mindful that it is [the Circuit's] job to predict how the New York Court of Appeals would decide the issues." Id. at 126. Finding that (1) New York case law on this issue was unsettled, (2) "certification on this issue [would] address an important issue of state law that to this point remains unresolved," and (3) an answer from the Court of Appeals on this purely legal question would resolve the litigation, the court concluded that certification was warranted. Id. at 126-27. The following two questions were certified to the New York Court of Appeals:

> (1) Does N.Y. Tax Law § 471-e, either by itself or in combination with the provisions of § 471, impose a tax on cigarettes sold on Native American reservations when some or all of those cigarettes may be sold to persons other than members of the reservation's nation or tribe?
>
> (2) If the answer to Question 1 is "no," does N.Y. Tax Law § 471 alone impose a tax on cigarettes sold on Native American reservations when some or all of those cigarettes may be sold to persons other than members of the reservation's nation or tribe?

Id. at 128.

C.  Application of the Second Circuit's <u>Golden Feather</u>
    Decision to Defendant's Current Motion for
    <u>Reconsideration</u>

The Second Circuit's decision requires that I revisit my prior due process determinations. In saying that, I am mindful that (1) the Circuit declined to stay the preliminary injunction granted to the City of New York, (2) in certifying the two aforementioned questions to the New York Court of Appeals, the Circuit was asking, rather than endeavoring to answer those questions, (3) the decision to certify those questions — as requested by the appellants in that case, one of whom, Morrison, is the defendant in the criminal case under discussion — is readily understandable given that the core issues relate solely to state law, and (4) the statutory scheme involved in <u>Golden Feather</u> significantly differs from the one in the instant case given the post-indictment enactment of the current § 471-e in 2006. Nonetheless, the detailed analysis provided by the Circuit in <u>Golden Feather</u> is at odds with my conclusion that a fair reading of § 471, unencumbered by the confusion arguably interjected into the analysis via the enactment of § 471-e, provided more than adequate notice that on-reservation sales of unstamped cigarettes to non-Native Americans is illegal. Tellingly the Circuit, in framing the second question for certification, asked whether "§ 471 alone impose[s] a tax on cigarettes sold on Native American reservations when some or all

-17-

of those cigarettes may be sold to persons other than members of the reservation's nation or tribe?" 597 F.3d at 128. That question, when viewed in conjunction with the explanation that "[c]ertification . . . should be done sparingly, mindful that it is our job to predict how the New York Court of Appeals would decide the issues before us," id. at 126, compels the conclusion that the Circuit perceives the applicability of § 471 to on-reservation sales as unsettled and ambiguous, i.e. not self-evident nor predictable from a simple reading of the section. Also significant is the Circuit's query whether the absence of regulations setting forth a collection mechanism may be equated with "'circumstances that [render New York] without power to impose such tax,'" referencing the excepting language found in § 471. Id. at 125 (quoting N.Y. Tax Law § 471).

Given that the Circuit has found a sufficient lack of clarity in the statutory scheme to call for certification in a civil context, my conclusion that the text of § 471 satisfies constitutional notice requirements in a criminal context may not stand. Accordingly, defendant's conviction under Count Two is vacated and the Count dismissed.[6]

---

[6] In reaching the above conclusion, I considered whether the Circuit's decision in Golden Feather represents "controlling authority," as contended by defendant (Def.'s Mar. 17, 2010 Letter at 1), or is not "a 'holding' or other judicial determination of the Court," as contended by the government. (Gov't's Mar. 26, 2010 Letter at 2.) That issue need not be

4.  Effect of Vacatur of the Conviction Under Count Two on the
    Sentencing Determinations Already Made as to That Count

Prior to defendant's current reconsideration motion being made, hearings were held, pursuant to U.S.S.G. § 1B1.3 (the so called "relevant conduct" guideline), to assist the Court in determining an appropriate sentence for the then two counts of conviction. Those hearings caused me to conclude, by a fair preponderance of the credible evidence, that Morrison, although acquitted of the murder and robbery racketeering acts and substantive crimes alleged in the indictment, committed such acts in furtherance of, and to protect his interest in the RICO Enterprise. In that those acts, however, were tethered to Count Two, now vacated, those hearing determinations are no longer germane except to the extent I may consider them under 18 U.S.C. § 3553(a) as bearing on the "history and characteristics of the defendant" when imposing sentence on the remaining count of

---

resolved, however, because the result is the same under either scenario. If the Circuit's conclusion of ambiguity constitutes controlling authority, my earlier conclusion to the contrary must be set aside. But even if, arguendo, the government is correct in maintaining that Golden Feather is neither "a holding" nor "other judicial determination," adherence to my earlier determinations as to notice would create a manifest injustice in that three Circuit judges, in a thoughtful and thorough opinion, found ambiguity. Again, the question before me is not whether § 471 imposes a tax on the subject sales, but instead, assuming it does, whether that obligation is adequately conveyed to those subject to the obligation to pass muster in a criminal context under the Due Process Clause. As to that pivotal issue, the answer, in view of the Circuit's decision in Golden Feather, must be in the negative whether that decision is viewed as controlling authority or otherwise.

conviction, Count Eight.  And finally, this Court's prior forfeiture and restitution orders are hereby vacated in that they too were predicated on the Count Two conviction.

## CONCLUSION

Based on the Second Circuit's March 4, 2010 decision in City of New York v. Golden Feather Smoke Shop, Inc., 597 F.3d 115 (2d Cir. 2010), I have reconsidered, and changed my earlier determinations that defendant's motions to dismiss Count Two on substantive due process grounds lacked merit.  As a result, the conviction under Count Two is vacated, and the Count is dismissed.

SO ORDERED.

Dated: Central Islip, New York
       April 16, 2010                         /S/
                                        Denis R. Hurley,
                                        United States District Judge